IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| ELIZABETH JACOBS, | * | |
| | * | |
| **Plaintiff,** | * | |
| | * | |
| vs. | * | CASE NO:  2:07-cv-675-WKW |
| | * | |
| BOBBY N. BRIGHT, | * | |
| RICHARD ALLEN and | * | |
| THE CITY OF MONTGOMERY and | * | |
| | * | |
| **Defendants.** | * | |

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS MOTION FOR SUMMARY JUDGMENT

Defendants, Bobby N. Bright (" Mayor"), Richard Allen ("Allen") and City of Montgomery ("the City"), in the above styled action, submit this Memorandum of Law in Support of Summary Judgment with evidentiary submissions, stating unto the Court the following:

## I.

### PROCEDURAL BACKGROUND

Plaintiff, Elizabeth Jacobs ("Jacobs") filed this lawsuit on July 30, 2007 naming the Mayor, the City and Allen as Defendants.  Jacobs submits in the Complaint that she is "seeking injunctive and compensatory relief from a deprivation of her liberty, under color of law, without due process of law in violation of the Fourteenth Amendment to the United States as guaranteed and protected by 42 USC 1983".  *(Doc 1, ¶1).*  Jacobs claims that she was deprived of her right to a hearing prescribed by the laws of the State of Alabama and that such deprivation damaged her reputation as an employee and adversely affects her opportunity for promotion or advancement.  *(Doc 1, ¶1).*

1

Count One of the Complaint alleges deprivation of Plaintiff's property right in employment without "due process of law and equal protection of the law as described in the Fifth Amendment and provided for in the Fourteenth Amendment to the United States Constitution under 42 USC 1983." *(Doc. 1 ¶29).* In Count Two, Jacobs claims another Fourteenth Amendment violation namely that "…the imposition of her sentence before she had received notice of same violated Rule VIII, Section 12(b) of the previously mentioned rules and regulations…" *(Doc. 1 ¶31).*

In addition to monetary requests for relief, Jacobs requests that her record be cleared of charges that she stole time or cheated the museum of time and that the statute prohibiting permanent employees from appealing suspensions of 30 days or less be declared unconstitutional.

## II.

### NARRATIVE STATEMENT OF FACTS

Plaintiff, Elizabeth Jacobs ("Jacobs"), was employed effective June 16, 2006 with the City as a Museum Security Officer at the Montgomery Museum of Fine Arts ("Museum"). *(DX 1, Montoya Affidavit).* Mark Johnson ("Johnson") is the Director of the Museum. *(DX 2, Johnson Affidavit).* Shirley Woods ("Woods") is the Assistant Director at the Museum. *(DX 3, Woods Affidavit).* Defendant Allen is Chief of Security. *(DX 4, Allen Affidavit).*

In February 2007, while reviewing time sheets, Woods noticed that Jacobs was working 7.5 hours instead of the 8 hours she was scheduled in the Officers' Work Schedule for Thursday evenings in December. *(DX 3, Woods Affidavit).* Woods telephoned Jacobs to ask why she was not working 8 hours but getting paid for 8 hours and on some occasions, time and a half for overtime on her full shift. *(DX 3, Woods Affidavit).* Jacobs started screaming and yelling at Woods and would not calm down enough to have a professional conversation. *(DX 3, Woods Affidavit).* Woods asked

Jacobs to meet with Chief Allen the following day to clear up the matter. *(DX 3, Woods Affidavit).*

Woods contacted Allen and advised him of the issue regarding Jacobs' time shortage and instructed him to meet with her. *(DX 3, Woods Affidavit; DX 4, Allen Affidavit and DX 5, Defendant Richard Allen's Responses to Plaintiff's First Set of Interrogatories and Requests for Production of Documents).* On February 24, 2007, Allen met with Jacobs as instructed. *(DX 4, Allen Affidavit and DX 5, Defendant Richard Allen's Responses to Plaintiff's First Set of Interrogatories and Requests for Production of Documents).* Jacobs was advised that the card access records indicated that she had been leaving at 12:00 midnight every Thursday night shift rather than her scheduled off time of 12:30 a.m. *(DX 4, Allen Affidavit and DX 5, Defendant Richard Allen's Responses to Plaintiff's First Set of Interrogatories and Requests for Production of Documents ).*

Jacobs responded that she was following the "post" schedule that shows her post to be 4:30-12:00 rather than the Officers Work Schedule that shows her shift as 4:30 p.m.-12:30a.m. *(DX 4, Allen Affidavit).* Jacobs refused to sign the counseling form provided to her by Mr. Allen and requested an administrative hearing before the Museum Director. *(DX 4, Allen Affidavit).*

On Tuesday, February 27, 2007, Jacobs called Woods to apologize for her behavior and inappropriate tone of voice. *(DX 3, Woods Affidavit).* Jacobs stated that she was having a difficult time personally and did not mean to be insubordinate. *(DX 3, Woods Affidavit).*

Mark Johnson held the departmental hearing for Elizabeth Jacobs on March 1, 2007. *(DX 2, Johnson Affidavit).* Shirley Woods and Richard Allen were also present at the hearing. *(DX 2, Johnson Affidavit; DX 3, Woods Affidavit; DX 4, Allen Affidavit and DX 5, Defendant Richard Allen's Responses to Plaintiff's First Set of Interrogatories and Requests for Production of Documents).*

Woods stated the purpose of the hearing was to consider disciplinary action against Jacobs for insubordination and leaving work one half hour early without permission every Thursday for the past several months.  *(DX 2, Johnson Affidavit).*

Jacobs stated that she did not leave work on purpose.  *(DX 2, Johnson Affidavit).* Although Jacobs was given a copy of the Officers Work Schedule that identified her shift as 4:30-12:30 on Thursdays, she elected to go by a post schedule that said 4:30-12:00.  *(DX 2, Johnson Affidavit).* Jacobs stated that she felt it was an honest mistake and never really looked at her paycheck, where she was paid for the full 8 hours.  *(DX 2, Johnson Affidavit).*   Jacobs apologized for being insubordinate and explained that she had personal problems that made her angry. *(DX 2, Johnson Affidavit).*  Jacobs stated that she felt that the 5 day suspension recommended by Allen and Woods was too harsh a punishment.  *(DX 2, Johnson Affidavit; DX 3, Woods Affidavit and DX 4, Allen Affidavit).*

Johnson stated that he was very surprised at Jacobs' behavior and asked Jacobs to leave the hearing and would get back to her regarding his decision. *(DX 2, Johnson Affidavit).*  After some discussion, it was decided that Jacobs would be given a 3 day suspension; receive leave without pay for the hours she did not work and that she should contact the Employee Assistance Program for anger management. *(DX 2, Johnson Affidavit and DX 3, Woods Affidavit).*

The Notification of Suspension and supporting documents were mailed on March 2, 2007 to Jacobs by certified mail. *(DX 3, Woods Affidavit).* The Notification of Suspension indicated that Jacobs would be suspended from March 11 – March 13, 2007.  *(DX 3, Woods Affidavit).* The Officers Work Schedule also reflected that Jacobs was not scheduled to work on those days. *(DX 3, Woods Affidavit).*

4

# III.

## SUMMARY JUDGMENT STANDARD

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The party asking for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the 'pleadings, depositions, answers to interrogatories, admissions on file, together with the affidavits, if any, which it believes demonstrates the absence of genuine issue of material fact.' *Id.* at 323. The movant can meet this burden by presenting evidence showing that there is no dispute of material fact, or by showing, or pointing out to, the district court that the non-moving party has failed to present evidence in support of some element of the case on which it bears the ultimate burden of proof. *Id.* at 322-324.

Once the non-moving party has met its burden, Rule 56(e) "requires the non-moving party to go beyond the pleadings and by [its] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324. To avoid summary judgment, the non-moving party "must do more than show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986).

After the non-moving party has responded to the motion for summary judgment, the court must grant summary judgment if there is no genuine issue of material fact and the moving party is

5

entitled to judgment as a matter of law.  Rule 56(c), FRCP.  Similarly, the moving party is entitled to summary judgment if the non-moving party has failed to prove the elements of her case or there is the absence of evidence in the record to support a judgment for the non-moving party on the issue in question.  *Fitzpatrick v. City of Atlanta,* 2 F. 3d 1112, 1115-16 (11th Cir. 1993).

Conclusory allegations cannot interpose genuine issues of material fact into the litigation so as to preclude entry of summary judgment. *Fed.Rules Civ.Proc*.Rule 56(c).

## IV.

### ARGUMENT

## 1.    COMPLAINT

Count One of the Complaint contends that the statutory practice of denying Jacobs a right to appeal a suspension of 30 days or less resulted in deprivation of her property right in employment without "due process of law and equal protection of the law as described in the Fifth Amendment and provided for in the Fourteenth Amendment to the United States Constitution under 42 USC 1983."  *(Doc. 1 ¶29).*     Jacobs requests that the statute and custom of prohibiting permanent employees from appealing suspension of 30 days or less be declared unconstitutional. *(Doc. 1 ¶29 (5)).* However there is nothing in the record to indicate that the Alabama Attorney General has been notified that Jacobs is making a constitutional challenge to a state act.

In Count Two, Jacobs claims another Fourteenth Amendment violation by "…the imposition of her sentence before she had received notice of same violated Rule VIII, Section 12(b) of the previously mentioned rules and regulations…" *(Doc. 1 ¶31).*  However it is clear from the face of the Complaint that Jacobs had notice that she was recommended for suspension.  *(Doc. 1 ¶¶ 11, 13, 14 & 19).*

 Jacobs cannot succeed on her claims against the City, the Mayor and Allen.  Defendants are

due summary judgment and all claims dismissed as a matter of law.

A. **THE CONSTITUTIONALITY OF ACT 2280, ALA. ACTS (1971)**

In addition to monetary requests for relief, Jacobs requests that the statute prohibiting permanent employees from appealing suspensions of 30 days or less be declared unconstitutional. *(Doc. 1, ¶ 29(5))*. Jacobs is challenging the constitutionality of a provision of Act 2280, *ALA. Acts* (1971). As noted previously, Jacobs has not notified the Alabama Attorney General of the constitutional challenge to Act 2280

> Section 6-6-227, Ala.Code 1975, states:
>
> In any proceeding which involves the validity of a municipal ordinance, or franchise, such municipality shall be made a party and shall be entitled to be heard; and if the statute, ordinance, or franchise is alleged to be unconstitutional, the Attorney General of the state shall also be served with a copy of the proceeding and be entitled to be heard.

See also, *Tucker v. Personnel Board of the City of Dothan,* 644 So.2d 8, 9 (Ala.Civ.App.1994), in which the Court of Civil Appeals stated:

> If the party challenging the constitutionality of a statute fails to serve the attorney general, as required ... the trial court has no jurisdiction to decide the constitutional claims. Furthermore, our Supreme Court has held 'that failure to serve the attorney general "goes to the jurisdiction of the court," that the "absence of jurisdiction is apparent on the face of the record," and that we must take notice of our own want of jurisdiction' and dismiss the appeal.

Jacobs has not notified the Attorney General, pursuant to § 6-6-227, *ALA.Code* 1975, that she is challenging the constitutionality of Act 2280. Service on the attorney general is mandatory and jurisdictional. *Barger v. Barger,* 410 So.2d 17 (Ala.1982). If the party challenging the constitutionality of a statute or act fails to serve the attorney general with notice, the trial court has no jurisdiction to decide the constitutional claim, *Guy v. Southwest Alabama Council on Alcoholism,*

475 So.2d 1190 (Ala.Civ.App.1985).  Therefore, Plaintiff's constitutionality claim is due to be dismissed.

### B.    ACT 2280 AND THE CITY-COUNTY OF MONTGOMERY PERSONNEL DEPARTMENT

The City-County of Montgomery Personnel Department ("the Personnel Department") is a separate entity from the City of Montgomery.  The Department was created by legislative act in 1949 to establish a classified (merit) system for City-County employees. *(DX 1, Montoya Affidavit).* The City-County of Montgomery Personnel Department is a separate entity from the City of Montgomery and serves as the personnel department for the City of Montgomery (City), the County of Montgomery, the Montgomery Airport Authority and the Montgomery Housing Authority. *(DX 1, Montoya Affidavit).* The Personnel Department consists of the Personnel Board and the Personnel Director and such other employees as required to provide services to operating agencies.  *(DX 1, Montoya Affidavit).*  Neither the Personnel Department nor the Personnel Board are named as a party to this lawsuit.

The Personnel Board ("the Board") consists of three (3) members appointed in the following manner: One by the governing body of Montgomery County, one by the governing body of the City of Montgomery, and one by a majority of the circuit judges and probate judge of Montgomery county. *(DX 1, Montoya Affidavit).*

The functions of the Board are: (1) to formulate and promulgate a set of rules to supplement the Merit System Act, which is Act 2280 of the Acts of 1971, Regular Session, approved by the Governor, October 1, 1971;  (2) to act in an advisory capacity to the governing bodies of the county and municipality on problems concerning personnel administration and (3) as provided by the Merit System Act and by rule, to hear and decide appeals submitted by any person in the classified service relative to any situation connected with the employment status or condition of employment.  *(DX 1,*

*Montoya Affidavit).*

The City-County of Montgomery Personnel Board Rules and Regulations ("the Rules") augment and clarify the Merit System Act. *(DX 1, Montoya Affidavit).*They set forth principles and procedures that are to be followed by the City-County of Montgomery Personnel Department in order that personnel administration in the city, county and other services may be conducted in accordance with sound and effective principles of public personnel administration. *(DX 1, Montoya Affidavit).*

The Personnel Director is charged with administration of the rules, except for those sections specifically reserved to the Personnel Board. *(DX 1, Montoya Affidavit).* Amendments and revisions of these rules may be initiated by the Personnel Board, Personnel Director, the City Council, County Commission or any appointing authority. Amendments and revisions to the rules shall become effective upon approval by the Personnel Board. *(DX 1, Montoya Affidavit).*

C.     **NO VIOLATION OF DUE PROCESS CLAUSE**

Jacobs alleges violation of due process of law as described in the Fifth Amendment and provided for in the Fourteenth Amendment to the United States Constitution under 42 USC 1983. *(Doc. 1 ¶29).*

1.     **FIFTH AMENDMENT**

In this case, the Fifth Amendment Due Process Clause cannot provide a basis for liability because it "applies only to the federal government." *Sweatt v. Bailey*, 876 F. Supp. 1571, 1582 (M.D. Ala. 1995); *see also Riley v. Camp*, 130 F.3d 958, 972 n.19 (11th Cir. 1997) (noting that regarding the plaintiff's substantive due process claim, "[t]he Fifth Amendment obviously does not apply . . . -- the acts complained of were committed by state rather than federal officials"); *Hardy v. Town of Hayneville*, 50 F. Supp.2d 1176, 1186 (M.D. Ala. 1999) ("The Fifth Amendment restricts the activity

9

of the federal government"). It is undisputed in this case that, at all relevant times, the Mayor and Allen were acting as City and not as federal actors. Accordingly, Jacobs' § 1983 claim under the Fifth Amendment is due to be dismissed and Defendants are entitled to summary judgment as a matter of law.

2.    FOURTEENTH AMENDMENT

Jacobs alleges that the statutory practice of denying a permanent employee the right to appeal a suspension of less than 30 days deprived her of a property right in her employment without due process. Jacobs has requested that provision of Act 2280 be declared unconstitutional. The Due Process Clause provides that no state shall "deprive any person of life, liberty, or property, without due process of law." U.S. Const. Amend XIV §1.

In *McKinney v. Pate,* 20 F.3d 1550 (11th Cir.1994), the Court of Appeals for the Eleventh Circuit held that "areas in which substantive rights are created only by state law (as is the case with tort law and employment law) are not subject to substantive due process protection under the Due Process Clause because 'substantive due process rights are created only by the Constitution.' " *McKinney,* 20 F.3d at 1556 (citing *Regents of Univ. of Mich. v. Ewing,* 474 U.S. 214, 229, 106 S.Ct. 507, 515-16, 88 L.Ed.2d 523 (1985)). Therefore Jacobs cannot claim violation of substantive due process rights as any property right she may have in employment is created solely by state law, Act 2280, *ALA. Acts* (1971).

The Fourteenth Amendment also protects against the government's deprivation of liberty or property without procedural due process. *Warren v. Crawford*, 927 F.2d 559 (11th Cir. 1991), *citing Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 569, 92 S.Ct. 2701, 2705, 33 L.Ed.2d 548 (1972). In addressing procedural due process standards, this Court held in *Black v. City of Auburn,* 857 F. Supp. 1540 (M.D. Ala. 1994), "The Supreme Court has described the 'root requirement' of

10

the Due Process Clause as being 'that an individual be given an opportunity for a hearing before he is deprived of any significant property interest.' " *Id.* citing *Cleveland Bd of Educ. v. Loudermill,* 470 U.S. 532, 542, 105 S.Ct. 1487, 1493 (quoting *Boddie v. Connecticut,* 401 U.S. 371, 379, 91 S.Ct. 780, 786-87, 28 L.Ed.2d 113 (1971)). A predetermination hearing need not be elaborate. *Id.* 470 U.S. at 544-46, 105 S.Ct. at 1495. In sum, due process only requires that a "tenured public employee is entitled to oral or written notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story." *Id.* (holding that to require more than that would be to "intrude to an unwarranted extent on the government's interest in quickly removing an unsatisfactory employee").

Jacobs was contacted by Shirley Woods on February 23, 2007 and questioned about her time from December through February. *(Doc. 1, ¶ 11 & DX 3, Woods Affidavit).* Jacobs received notice of the charges against her. *(Doc. 1, ¶ 12; DX 3, Woods Affidavit & DX 4, Allen Affidavit).* Jacobs claims that she was deprived of her right to a hearing prescribed under the laws of the State of Alabama. *(Doc 1, ¶1).* Not only was Jacobs given an administrative hearing at her request before the Museum Director, but her suspension was reduced to three days. Procedural due process requires that notice be given to the employee of the charges and an opportunity to be heard.

It is also clear from the face of the Complaint that Ms. Jacobs was given adequate due process.

> 11.    On February 23, 2007, plaintiff received a telephone call from her supervisor, Shirley woods, to discuss her leaving early as shown on her time sheet for the month of December 2006.

12.    She was specially charged with prematurely leaving her job from December 15, 2006 through February 23, 2007 and also being insubordinate over the telephone.

13.    On February 24, 2007, the plaintiff met with Security Chief Richard Allen and requested an administrative hearing with Museum Director Mark Johnson.

14.    On March 1, 2007 plaintiff met with Director Johnson, Chief Allen and Mrs. Woods and the charges against her were presented.

15.    Plaintiff was apparently suspended for both the charge of insubordination and the charge of not working the scheduled hours.

16.    Attached to the Notification of Suspension received by plaintiff is a "Employee Counseling Record" which reflects the abovementioned meeting with plaintiff although no personnel rules and regulations prove for authority to counsel employees and the meeting appears to have been held pursuant to Rule VII, Section 13 of the City and County of Montgomery Rules and Regulations during which time the employee is to be given full opportunity to present her views and the appointing authority shall take such action that it deems proper.

...

19.    On that same date, February 24, 2007, Woods recommended that plaintiff be suspended, without pay, for five (5) days because she stole 4.5 hours from the "Museum and the City of Montgomery" which recommendation was accepted by Allen on that date.

...

21.    On March 12, 2007, defendant Bobby N. Bright, as Mayor of the City of Montgomery, Alabama and its Appointing Authority, approved a three (3) day suspension from 8:00 A.M. on March 11, 2007 until 5:00 p.m. on March 13, 2007 which suspension was adopted by the city's Personnel Department.

*(Doc. 1, ¶¶ 11 – 16; 19, 21).*

Jacobs was given a hearing *before* she was suspended thereby meeting the requirements set out in *Loudermill.* At her hearing with Allen, Jacobs requested and subsequently received a hearing

12

before the Museum Director, Mark Johnson. *(Doc. 1, ¶ 13, DX 2, Johnson Affidavit and DX 4, Allen Affidavit).*  Jacobs contested her five day suspension as being too harsh. *(DX 2, Johnson Affidavit; DX 3, Woods Affidavit and DX 4, Allen Affidavit).*  Jacobs was suspended for three days. *(Doc. 1, ¶ 21; DX 1, Montoya Affidavit; DX 2, Johnson Affidavit; DX 3, Woods Affidavit and DX 4, Allen Affidavit).*

Jacobs received notice that she was being recommended for suspension in February 2007. Jacobs requested an administrative hearing and contested her recommended five day suspension as being too harsh. *(DX 2, Johnson Affidavit; DX 3, Woods Affidavit and DX 4, Allen Affidavit).* The Notification of Suspension and supporting documents were mailed on March 2, 2007 to Jacobs by certified mail. *(DX 3, Woods Affidavit).*  Although Jacobs may have refused to sign for the certified mail until after the suspension started, the Officers Work Schedule also reflected the days that  Jacobs was not scheduled to work. *(DX 3, Woods Affidavit).*

Jacobs' claims that her three day suspension affected her status in receiving raises and promotions are also without merit.  In fact, Jacobs received a merit increase in March 2007 at the same time that she was suspended. *(DX 2, Johnson Affidavit).*  Plaintiff can show no harm to her reputation or opportunities because there was no such harm.  Conclusory allegations cannot interject issues.

Based on the foregoing, Defendants are entitled to summary judgment as to the Plaintiff's allegations of Due Process violations.

**3.  NO VIOLATION OF EQUAL PROTECTION CLAUSE**

Jacobs also alleges deprivation of her property without equal protection of the law in violation of the Fourteenth Amendment to the United States Constitution under 42 USC 1983. *(Doc. 1 ¶¶ 29 & 31).*  The Equal Protection Clause is violated when "similarly situated persons are treated

differently and that different treatment is not rationally related to a legitimate state interest." *Johnson v. City of Tarpon Springs,* 758 F.Supp. 1473 (M.D.Fla.1991) (citing *City of Cleburne, Texas v. Cleburne Living Center,* 473 U.S. 432, 105 S.Ct. 3249, 87 L.Ed.2d 313 (1985)); *see Bass v. City of Albany,* 968 F.2d 1067, 1070 (11th Cir.1992).

Jacobs does not identify any similarly situated person treated differently. In fact, as set out more fully above, Jacobs challenges the constitutionality of Act 2280 as to it applies to all permanent employees. Jacobs submits that the "statutory and customary practice of denying permanent employees a right to an appeal if a suspension of 30 days or less, which practice was followed by all defendants, deprived her of her property right in her employment and re property right to maintain an acceptable service rating which adversely affects her status in receiving raises, layoffs and promotions." *(Doc. 1 ¶ 29).*

There is nothing to suggest that other similarly situated permanent employees were treated differently nor is there anything to suggest that Plaintiff's suspension was the product of constitutionally improper motives. As such, Defendants are entitled to summary judgment as to the Plaintiff's allegations of the Equal Protection violation.

### 4. DEFENDANTS BOBBY BRIGHT AND RICHARD ALLEN

#### A. OFFICIAL CAPACITY

There are no allegations that the individual named Defendants Bobby Bright and Richard Allen did anything outside of duties performed in their official capacity. Jacobs' claims against individual named Defendants Bobby Bright and Richard Allen are wholly based on their performance of discretionary functions of their jobs.

Plaintiff's Complaint contends that the Allen acted in his capacity as Jacobs' supervisor in recommending discipline and the Mayor acted as appointing and final authority in imposing the

14

discipline. *(Doc. 1 ¶¶ 4 & 5).* When a city official is sued in his official capacity the suit is simply "another way of pleading an action against the entity of which the officer is an agent." *Kentucky v. Graham,* 473 U.S. 159, 165 (1985), *Monell v. New York Dept. of Social Services*, 436 U.S. 658, 690 n.55 (1978). "Such suits against municipal officers are therefore, in actuality, suits against the city that the officer represents." *Busby v. City of Orlando*, 931 F. 2d 764, 776 (11th Cir. 1991).

## B. INDIVIDUAL CAPACITY

Qualified immunity is an affirmative defense to an action pursuant to § 1983 against a government official sued in his or her individual capacity. *See Wilson v. Strong,* 156 F.3d 1131, 1135 (11th Cir.1998). Under the doctrine of qualified immunity, "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person should have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982); *see also Rich v. Dollar,* 841 F.2d 1558, 1563 (11th Cir.1988). Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs,* 475 U.S. 335, 341, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986).

In order to receive qualified immunity, a public official "must first prove that he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred." *Lee v. Ferraro*, 284 F. 3d 1188, 1194 (11th Cir. 2002). It is undisputed that the Mayor and Allen were acting within the scope of their respective discretionary authorities therefore satisfying the first prong of the qualified immunity test.

Having established the first requirement, the burden shifts to Jacobs to prove that qualified immunity is not warranted. *Id.* First "the defendant government official must prove that 'he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred.'"

*Sammons v. Taylor*, 967 F. 2d 1533, 1539 (11th Cir. 1992). "Then the burden shifts to the plaintiff to demonstrate that the defendant 'violated clearly established constitutional law.'" *Id.*

Once the qualified immunity defense is raised, the plaintiff bears the burden of showing that the federal "rights" allegedly violated were "clearly established." *Barts v. Joyner*, 865 F. 2d 1187, 1190 (11th Cir. 1989), citing *Mitchell v. Forsyth*, 472 U.S. 511, 528, 105 S. Ct. 2806, 2816, 86 L. Ed. 2d 411 (1985). For the law to be clearly established to the point that qualified immunity does not apply, it must have earlier been developed in such a concrete and factually defined contest as to make it obvious to all reasonable government actors, in the defendant's place that "what he is doing" violated federal law. *Anderson v. Creighton*, 483 U.S. 635, 640, 107 S. Ct. 3034, 3039, 97 L. Ed. 523 (1987). "For qualified immunity to be surrendered, pre-existing law must dictate, that is, truly compel… the conclusion for every like-situated, reasonable government agent that what the defendant is doing violates Federal law <u>in the circumstances</u>." *Lassiter v. Alabama A & M University*, 28 F. 3d 1146, 1150 (11th Cir. 1994) (emphasis in original). There is nothing to support a contention that Defendants violated federal law. Although Jacobs is challenging the constitutionality of Act 2280, Defendants complied with all federal requirements as set out above.

Also, the Eleventh Circuit has held, "When the qualified immunity defense has been raised, an opposing plaintiff must convince the court that the law clearly established that "the defendant's conduct in the circumstances amounted to 'deliberate indifference.'" *Hill v. DeKalb Regional Youth Detention Center*, 40 F.3d 1176, 1185 (11th Cir. 1994) (quoting *Edwards v. Gilbert*, 867 F.2d 1271, 1275 (11th Cir. 1989)).

Here, Plaintiff has not alleged, let alone "clearly established" that Allen's or the Mayor's conduct amounted to deliberate indifference. Therefore Defendants are entitled to summary judgment as a matter of law.

16

5.    CLAIMS AGAINST THE CITY OF MONTGOMERY

For civil rights liability pursuant to 42 U.S.C. § 1983 to attach to a municipality, it must be shown that the municipal official or employee caused the deprivation of one's constitutional rights by acting pursuant to official governmental policy.

Jacobs has not alleged anything to indicate that a final policymaker of the City acted with an unconstitutional motive. Merely using the words "policy" or "custom" or "unconstitutional" in the allegation is not sufficient to state a claim under 42 U.S.C. § 1983. *See Monell v. Dept. of Social Services*, 436 U.S. 658 (1978).   Conclusory allegations cannot interpose genuine issues of material fact into the litigation so as to preclude entry of summary judgment. *Fed.Rules Civ.Proc.*Rule 56(c).

A municipality is liable only for its own wrongs and cannot be liable under the theory of respondeat superior.  Jacobs may not base claims against the City on respondeat superior or vicarious liability; rather, she must show an official policy or custom of the City directly caused the alleged injury to him. A governing entity cannot be held liable in an action brought pursuant to 42 U.S.C.A. § 1983 under a theory of respondeat superior. *Monell v. Department of Social Services of New York City,* 436 U.S. 658, 694 (1978).   In *Monell*, the Supreme Court held that municipalities cannot be liable under §1983 on the theory of respondeat superior, but rather, can be liable under that statute only if they maintain unconstitutional or illegal policies or customs; absent unconstitutional or illegal policies or customs, municipalities and their officials may not be sued for the acts of their employees.  Moreover, a plaintiff must show that an official policy was the reason behind the alleged constitutional deprivation.  *Farred v. Jacobs,* 915 F. 2d 1530 (11th Cir. 1990).

An official policy or custom may be demonstrated by (1) "a policy statement, ordinance, regulation or decision officially adopted and promulgated by [the Board]'s officers," *Monell,* 436

17

U.S. at 690, 98 S.Ct. 2018; (2) a custom that, while not formally adopted by the Board, was "so permanent and well settled" as to have "the force of law," *Id.* at 691, 98 S.Ct. 2018; or (3) a decision by an official who possesses "final authority to establish municipal policy with respect to the action ordered." *Brown v. City of Ft. Lauderdale,* 923 F.2d 1474, 1480 (11th Cir.1991) (quoting *Pembaur v. City of Cincinnati,* 475 U.S. 469, 481, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986)).

In the present case, Jacobs challenges provisions of state legislation. Defendants are following the rules and regulations established by the City-County of Montgomery Personnel Department pursuant to Act 2280, *ALA. Acts* (1971), which states in pertinent part:

> Section 9:
>
> [(a)]  The governing bodies of the county and municipality and any officer in whom is vested by law the power to make transfers, promotions, demotions, reinstatements, layoffs, and to suspend or dismiss employees, shall retain such power, subject to the provisions of this act and the rules established hereunder, it being the intent and spirit of this act to provide a fair and just approach to county and municipal employment in order that employees may be selected and promoted on a merit basis, but in no sense to impair the efficiency of the public service.
>
> (b)  Any person holding a position or employment in the competitive service shall be subject to suspension without pay by the appointing power and without right of appeal, but such suspension shall not exceed a total of 30 days in any fiscal year.

It is well established that a local government agency or its officials "may only be liable under §1983 if an action pursuant to official policy of some nature caused a constitutional tort." *Church v. City of Jacobssville*, 30 F. 3d 1332, 1342 (11th Cir. 1994); *Dowdell v. Chapman,* 730 F. Supp. 533, 545 (M.D. Ala. 1996) (causal link must be established between official policy and custom and plaintiff's injury).  It is only when execution of municipal policy or custom inflicts constitutional injury that the municipality or its official policymakers are responsible under §1983.  *Monell v. New*

*York Dept. of Social Services, supra* at 694. The Plaintiff must show the official policy or custom was the reason behind the alleged constitutional deprivation. *Farred v. Jacobs, supra.*

A governmental entity can only be held responsible under §1983 for the unauthorized actions of its employees when its final decision makers participated in a policy or custom which resulted in a constitutional violation or when constitutional violations arise from a "custom", even though the custom is not the product of a formal adoption by the municipal policy making authorities. *Monell*, 436 U.S. 658, 690-691.

Jacobs cannot succeed on her claim against the City under 42 U.S.C. § 1983. Jacobs can identify no custom or policy that has violated her constitutional rights. Due process in the form of notice and a hearing was provided to Jacobs regarding her suspension by City Defendants. Defendants are bound and governed by Act 2280, *ALA. Acts* (1971). On these facts, the City of Montgomery is entitled to summary judgment on all claims.

## V.

### CONCLUSION

Plaintiff Elizabeth Jacobs challenges the constitutionality of certain sections of Act 2280, *ALA. Acts (1971)* ("the Merit System Act") and the Rules and Regulations passed by the City-County of Montgomery Personnel Board ("the Rules") which augment and clarify of the Merit System Act. For the reasons set forth herein, Defendants City of Montgomery, Mayor Bobby Bright and Richard Allen are entitled to summary judgment on all claims as a matter of law.

Plaintiff has not notified the Attorney General, pursuant to § 6-6-227, *ALA.Code* 1975, that she is challenging the constitutionality of Act 2280. Service on the attorney general is mandatory and jurisdictional. *Barger v. Barger,* 410 So.2d 17 (Ala.1982). If the party challenging the constitutionality of a statute or act fails to serve the attorney general with notice, the trial court has

no jurisdiction to decide the constitutional claim, *Guy v. Southwest Alabama Council on Alcoholism,* 475 So.2d 1190 (Ala.Civ.App.1985).

The Rules are promulgated by the City-County of Montgomery Personnel Board and not those of the City of Montgomery. The Personnel Department is a separate entity from the City and serves as the personnel department for the City, the County of Montgomery, the Montgomery Airport Authority and the Montgomery Housing Authority. The Personnel Department consists of the Personnel Board and the Personnel Director and such other employees to assist the agencies. One of the functions of the Board is to formulate and promulgate a set of rules to supplement the Merit System Act.

Plaintiff cannot prevail against Defendants on her Fifth Amendment due process claim. The Fifth Amendment Due Process Clause cannot provide a basis for liability here because it "applies only to the federal government." *Sweatt v. Bailey*, 876 F. Supp. 1571, 1582 (M.D. Ala. 1995).

Nor can Plaintiff cannot claim violation of Fourteenth Amendment substantive due process as her property right in employment is created by state law, Act 2280, *ALA. Acts* (1971). The Eleventh Circuit held that "areas in which substantive rights are created only by state law (as is the case with tort law and employment law) are not subject to substantive due process protection under the Due Process Clause because 'substantive due process rights are created only by the Constitution.' " *McKinney v. Pate,* 20 F.3d 1550, 1556 (11th Cir.1994)

Additionally, when Defendant Allen met with Plaintiff and advised her of the charges against her, Plaintiff requested and was given an administrative hearing with Museum Director Mark Johnson. Therefore Plaintiff's procedural due process claims under the Fourteenth Amendment also fail. Due process requires that a "tenured public employee is entitled to oral or written notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his

side of the story." *Black v. City of Auburn,* 857 F. Supp. 1540 (M.D. Ala. 1994). Here, Plaintiff was provided with oral notice of the charges by the Assistant Museum Director and subsequently provided with written notice from her direct supervisor, Defendant Allen. After Plaintiff's administrative hearing before the Museum Director, Plaintiff's suspension was reduced from five days to three. It is clear that Plaintiff received and benefitted from her due process.

Finally, Defendants did not violate Plaintiff's right to equal protection of the law as provided by the Fourteenth Amendment. Plaintiff did not identify any other similarly situated permanent employees who were treated differently nor does she claim that her suspension was the product of constitutionally improper motives.

Jacobs' claims against individual Defendants Bobby Bright and Richard Allen are wholly based on their performance of discretionary functions of their jobs acting in their official capacity.

Qualified immunity is an affirmative defense to an action pursuant to § 1983 against a government official sued in his or her individual capacity. *See Wilson v. Strong,* 156 F.3d 1131, 1135 (11th Cir.1998). Under the doctrine of qualified immunity, "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person should have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). Defendants Bright and Allen are entitled to qualified immunity and all claims against them are due to be dismissed.

Also, Jacobs cannot succeed on her claim against the City under 42 U.S.C. § 1983. Put simply, there is no custom or policy that has violated Jacobs' constitutional rights.

Conclusory allegations cannot interpose genuine issues of material fact into the litigation so as to preclude entry of summary judgment. *Fed.Rules Civ.Proc.*Rule 56(c). For the reasons stated

herein, Defendants are entitled to summary judgment on all claims.

Respectfully submitted this the 4th day of March, 2008.

/s/ Kimberly O. Fehl
Kimberly O. Fehl (FEH001)

City of Montgomery
Legal Department
Post Office Box 1111
Montgomery, Alabama  36101-1111
Telephone:  (334) 241-2050
Facsimile:   (334) 241-2310

## CERTIFICATE OF SERVICE

I hereby certify that I have mailed a copy of the above and foregoing to the following by electronic mail or by placing a copy of same in the United States Mail, postage prepaid, this 4th day of March 2008:

Bruce Boynton.
Bruce Carver Boynton, LLC
Post Office Box 389
Selma, AL 36702

/s/ Kimberly O. Fehl
OF COUNSEL

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

ELIZABETH JACOBS,        *
                              *
     Plaintiff,          *
                              *
vs.                          *     CASE NO:  2:07-cv-675-WKW
                              *
BOBBY N. BRIGHT,       *
RICHARD ALLEN and     *
THE CITY OF MONTGOMERY and    *
                              *
     Defendants.        *

## AFFIDAVIT OF BARBARA M. MONTOYA

Before me, the undersigned authority, personally appeared Barbara M.
Montoya, who is known to me and who, being first duly sworn, deposed on oath, and
says as follows:

My name is Barbara M. Montoya. I am over nineteen years of age. I am currently
employed as the Director of the City-County of Montgomery Personnel Department. It is
in that capacity that I state the following:

The City-County of Montgomery Personnel Department was created by
legislative act in 1949 to establish a classified (merit) system for City-County employees.
The City-County of Montgomery Personnel Department is a separate entity from the City
of Montgomery and serves as the personnel department for the City of Montgomery
(City), the County of Montgomery, the Montgomery Airport Authority and the
Montgomery Housing Authority. The Personnel Department consists of the Personnel
Board and the Personnel Director and such other employees as required to provide
services to operating agencies.

1



The Personnel Board ("the Board") consists of three (3) members appointed in the following manner: One by the governing body of Montgomery County, one by the governing body of the City of Montgomery, and one by a majority of the circuit judges and probate judge, of the county. The functions of the Board are: (1) To formulate and promulgate a set of rules to supplement the Merit System Act, which is Act 2280 of the Acts of 1971, Regular Session, approved by the Governor, October 1, 1971; (2) To act in an advisory capacity to the governing bodies of the county and municipality on problems concerning personnel administration and (3) As provided by the Merit System Act and by rule, to hear and decide appeals submitted by any person in the classified service relative to any situation connected with the employment status or condition of employment.

The City-County of Montgomery Personnel Board Rules and Regulations ("the Rules") are an augmentation and clarification of the Merit System Act. They set forth principles and procedures that are to be followed by the City-County of Montgomery Personnel Department in order that personnel administration in the city, county and other services may be conducted in accordance with sound and effective principles of public personnel administration. Attached to my affidavit as *Exhibit A* is a copy of Act 2280 and the City-County of Montgomery Personnel Board Rules and Regulations.

The Personnel Director is charged with administration of the rules, except for those sections specifically reserved to the Personnel Board. Amendments and revisions of these rules may be initiated by the Personnel Board, Personnel Director, the City Council, County Commission or any appointing authority. Amendments and revisions to the rules shall become effective upon approval by the Personnel Board.

2

Additionally, the City, the County, the Montgomery Airport Authority and the Montgomery Housing Authority also have departmental or other internal policies and procedures regarding such issues as drug testing, nepotism and progressive discipline which are not part of the City-County of Montgomery Personnel Rules and Regulations.

The Personnel Department maintains personnel files on City employees. Elizabeth Jacobs personnel file indicates that she was hired as a Museum Security Officer for the City of Montgomery effective June 16, 2006. Ms. Jacobs was suspended for three days in March 2007. As Personnel Director, I am the custodian of records for the Personnel Department. Attached to my affidavit as *Exhibit B* is Form 10 – Personnel Department Recommendation for Personnel Action and supporting documentation which reflects the dates and grounds for Ms. Jacobs' suspension. Ms. Jacobs also received a merit increase in March 2007. Attached to my affidavit as *Exhibit C* is the City of Montgomery Merit Increase form which reflects her salary increase.

I have read the above and foregoing affidavit consisting of three (3) pages and state that it is true and correct to my present knowledge and information.

Barbara M. Montoya
Affiant

**SWORN TO AND SUBSCRIBED** before me this 3 rd day of March, 2008.

Notary Public

(SEAL)

My Commission Expires 3-16-11

3

3671

*Be It Enacted by the Legislature of Alabama:*

Section 1. That Section 455 of Title 37, Code of Alabama 1940, be, and the same is hereby amended to read as follows:

"Section 455. POWER TO ADOPT AND ENFORCE ORDINANCES.—Municipal corporations may, from time to time, adopt ordinances and resolutions not inconsistent with the laws of the state, to carry into effect or discharge the powers and duties conferred by this title, and provide for the safety, preserve the health, promote the prosperity, improve the morals, order, comfort, and convenience of the inhabitants of the municipality, and enforce obedience to such ordinances by fine not exceeding two hundred dollars ($200.00), and by imprisonment or hard labor not exceeding six months, one or both."

Section 2. This act shall become effective immediately upon its passage and approval by the Governor or upon its otherwise becoming a law.

Approved October 1, 1971.

Time: 1:28 P.M.

———

Act No. 2280                    S. 478—Pierce, Jones

AN ACT

Creating and establishing a county-wide personnel system for all counties of the State of Alabama having a population of not less than 150,000 people and not more than 180,000 people and for municipalities in such counties having a population of 5,000 or more people, all according to the last or any subsequent Federal Census; providing for a personnel department to be composed of a personnel board and a personnel director; providing for the composition, powers, duties, functions and expenses of the Board and for the selection and compensation of its members; providing for the continued service of any board presently serving under any prior Act of the Legislature; providing for the selection, powers, duties and compensation of the personnel director; to require certification of county, municipal, public corporation, board and commission payrolls; making it a misdemeanor to violate the provisions of the Act; repealing all laws or parts of laws inconsistent with the provisions hereof; and providing for an effective date of this Act.

*Be It Enacted by the Legislature of Alabama:*

Section 1. (a) In each county of the State which has a population of not less than 150,000 people and not more than 180,000 people, according to the last or any subsequent Federal Census, there is hereby created and established a personnel department for the government and control of all employees and appointees holding positions in the classified service, as defined in Section 4, of each such county and in all municipalities in

DEFENDANT'S
EXHIBIT

A

each such county having a population of 5,000 or more people according to the last or any subsequent Federal Census.

(b)  The Personnel Department shall consist of a Personnel Board and a Personnel Director.  The Personnel Board shall consist of three members with six year terms, to be appointed in the following manner: one by the governing body of the county, one by the governing body of the municipality therein having the greatest population at the time of such appointment according to the most recent Federal Census, and one by a majority of the circuit judges and probate judge of the county.  At the expiration of the term of each member, his successor shall be appointed for a term of six years by the authority appointing the member whose term has expired; provided, however, that any personnel board appointed pursuant to the provisions of any prior acts of the Legislature affecting such counties and municipalities affected by the provisions of this Act, shall continue to serve as the personnel board under the provisions of this Act until the expiration of their respective terms under the prior acts of the Legislature.  Vacancies on the Board shall be filled for the unexpired term by the authority appointing the vacating member.

(c)  The members of the Board shall be qualified electors of the county.  No person shall be appointed to the Board who holds any salaried public office or employment, nor shall any member, while a member of the Board or for a period of one year after he has ceased for any reason to be a member, be eligible for appointment to any salaried office or employment in the service of the county or municipality or any county or municipal elective office.

(d)  The Board shall hold one regular meeting each month and such special meetings as it shall deem necessary.  The members of the Board shall receive twenty-five dollars ($25) per diem for each meeting of the Board they attend.

Section 2.  The members of the Board shall elect one of their number as chairman.  The Board shall determine the order of business for the conduct of its meetings and shall meet on the call of the chairman or two of the members.  Two members of the Board shall constitute a quorum for the transaction of business.  The functions of the Board shall be:

(a)  To formulate and promulgate a set of rules to supplement this Act and revisions and amendments thereof.

(b)  To act in an advisory capacity to the governing bodies of the county and municipality on problems concerning personnel administration.

(c)   As provided by this Act and by rule, to hear and decide appeals submitted by any person in the competitive service relative to any situation connected with his employment status or condition of employment.

(d)   In any investigation or hearing conducted by the Board, it shall have the power to examine witnesses under oath and compel their attendance or the production of evidence before it by subpoenas issued in the name of county or municipality. Each member of the Board shall have the power to administer oaths to witnesses.

(e)   To hold hearings on and adopt or revise the position classification plan.   The Board shall adopt a position classification plan and class specifications and revisions thereof, allocate and reallocate positions in the competitive service to classes.

(f)   To establish, after consultation with the governing body of the county and the governing body of municipalities and the elective officials of the county, coming within the provisions of this act, a pay plan for all employees in the classified service. Such pay plan shall include, for each class of positions, a minimum and a maximum rate or rates as may otherwise in specific instances be fixed by law and such intermediate rates as may be deemed necessary or advisable by the Personnel Board.

**Section 3.**   (a)   The Personnel Board shall appoint a Personnel Director whose duty it shall be to act in the capacity of director for the Personnel system.   He shall act as secretary at Board meetings, and shall be the Board's executive officer, but shall not have a vote in determining the Board's policy. He shall perform such duties as are assigned to him by the Board. The compensation of the Director shall be fixed by the Board at a sum not to exceed the maximum rate adopted for classified employees who serve as department heads or as the administrative officers for a department.   The Director shall:

(1)   Attend all meetings of the Personnel Board.

(2)   Administer all provisions of this Act and the rules established hereunder, not specifically reserved to the Personnel Board.

(3)   Under the directions of the Board, prepare rules, and revisions and amendments thereof for the consideration of the Board.

(4)   Under the direction of the Board, prepare a position classification plan and class specifications and provisions thereof, for the consideration of the Board.

(b)   The Director shall recommend to the Board and the Board shall establish, after consultation with the governing body

of the county and the governing body of municipalities and the elective officials of the county, coming within the provisions of this Act, a pay plan for all exempted or unclassified employees except:

Officials elected by popular vote and, in case of death, resignation, or removal, their legal substitutes.

Members of appointive boards, commissions or committees.

Employees appointed or employed by the county or city board of education.

Persons in the "Classified Service" within the meaning of and subject to the State of Alabama Merit System under any present or future law, and so long as any such law remains effective and any person whose employment is subject to the approval of the United States Government or any agency thereof.

The Register of the Circuit Court, and the bailiff and court reporter appointed by each judge of the Circuit Court.

Any employee receiving his compensation from any elected official.

Attorneys, physicians, surgeons and dentists who serve part time, excepting the City Recorder and City Prosecutor.

The County Agent, Assistant County Agent, Home Demonstration Agent and Assistant Home Demonstration Agent.

**Section 4.** The provisions of this Act shall apply to all officers and employees in the service of the county and affected municipalities, except:

(a) Elective officials. Provided however, that in the event the status of an elective officer of the county or municipality is changed to that of an appointive officer, then at the expiration of the term of office of any such officer, the person holding the office at the time of the expiration of the term, providing that he shall have served in such position for a period of at least six months continuously, immediately prior to the expiration of the term of office, shall assume regular status in the competitive service without preliminary examination or working tests and shall thereafter be subject in all respects to the provisions of this Act.

(b) Members of appointive boards, commissions, and committees.

(c) All employees or appointees of the city or county board of education, or persons engaged in the profession of teaching or in supervising teaching in the public schools; excepting, how-

3675

ever, personnel employed in kindergartens or schools not a part of the city or county school system operated under the direction and supervision of the city or county board of education.

(d)   Common laborers.

(e)   Attorneys, physicians, surgeons and dentists who, with the express or implied permission of any appointing authority or of the county or municipality, hold themselves out for employment by others in the same or a like line of work as that performed by them for such appointing authority; excepting, however, municipal recorders or assistant recorders and city or municipal prosecutors or assistant city or municipal prosecutors.

(f)   The personnel director provided for by this Act.

(g)   Persons in the "classified service" within the meaning of and subject to the State of Alabama merit system under any present or future law, and so long as any such law remains effective.

(h)   One private secretary or executive assistant of a member of the governing body of such municipality, the bailiff appointed by each judge of the circuit court, and two clerks to be designated by each county elective official and also the Register of the Circuit Court except the member of the Board of Revenue; and any employee receiving his compensation from any elected official of the county.

Offices, positions and employments not exempted above shall constitute the competitive or classified service of the county and affected municipalities. It is intended hereby to include within the competitive or classified service all offices, positions and employments in each such county and any such municipalities therein as these offices, positions and employment now exist, or as they may hereafter exist, the holders of which are paid, whether by salaries, wages and fees, in whole or in part from funds of any such county or municipality, or the holders of which receive their compensation from any elected official and perform duties pertaining to the office of such elected official or officer except those hereinabove numerated in this Section. It is also intended hereby that the competitive or classified service shall include all personnel of any public corporation, board, committee, or commission, appointed or created by the governing body of any such county or municipality whether the salaries, wages or compensation of such officers or employees are paid directly by such county or municipality; provided, however, the appointed members of any such public corporation, board, committee or commission shall not be included in the competitive or classified service.

(i)   One clerk, deputy or employee to be named by the Clerk of the Circuit Court for his office, and one clerk, deputy or employee to be named by the Register of the Circuit Court for his office.

Section 5.   In addition to such other matters as may be necessary and proper to carry out the intent and purposes of this Act, rules shall be formulated and adopted by the Personnel Board establishing specific procedures to govern the following phases of the personnel program:

(a)   The preparation, installation, revision and maintenance of a position classification plan covering all positions in the competitive service.

(b)   The formulation of minimum standards and qualifications for each class of position.

(c)   The public announcement of vacancies and examinations and the acceptance of applications for employment.

(d)   The preparation and conduct of examinations and the establishment and use of employment lists containing names of persons eligible for appointment.

(e)   The certification and appointment of persons from employment lists to fill vacancies and the making of temporary and emergency appointments.

(f)   The evaluation of employees during the probationary period.

(g)   The transfer, promotion, demotion and reinstatement of employees in the competitive service, provided that no person shall be transferred, promoted or demoted without the approval of the officer in whom the power to make the appointment is vested by law.

(h)   The separation from the service of employees through layoff, suspension, dismissal, and for incapacity to perform required duties.

(i)   The standardization of hours of work, attendance and leave, regulations, working conditions, and the development of employee morale, welfare and training.   Provided, that no rule or regulation shall prohibit or prevent any employee from working over-time should it be necessary in the public interest in the opinion of the officer in whom the power to make appointments is vested by law; however, any employee who works overtime shall be compensated therefor only by overtime pay for any overtime work performed over forty (40) hours per weeks, holidays. or beyond the normal tour of duty.

(j)  The mantenance and use of necessary records and forms.

**Section 6.**  (a)  Appointments to vacant positions in the competitive or classified service shall be made in accordance with the rules established hereunder and from employment lists resulting from competitive examination, or by promotion, transfer, demotion or reinstatement.  Appointments shall be made by the governing body of the county or municipality, or by the officer in whom the power to make appointments is vested by law.

(b)  If appointment is to be made from employment or promotional lists, the names of persons willing to accept appointment shall be certified by the Personnel Director in the order in which they appear on the lists.  The number of names certified shall exceed by four the number of vacancies to be filled.

(c)  In the absence of appropriate employment lists, a temporary appointment may be made by the appointing power of a person meeting the minimum qualifications for the position, provided, however, that an employment list shall be established for such position within ninety days.  No person shall be employed under temporary appointment for a total of more than ninety days in any fiscal year.  In the event of emergency, the appointing power may appoint such persons as are required to meet the situation but such appointment shall not exceed thirty working days, except in case of a war emergency so declared by an Act of Congress, such appointments may continue until the termination of such emergency.

(d)  No credit shall be allowed in the giving of any examination or the establishment of any employment or promotional lists, for service rendered under a temporary appointment.

(e)  During the period of suspension of any employee, or pending final action on proceedings to review the suspension, demotion or dismissal of any employee, the vacancy created may be filled by the appointing power only by temporary appointment.

**Section 7.**  (a)  All original and promotional appointments shall be for a probationary period of six months during which the employee may be rejected by the appointing authorities as set out in Section 6 (a) herein at any time without right of appeal or hearing in any manner.

(b)  An employee rejected during the probationary period from a position to which he has been promoted shall be reinstated to the position from which he was promoted, unless charges are filed and he is discharged as provided in this Act and the rules.

3678

(c)  Any employee in the competitive service promoted or transferred to a position not included in the competitive service shall be reinstated to the position from which he was promoted or transferred if within six months after such promotion or transfer action is taken to dismiss him, unless charges are filed and he is discharged in the manner provided in this Act and the rules established hereunder for positions in the competitive service.

Section 8.  (a)  Any person holding a position or employment included in the competitive service, who, on the effective date of this Act, shall have served continuously in such position, or in some other position included in the competitive service, for a period of at least six months immediately prior to such effective date, shall assume regular status in the competitive service in the position held on such effective date without preliminary examination or working tests and shall thereafter be subject in all respects to the provisions of this Act.

(b)  Any other persons holding positions or employments in the competitive service shall be regarded as holding their positions or employment as probationers who are serving out the balance of their probationary periods before obtaining regular status.

Section 9.  The governing bodies of the county and municipality and any officer in whom is vested by law the power to make transfers, promotions, demotions, reinstatements, layoffs, and to suspend or dismiss employees, shall retain such power, subject to the provisions of this Act and the rules established hereunder, it being the intent and spirit of this Act to provide a fair and just approach to county and municipal employment in order that employees may be selected and promoted on a merit basis, but in no sense to impair the efficiency of the public service.

(b)  Any person holding a position or employment in the competitive service shall be subject to suspension without pay by the appointing power and without right of appeal, but such suspension shall not exceed a total of thirty days in any fiscal year.

Section 10.  (a)  Any employee in the competitive service who has been demoted, dismissed or reduced in pay, shall be entitled to receive a written statement of the reasons for such action within three days, and he shall have three days' time thereafter within which to answer in writing thereto.  A copy of such charges and answer shall be filed with the Personnel Director.  In the event the employee files an answer, a copy of such written charges and of such answer shall be transmitted by the Personnel Director to the Personnel Board.  Within ten

days from the date of filing his answer to the written charges, or in the event such written charges have not been made available to him within the time prescribed, then within ten days after the action taken to demote, dismiss or reduce the pay of the employee, he may file a written demand with the Personnel Director requesting a hearing before the Personnel Board. The Board shall then investigate the case and conduct a hearing as provided by this Act and by the rules.

(b)   The provisions of this Section and of Section 11 shall not apply to reductions in pay which are part of a general plan to reduce salaries and wages as an economy measure or as a part of a general curtailment program.

**Section 11.**  (a)  Any employee in the competitive service shall have the right to appeal to the Personnel Board relative to any situation affecting his employment status or conditions of employment except in instances where the right of appeal is prohibited by this Act.  Thereupon the Board shall make such investigation as it may deem necessary and within twenty days after the request for hearing was filed by the employee, the Board shall hold a hearing, at which time it shall hear evidence for and against such employee.  Hearings may be informally conducted and the rules of evidence need not apply.

(b)  Within ten days after concluding the hearing, the Personnel Board shall certify its findings and order to the authority from whose action the appeal was taken.  Such official shall then affirm, revoke or modify the action taken so as to conform with the findings and order of the Board.  The findings and order of the Personnel Board shall be final and conclusive and shall not be reviewable in any court.

**Section 12.**  Whenever in the judgment of the governing body of the county or municipality or any elected county official it becomes necessary in the interest of economy or because the necessity for any position in its or his department no longer exists, it or he may abolish any position or employment in the competitive service and lay off the employee holding such position or employment without filing written charges and without the right of appeal.  The name of such an employee so laid off shall be placed at the top of the appropriate employment list or lists as provided by the rules.

**Section 13.**  (a)  No person holding a position in the competitive service shall seek or accept election, nomination or appointment as an officer of a county or municipal political club or organization, or take an active part in, or make any contribution or donation to, any county or municipal political campaign, or serve as a member of a committee of such club or organization or circle, or seek signatures to any petition provided

for by any election law, or act as a worker at the polls, or distribute badges or pamphlets, dodgers, or handbills of any kind favoring or opposing any candidate for election, or for nomination to a public office, whether county or municipal; provided, however, that nothing in this Act shall be construed to prevent any such officer or employee from becoming or continuing to be a member of a political club or organization, or from attendance at a political meeting, or from enjoying entire freedom from all interference in casting his vote or from seeking or accepting election or appointment to a public office.

(b) Any wilful violation of this Section, or violation through culpable negligence, shall be sufficient grounds to authorize the discharge of any person in the competitive service.

Section 14. No officer, agent, clerk or employee, under the government of the county or municipality and no candidate for any county or municipal office shall, directly or indirectly, solicit or receive, or be in any manner concerned in soliciting or receiving, any assessment, subscription or contribution, whether voluntary or involuntary for any political purpose whatsoever, from anyone holding any position in the competitive service under the provisions of this Act.

Section 15. In any matter requiring the services of an attorney, the personnel board may call upn the county or city attorney of any such county or city to render such legal services to the board as it may deem necessary or advisable, or the board may employ independent counsel and the compensation of such independent counsel shall be paid as other employees of the board are paid.

Section 16. The compensation and all other expenses of the Personnel Board, the Personnel Director and all others arising under the provisions hereof, shall be paid by warrants drawn by the Board of Revenue on the General fund of the county. At the end of the county's fiscal year it shall prorate the total sum which it has expended for the purpose of this Act between itself and the municipality subject to this Act, charging each with such part of the total sum so expended as the total number of employees of such county, or municipality, who were subject to the provisions of this Act on the last day of the county's fiscal year, bears to the total number of employees of both county and municipality subject to the provisions of this Act on such last day of the county's fiscal year. The sum so arrived át by the county as the proper contribution of each shall be certified to the Personnel Director and when approved by him in writing, shall become a liability of the municipality and shall be paid immediately to the county. In the event the salaries of a county or municipality are paid in part from different treasuries or different funds, in the same treasury, the liability for this con-

3681

tribution shall accrue against such various treasuries or funds in the same proportion, as the salaries of the employees of the county or municipality are paid therefrom. In the event any contribution levied hereunder shall not be paid within thirty days after approval by the personnel Director, the county may bring suit therefor in any court of competent jurisdiction and any judgment so recovered shall be satisfied from any funds in such treasury or funds against which such contribution levy lies.

Section 17.  It shall be unlawful for any county, municipal, public corporation, board or commission, official, officer or employee, or any other fiscal officer, to draw or issue any warrant to the county, municipal, public corporation, board or commission treasury, or county, municipal, public corporation, board or commission depository, for the payment of any salary or compensation to any person in the county, municipal, public corporation, board or commission service for personal services, unless the payroll, estimate, voucher, or account for such salary or compensation containing the name of the person to be paid shall bear the certification of the head of the department wherein such person works that the person or persons named therein are employees of the county, municipality, public corporation, board or commission and are legally entitled to receive the sums stated therein.

Section 18.  Any person who violates any of the provisions of this Act shall be guilty of a misdemeanor.

Section 19.  The provisions of this Act are severable. If any part of the Act is declared invalid or unconstitutional, such declaration shall not affect the part which remains.

Section 20.  All laws or parts of laws general, local or special, which conflict with this Act are repealed.

Section 21.  This Act shall become effective immediately upon its passage and approval by the Governor, or upon its otherwise becoming a law.

Approved October 1, 1971.

Time: 1:28 P.M.

---

Act No. 2281

S. 664—Cooper

# AN ACT

Authorizing consent to legally authorized medical, dental, health and mental health services by some minors, minor parents and others and not requiring consent under certain circumstances or conditions and providing indemnity from damages by persons relying on these consents.

# CITY AND COUNTY OF MONTGOMERY

# PERSONNEL BOARD

# RULES AND REGULATIONS

**ALABAMA LAW PROVIDES THAT THESE RULES AND REGULATIONS HAVE THE FORCE AND EFFECT OF LAW.**

**AN EQUAL OPPORTUNITY EMPLOYER**

**As Revised March 1988 and Including all Board Amendments through August 28, 2007**

# TABLE OF CONTENTS

**RULE I**     -     **DEFINITIONS** ........................................................................... 1-3

**RULE II**     -     **GENERAL PROVISIONS** ........................................................4
       Section 1    Purpose .........................................................................4
       Section 2    Positions Covered by the Rules .......................................4
       Section 3    Adoption of Rules ...........................................................4
       Section 4    Administration of Rules ..................................................4
       Section 5    Amendment of Rules .......................................................4
       Section 6    Maintenance of Records .................................................. 4

**RULE III**     -     **ORGANIZATION OF FUNCTIONS** ......................................5
       Section 1    The Personnel Department ...............................................5
       Section 2    The Personnel Board ..................................................... 5-6
       Section 3    The Personnel Director .................................................. 6-7

**RULE IV**     -     **THE UNCLASSIFIED SERVICE AND CLASSIFIED SERVICE** ..............8
       Section 1    The Unclassified Service ............................................... 8-9
       Section 2    The Classified Service ....................................................9

**RULE V**     -     **THE CLASSIFICATION PLAN** ...........................................10
       Section 1    Purpose .......................................................................10
       Section 2    Class Titles .................................................................10
       Section 3    Class Specifications .................................................. 10-11
       Section 4    Amendment of Classification Plan .................................11
       Section 5    Allocation of Positions .................................................11

**RULE VI**     -     **THE PAY PLAN** ................................................................12
       Section 1    Establishment .............................................................12
       Section 2    Composition of the Pay Plan .........................................12
       Section 3    Development of Pay Ranges ..........................................12
       Section 4    Adoption of Plan .........................................................13
       Section 5    Adjustment at Time of Adoption ............................... 13-14
       Section 6    Beginning Rates ..........................................................14
       Section 7    Within Range Adjustments ...........................................14
       Section 8    Interpretation of Pay Ranges ........................................15
       Section 9    Pay for Part-Time Employees .................................. 15-16
       Section 10   Pay Adjustments in Assignments, Transfers, Promotions, Demotions ...…..16-17
       Section 11   Pay Adjustments in Reallocations ................................17
       Section 12   Pay for Re-employment ...............................................17
       Section 13   Deductions from Pay of Exempt Employees .....................18
       Section 14   Certification of Payroll ................................................18

**RULE VII**     -     **RECRUITMENT AND EMPLOYMENT** ......................................19

Section 1     Recruitment by Competitive Examination ........................................19
Section 2     Notices of Examination ........................................19
Section 3     Employment Lists and Their Use ........................................20
Section 4     Veteran's Preference ………………………………………………… 20-

21

Section 5.    Duration of Employment Lists ........................................21
Section 6     Removal from Eligible Registers ........................................21
Section 7     Disqualification from Competition ...………………………………………22
Section 8     Procedure for Filling Vacancies ........................................ 22-24
Section 9     Temporary Appointments ........................................ 24-25
Section 10    Transfers ........................................25
Section 11    Emergency Appointments ........................................25
Section 12    Probationary Period ........................................25
Section 13    Provisional Appointment ........................................25
Section 14    Equal Employment Opportunity ........................................26
Section 15    Workplace Harassment ........................................ 26-27
Section 16    Workplace Violence ........................................27-27(a)

**RULE VIII   -     WORKING CONDITIONS AND GENERAL**
**PERSONNEL PRACTICES** ........................................28
Section 1     Working Hours ........................................28
Section 2     Overtime ........................................ 28-29
Section 3     Legal Holidays ........................................ 30-32
Section 4     Annual Leave ........................................ 33-34
Section 5     Sick Leave ........................................ 34-35
Section 6     Other Leave Due to Illness, Injury or Family Care ........................................ 36-41
Section 7     Military Leave ........................................42
Section 8     Worker's Compensation ........................................42
Section 9     Other Leave With Pay ........................................43
Section 10    Leave Without Pay ........................................43
Section 11    Absence Reports ........................................44
Section 12    Service Rating ........................................44
Section 13    Rights of Review and Appeal ........................................ 44-45

**RULE IX    -     SEPARATIONS AND DISCIPLINARY ACTION** ........................................46
Section 1     Resignation ........................................46
Section 2     Layoff ........................................46
Section 3     Demotion ........................................46
Section 4     Suspension ........................................47
Section 5     Dismissal ........................................47
Section 6     Position Abolishment ........................................47

**RULE X     -     PROHIBITIONS OF POLITICAL ACTIVITY** ........................................ 48-50

**PROCEDURE FOR CONDUCTING HEARINGS** ........................................ 51-53
**RULES 0F PROCEDURE (Alabama Open Meetings Act)** ………………………………………54-63
**POLICY FOR RECORDING PROCEDURES** ………………………………………64-65

# RULE I - DEFINITIONS

The words and phrases defined below shall have the meanings assigned herein in these rules and in all personnel policies, procedures and transactions:

**Act**, or Merit System Act, means Act 2280 of the Acts of 1971, Regular Session, approved by the Governor, October 1, 1971.

**Allocation**, means the assignment of position to a class on the basis of the kind, difficulty and responsibility of work of the position.

**Anniversary Date**, means the annual recurrence of the date of employment, or the date of a change of classification due to the upgrade, promotion or demotion of an employee.

**Appointing Authority**, means the governing body, officer, board, commission, person or group of persons empowered to appoint or remove employees from positions of employment in the City or County service.

**Assignment**, is a temporary special duty which is made by the appointing authority and approved by the Personnel Board, for which additional pay is awarded. Assignment is not a transfer within the meaning of this rule.

**Bands/Banding**, the statistical grouping of a range of scores in which candidates are considered to be equally qualified with respect to the knowledge, skills, and abilities measured by a selection procedure.

**Certify**, Certification, means the act of supplying the appointing authority with names of applicants eligible for appointment to the class and position for which certification is requested.

**Class**, means a position or group of positions that involve similar duties, responsibilities, and qualifications and is designated by a single title and indicative of the kind of work.

**Demotion**, means a change of employment from a position of one class to a position of another class having a lower maximum salary limit than the original class.

**Eligible**, means a person is on an active, re-employment, promotional or employment list and has rights under these rules to be certified for appointment to positions of a class.

**Employee**, means a person legally occupying a position in the classified service or a person who is on authorized leave of absence and whose position is being held pending a return.

RULE I                                                                                           2

**Layoff**, means a separation of an employee from the classified service of the City or County made necessary by lack of work, funds or other reasons not related to fault, delinquency or misconduct on the part of the employee.

**Original Appointment**, means the appointment of a person to a position in the classified service who is not a present employee of the City and County and who is not being reinstated from a re-employment list.

**Position**, means a group of current duties and responsibilities assigned or delegated by competent authority and requiring the full or part-time services of an employee.

**Promotion**, means a change of employment from a position of one class to a position of another class which has a higher maximum salary rate.

**Provisional Appointment**, means an appointment made of an employee who must meet applicable state licensing requirements before attaining permanent status.

**Reallocation**, means the official determination that a position be assigned to a class different from the one in which it has been previously assigned.

**Register**, means an employment list of names of persons arranged in order of their rating for classes of employment in which they have competed and qualified to be appointed.

*****Re-employment List**, means a list of permanent employees for a class who voluntarily separated in good standing or were laid off by reason of shortage of funds or work, or changes in organization who desire to be re-employed.

*****Re-instatement**, means that an employee who has been demoted to a lower class may be returned to the former class.

**Veterans Re-employment Rights**, means the rights afforded to Veterans of any branch of service, National Guard, Reserve Unit, State Militia requesting re-employment pursuant to Title 38 Chapter 43 of the United States Code.

**Selective Certification**, means the act of supplying the appointing authority with the names of minority applicants in ranked order selected from the total list of eligible applicants for a class.

**Service**, means all positions in any one of the jurisdictions placed within the classified service under the Act.

*Revised 2/25/05

**RULE 1**                                                                          **3**

**Step increase**, means a within range adjustment of a full step increase in pay recognizing either time in service or employee performance which may be awarded on the anniversary date of the employee.

**Transfer**, means a change by an employee from one position to another position of the same class or of another class with the same maximum salary rate, involving the performance of similar duties and requiring essentially the same basic qualifications. Transfer is not an assignment with the meaning of this rule.

**Upgrade**, means the promotion of a service maintenance worker, recreation aide or library page to a position of another class which has a higher maximum salary rate.

**Vacancy**, means a position duly created, with funds provided for payment of salary, which is not occupied, and for which a valid request has been received by the Personnel Department.

**4**

# RULE II - GENERAL PROVISIONS

**Section 1:    Purpose**

These rules are an augmentation and clarification of the Merit System Act.  They set forth principles and procedures that are to be followed by the City and County Personnel Department in order that personnel administration in the city, county and other services may be conducted in accordance with sound and effective principles of public personnel administration.

**Section 2:    Positions Covered by the Rules**

These rules shall apply to all classified positions and offices of the City and County and subordinate agencies of each jurisdiction unless otherwise provided by law.

**Section 3:    Adoption of Rules**

These rules shall upon adoption and promulgation of the Personnel Board, have the force and effect of law insofar as they apply to positions in the classified service.

**Section 4:    Administration of Rules**

The Personnel Director is charged with administration of these rules, except for those sections specifically reserved to the Personnel Board.

**Section 5:    Amendment of Rules**

Amendments and revisions of these rules may be initiated by the Personnel Board, Personnel Director, the City Council, County Commission or any appointing authority. Amendments and revisions shall become effective upon approval by the Personnel Board. The Personnel Board may hold a public hearing upon amendments to or revisions of these rules if it deems such necessary or if a hearing is requested by the initiating agent.

**Section 6:    Maintenance of Records**

Records shall be maintained which will be open for public inspection showing a list of positions in each department and the qualifications and requirements of each class of employment.

## RULE III - ORGANIZATION AND FUNCTIONS

**Section 1:     The Personnel Department**

The Personnel Department consists of the Personnel Board and the Personnel Director and such other employees as required to provide services to operating agencies.

**Section 2:     The Personnel Board**

The Personnel Board, hereinafter referred to as the Board, consists of three (3) members appointed in the following manner:  One by the governing body of Montgomery County, one by the governing body of the City of Montgomery, and one by a majority of the circuit judges and probate judge, of the county.  Of the first three (3) members appointed,

(a)     Qualifications - The members of the Board must be qualified electors of the county. No person may be appointed to the Board who holds any salaried public office or employment, nor can any member, while a member of the board or for a period of one (1) year after, ceasing for any reason to be a member, be eligible for appointment to any salaried office or employment in the service of the county or municipality or any county or municipal elective office.

(b)     Meetings - The Board is required to hold one (1) regular meeting each month and such special meetings as necessary.  The members of the Board shall receive twenty-five dollars ($25.00) for each meeting of the Board they attend.

(c)     Functions - The functions of the Board are:

(1)     To formulate and promulgate a set of rules to supplement the Act and revisions and amendments thereof.

(2)     To act in an advisory capacity to the governing bodies of the county and municipality on problems concerning personnel administration.

(3)     As provided by the Act and by rule, to hear and decide appeals submitted by any person in the classified service relative to any situation connected with the employment status or condition of employment.

(4)     In any investigation or hearing conducted by the Board, to have the power to examine witnesses under oath and compel their attendance or the production of evidence before it by subpoenas issued in the name of county or municipality. Each member of the Board has the power to administer oaths to witnesses.

(5)     To hold hearings on and adopt or revise the position classification plan.

(6)     To establish, after consultation with the governing body of the county and the governing body of the municipality and the elective officials of the county, coming within the provisions of this Act, a pay plan for all employees in the classified service.  Such pay plan must include, for each class of positions, a minimum and a maximum rate, or rates as may otherwise in specific instances be fixed by law, and such intermediate rates as deemed necessary or advisable by the Board.

**Section 3:     The Personnel Director**

The Personnel Director is appointed by the Personnel Board.  The Director is the Board's executive officer and acts as secretary at Board meetings, but does not have a vote in determining the Board's policy.

**The duties of the Personnel Director are:**

(a)     To attend all meetings of the Personnel Board and keep the minutes and records of the Board.

(b)     To administer all provisions of the Act and those rules not specifically reserved to the Board.

(c)     Under direction of the Board, to prepare rules and revisions and amendments thereof for the consideration of the Board.

(d)     To prepare a position classification plan and class specifications and revisions thereof for the approval of the Board.

(e)     To establish and maintain a roster of all employees in the classified service of the City and County.

**RULE III, SECTION 3**                                                                          **7**

(f)     To prepare and instruct in the use of such forms and procedures as necessary and appropriate to carry out the provisions of the Act and these rules.

(g)     To provide for a system of checking payrolls, so as to determine that all persons in the classified service have been appointed in accordance with these rules and are being paid proper amounts for duties of the class.

(h)     To administer the examination program, pass upon qualification of applicants, establish employment lists and certify eligibles to appointing authorities for filling vacancies.

(i)     To appoint employees of the Personnel Department and direct and supervise administrative and technical activities of the department.

(j)     To cooperate with appointing authorities and others in developing and establishing training programs for employees, promoting employee morale, and otherwise raising standards of performance in the county and city service.

(k)     To prepare for consideration by the Board, a compensation plan consisting of rates of pay for the several classes of employment and recommend changes in such plan from time to time as deemed desirable.

(l)     To perform such other activities with reference to personnel administration not inconsistent with the Act, as required by these rules, as directed by the Board, or as may be deemed necessary or desirable for effective personnel administration.

8

## RULE IV - THE UNCLASSIFIED SERVICE AND CLASSIFIED SERVICE

**Section 1:    The Unclassified Service**

The Unclassified Service consists of the following offices and positions:

(a)    All elective officers, provided, however, that in the event the status of an elective officer of the county or municipality is changed to that of an appointive officer, then at the expiration of the term of office of any such officer, the person holding the office at the time of the expiration of the term, providing that he shall have service in such position for a period of at least six (6) months continuously, immediately prior to the expiration of the term of office, shall assume regular status in the competitive service without preliminary examination or working tests and shall thereafter be subject in all respects to the provisions of the Act.

(b)    Members of appointive boards, commissions, councils, and committees.

(c)    All employees or appointees of the city and county board of education, or persons engaged in the profession of teaching or in supervising teaching in the public schools; excepting, however, personnel employed in kindergartens or schools not a part of the city or county board of education.

(d)    Attorneys, physicians, surgeons and dentists who, with the express of implied permission of any appointing authority or of the county or municipality, hold themselves out for employment by others in the same or a like line of work as that performed by them so such appointing authority; excepting, however, municipal judges, or assistant municipal judges and city or municipal prosecuting attorneys or assistant city or municipal prosecuting attorneys.

(e)    Persons in the "classified service" within the meaning of and subject to the State of Alabama merit system under any present or future law, and so long as any such law remains effective.

(f)    The Personnel Director provided for by the Act.

(g)    One private secretary or executive assistant of a member of the governing body of such municipality, and two clerks to be designated by each county elective official, except the Members of the Board of Commissioners; and any employee receiving compensation from any elected official of the county, however, the Personnel Board approves the rates of pay for these employees.

**RULE IV, SECTIONS 1 & 2** 9

(h)    *The chief of police, fire chief, chief financial officer, head of the department of parks and recreation, head of the maintenance department, and head of the sanitation department of any affected municipality who shall be appointed and serve at the pleasure of the mayor of the affected municipality. Any person appointed to a position pursuant to this subdivision shall meet at least the minimum qualifications for the position as shall be established by the personnel board. Notwithstanding any other provisions of this act, the compensation of persons appointed pursuant to this subdivision shall be set by the personnel board pursuant to a pay and classification study.

**Section 2:    Classified Service**

The classified service comprises all offices and positions in the city and county services now existing or hereinafter created, except those which are specifically placed in the unclassified service by Section 4 of the Act and Section 1 of this rule. All employees of any public corporation, board, committee or commission appointed or created by the governing body of the county or city shall also be included in the classified service.

*Revised 8/24/04

10

# RULE V - THE CLASSIFICATION PLAN

**Section 1:    Purpose**

The classification plan provides for the grouping into a single class positions which involve substantially the same kind of work, equal difficulty, responsibility and comparable qualifications for work performance.  The classification plan consists of:

(a)    a schedule of class titles appropriately descriptive of the nature of work of the several classes

(b)    written specifications describing the nature and requirements of work of positions of each class, and

(c)    materials regarding the interpretation and application of the class specifications.


**Section 2:    Class Titles**

Class titles, or designated code symbols shall be used in all personnel, accounting, appropriation and financial records.  No person shall be appointed to or employed in a position in the classified service under a title not included in the classification plan. Descriptive titles used in the course of departmental routine to indicate authority, status in the organization or administrative work may be used as required for these purposes.


**Section 3:    Class Specifications**

The specifications of the classes of positions in the classification plan and their various parts have the following force and effect:

(a)    The specifications are descriptive and not restrictive.  They are intended to indicate the kinds of positions that are allocated to the several classes, as determined by their duties and responsibilities, and shall not be construed as declaring to any extent, or in any way what the duties or responsibilities of any positions shall be, or as limiting or in any way modifying the power of any appointing authority or administrative officer to assign, direct, and control the work of employees under supervision.  The use of particular example or illustration shall not be held to exclude others not mentioned that are of similar kind or quality.

**RULE V, SECTION 3, 4 & 5**                                                              **11**

(b)     In determining the class to which any position should be allocated, the specification of each class shall be considered as a whole.  Consideration shall be given to the duties, specific tasks, responsibilities, qualification requirements and relationships to other classes.

(c)     Qualifications commonly required of all incumbents of the different classes, such as acceptable physical condition, freedom from disabling defects, suitable age, honesty, sobriety and industry, shall be deemed to be implied as qualification requirements for entrance to each class even though they may not be specifically mentioned in the specifications.

**Section 4:     Amendment of Classification Plan**

The Personnel Director is responsible for continuous administration of the classification plan and as changes in organization and assignments of work require, shall recommend to the Personnel Board amendments to the classification plan.

**Section 5:     Allocation of Positions**

The Personnel Director shall allocate each position now existing or hereinafter created to the proper class in the classification plan.  Whenever a new position is created, the department shall furnish the Personnel Director a complete job description in order that the duties and responsibilities may be studied and the proper classification determined.  If a proper classification does not already exist, a new class specification shall be prepared and submitted to the Personnel Board for approval.

The addition of new assignments or the taking away of old ones for any position shall be reported to the Personnel Director.

# RULE VI - THE PAY PLAN

**Section 1:    Establishment**

The Personnel Board is required to establish, after consultation with the governing bodies of the city and county and the elective officers of the county, a pay plan for all classified positions in all services and certain specific exempts and unclassified positions.

**Section 2:    Composition of the Pay Plan**

The Pay Plan consists of:

(a)    a schedule of ranges of rates of pay in biweekly, hourly and/or annual amounts.

(b)    a schedule showing the pay range to which each class is assigned.

(c)    policies, as embodied in these rules, showing the interpretation and application of the schedules of range of pay.

**Section 3:    Development of Pay Ranges**

After consultation with appointing authorities and city and county fiscal officers, the Director is required to prepare and recommend to the Board a pay range for each class of employment in the classified service, and certain specific exempt and unclassified positions. Such ranges shall consist of a minimum and maximum rate, and such intermediate rates as the Director considers necessary or equitable.  The rates for each class shall be those of the basic schedule of ranges of all rates (Section 2a) which are proper.  In establishing such rates the Director shall give consideration to the experience in recruiting for positions in the city and county services, the prevailing rates of pay for comparable services in other public and private employment, living costs, the financial condition and policies of the city and county, and the relationship in kind and level of duties and responsibilities of the several classes.

**RULE VI, SECTIONS 4 & 5**                                                    **13**

**Section 4:    Adoption of Plan**

Upon receipt of the proposed pay plan, the Board may give opportunity to be heard to appointing authorities, employees and the general public.   After incorporation and modification, changes or amendments it considers desirable, the Board shall submit the plan to the governing bodies of the city and/or county, who, after making such changes as they deem necessary, resubmit it to the board, who shall accept or reject, and it shall take effect when approved.

**Section 5:    Adjustments at Time of Adoption**

At a time designated by the Personnel Board after the official date of adoption of the Pay Plan, or revision thereto:

(a)     Employees whose rate of pay is less than the prescribed minimum rate for the class shall be increased to the prescribed minimum rate for the class with no change in anniversary date, except that the salary of an employee with less seniority will not be advanced beyond that of an employee with greater seniority in the same department.

(b)     Any employee whose present rate of pay is the same as a rate of the new range will be placed on the corresponding step of the new range, with no change in the employee's anniversary date.

(c)     Any employee whose present rate of pay is between any two rates of the new range, will be increased to the next higher rate, with no change in the employee's anniversary date.

(d)     Any employee who is at the top of the old pay range and has not received an anniversary increase for more than one year is eligible to be considered for an immediate one-step pay increase.  The employee's previous anniversary date will be reinstated.

(e)     Regular employees whose pay is in excess of the maximum rate prescribed shall not be automatically reduced in pay but shall not receive any increase as long as they occupy positions for which the pay rate maximum is the same as, or less than, the pay rate currently received.  This provision shall not, however, prevent the application of service-wide blanket pay decreases or a decrease of any employee's pay for any valid reason recommended by the appointing authority.  No change in pay shall become effective until approved by the Personnel Director.

**RULE VI, SECTIONS 5, 6 & 7**                                                                14

(f)     Provisional or temporary employees whose pay is in excess of the minimum rate of the class, if qualifying for permanent appointment, shall be reduced to the minimum rate for the class except when appointment at a higher rate is approved by the Director in accordance with Section 6.


**Section 6:     Beginning Rates**

The minimum rate of pay for a class shall be paid to any person on the original appointment to a position of the class except when determined by the Director as warranting employment at a higher rate.


**Section 7:     Within Range Adjustments**

(a)     The salary ranges are intended to furnish administrative flexibility in recognizing employee performance and service, in providing employee incentive, and in meeting special and emergency conditions in which increases or decreases of individual rates are required for the good of the city or county service.  Within salary range adjustments shall not be automatic but shall be dependent upon specific recommendations of the appointing officer, provided, however, that the Personnel Board may approve a plan for increasing new employees to the second step of the range of a class upon satisfactory completion of the probationary or provisional period or other specified length of service following original appointment.  No change in pay shall become effective until approved by the Personnel Director.

(b)     Ordinarily, increases in salaries shall not be made more than one step and shall not be made more often than once each twelve (12) months nor shall salary advancements be given to an employee until completion of the probationary period, except that an appointing authority may recommend to the Board salary increases of more than one step or more frequently than once every twelve (12) months upon detailed written statement to the Board specifying the employee's exceptional performance or the unusual employment conditions that make such action necessary, and provided that sufficient funds have been budgeted.

**RULE VI, SECTIONS 8 & 9**                                                    **15**

**Section 8:     Interpretation of Pay Ranges**

(a)     The schedule setting forth established ranges of pay and the assignment of each class to one of these ranges shall be regarded as gross compensation for full-time service in the several classes, but does not include reimbursement for expenses incurred by reason of authorized and approved travel on city or county business.   Full-time service in a class shall be considered to be service for that number of hours per day and days per week which represent the established working schedule for employment of the class.

(b)     The legal rates of pay for payroll purposes are hourly rates.   Annual rates of pay are listed in the pay plan for administrative purposes only.

**Section 9:     Pay for Part-Time Employment**

(a)     Whenever an employee works for a period less than the regularly established number of hours a day, days a week, or weeks per pay period, the amount paid shall be proportionate to the time actually employed.

(b)     Biweekly rates of pay shall be paid except that on certification by an administrative officer that payment of biweekly rates for certain classes of employment is not feasible because of the temporary or intermittent nature of the work, the Personnel Director may authorize the payment of weekly, daily, or hourly rates for those employments.   Such rates shall be determined in accordance with the following formulae:

| | |
|---|---|
| Biweekly Rate - | 80 hours x hourly rate |
| Annual Rate - | 26 x biweekly rate |
| Daily Rate - | hourly rate x number of work hours in established work day for the class |
| Weekly Rate - | hourly rate x number of hours in regularly established work week for the class |

**RULE VI, SECTIONS 9 & 10**                                                   **16**

(c)     Payments for less than a full payroll period or payments for vacation and overtime accruals at separation, shall be determined by multiplying the established hourly rate by the number of hours of work actually performed or included in the vacation or overtime accrual.

(d)     For employees working five (5) days per week, eight (8) hours per day, the working year shall be considered 2080 hours annually or 260 working days.  For employees working five (5) days per week paid biweekly the working period shall be considered ten (10) working days or forty (40) working hours per week.  For employees working seven (7) days per week or an average of fifty-six (56) hours per week the working month shall be thirty (30) days.


**Section 10:    Pay Adjustments in Assignments, Transfers, Promotions and Demotions**

When an employee is reassigned, transferred, promoted or demoted, the rate of pay for the next position shall be determined as follows:

(a)     Promotions - If the rate in the previous position was less than the minimum rate established for the class of the new position, the rate of pay shall be advanced to the minimum for the class of the new position.

If the difference in pay ranges does not automatically result in an increase in the equivalent of a one-step increase in the rate of a pay for an employee promoted, a one-step immediate increase within the pay range of the new classification may be given by the appointing authority, subject to approval by the Personnel Director. *Merit date does not change.

(b)     Demotions - If the rate of pay in the previous position was more than the maximum rate established for the class of the new position, the pay shall be reduced to a point within the range for the class of the new position to be determined by the appointing authority subject to the recommendation of the Personnel Director.

(c)     Transfers - If the rate of pay in the previous position falls within the range of pay established for the class of the new position and does not correspond to a step in the salary plan, it shall be adjusted to the next higher step, but otherwise this rate of pay may remain unchanged or may be changed on the recommendation of the administrative officer in accordance with this rule.

*Revised 1/13/04

**RULE VI, SECTIONS 10, 11 & 12**                                                        **17**

(d)     Assignment - Extra pay is given for temporary special duty as designated in the pay and classification plan for the specified assignment.


## Section 11:   Pay Adjustments in Reallocations


(a)     When a position is reallocated to a class with a higher maximum salary rate, the incumbent employee who has been occupying that position may be noncompetitively promoted to that class and is eligible for a one-step promotional increase in salary upon recommendation of the appointing authority and approval of the Personnel Director.   *Merit  date does not change.


(b)     If the reallocated position is vacant, the vacancy may be filled by promotion, transfer or original appointment. When a position is reallocated to a class with a lower maximum salary range, the employee occupying that position will not be demoted or reduced in pay.  However, such employee may be transferred with approval of the appointing authority or department head to a vacant position within the same class as that which the employee holds.


(c)     When a position to which an incumbent employee is currently assigned is reallocated to a class with the same maximum salary rate, the employee may be reclassified to the new class of the position.  If no permanent employee occupies the position, the vacant position may be filled by promotion, transfer or original appointment.


## Section 12:   Pay for Re-employment

A re-employed employee will be placed at one step below the last salary step held prior to separation.


*Revised 1/13/04

**RULE VI, SECTIONS 13 & 14**                                                              **18**

## Section 13:  Deductions from Pay of Exempt Employees

Improper pay deductions are prohibited.  Appointing authorities may make deductions from the wages of exempt employees for the following reasons:

1. Absence from work for one or more full days for personal reasons other than sickness or disability.  (See Rule VIII, Section 4)
2. Absence from work for one or more full days due to sickness or disability if the deduction is made in accordance with a bonafide leave plan or policy.  (See Rule VIII, Section 5)
3. Partial day deductions for leave taken under the Family Medical Leave Act.  (See Rule VIII, Section 6)
4. Absence due to Military Leave.  (See Rule VIII, Section 7)
5. Public accountability to taxpayers for the use of public funds by paying employees only for time worked, which may result in partial pay deductions.
6. Suspensions for violation of workplace safety rules and workplace conduct rules. (See IX, Section 4)

If an employee believes that an impermissible deduction has been made, the employee should contact his/her payroll office or the Personnel Department.  In the event that an impermissible deduction has been made, the employee will be reimbursed for the improper deduction and a good faith commitment will be made to comply with proper deductions in the future.


## Section 14:  Certification of Payroll

It shall be unlawful for any county, municipal, public corporation, board or commission, official or employee, or any other fiscal officer, to draw or issue any warrant on the county, municipal, public corporation, board or commission treasury, or county, municipal, public corporation, board or commission depository, for the payment of any salary or compensation to any person in the county, municipal, public corporation, board or commission service for personal services, unless the payroll, estimate, voucher, or account for such salary or compensation containing the name of the person to be paid shall bear the certification of the head of the department wherein such person works; that the person or persons named therein are employees of the county, municipality, public corporation, board or commission and are legally entitled to receive the sums stated therein.

## RULE VII - RECRUITMENT AND EMPLOYMENT

### Section 1: Recruitment by Competitive Examination

All permanent appointments to positions in the classified service shall be made according to merit and fitness ascertained by competitive examination, except Service Maintenance Workers, Recreation Aides and Library Pages. Examinations shall be prepared by or under the direction of the Personnel Director and may be, as determined by the Personnel Director after consultation with appointing authorities, assembled or unassembled, and may include written, oral, physical, or performance tests. Examinations may consist solely of an evaluation of such factors as education, experience, character, physical fitness, or any other qualifications which the Personnel Director determines to be relevant to the position to be filled. Competitive promotional examinations may take into consideration the quality and length of employment in the classified service in addition to any or all of the above factors.

### Section 2: Notices of Examination

All examinations shall be publicized by the preparation and public notice of examination announcements. The public notice of examination shall specify the title and salary range of the class of employment, description of the nature of work and examples of duties, experience and training desirable for performance of the work, the time, place and manner of making application, closing date for receiving applications and other pertinent information as deemed desirable by the Personnel Director to attract qualified applicants. Examination announcements shall be distributed and given publicity as deemed desirable and appropriate by the Personnel Director for the attraction of qualified applicants for the class of employment. Various types of examinations may be used alone or in combination. Examples of these are: "assembled", applicants are required to meet at a specific location in order to be tested; "unassembled", an evaluation of the training and experience based on the application form submitted and any other required documents; "performance", applicants are required to demonstrate skill in operating job related equipment; "oral", applicants are required to be interviewed before a panel of evaluators as to job related qualifications.

RULE VII, SECTIONS 3 & 4                                                    20

**\*\*Section 3:          Employment Lists and Their Use**

(a)    The Personnel Director shall establish and maintain such employment registers or lists for various classes of positions as are necessary to meet the needs of the service. The names of eligibles shall be placed on such a list in the order of their final earned rating in competitive examinations and they shall be notified by the Personnel Director of their grade and place on the list. Tie scores shall not be broken and tied scores shall be grouped for purposes of certifications.

(b)    Employees having permanent status who are involuntarily separated from the service by reason of shortage of work or funds, changes in organization, or other reasons not involving fault, delinquency or violation on their part shall at time of the separation be placed on the re-employment list. A former or retired employee who voluntarily separated in good standing may be considered for re-employment and upon the employee's request his/her name shall be placed on the re-employment list(s). Any former or retired employee who is re-employed more than two years from the date of separation will be required to successfully complete a six months probationary period.

(c)    Former employees requesting Veterans re-employment rights pursuant to Title 38, Chapter 43, of the United States Code, and satisfying the conditions of that Act, will be certified as eligible for immediate re-employment.

**\*Section 4:  Veteran's Preference**

(a)    Preference in open competitive examination is to be given for those veterans who have served in the armed forces of the United States, to their widow or widowers and to the spouse of a totally disabled veteran.

(b)    The term "veteran" means a person who honorably served in the military service during any war or conflict in which the United States was engaged and who was discharged or released from service under conditions other than dishonorable. It does not include those who serve an initial period of active duty training in the Reserve or National Guard. Eligibility is determined by submission of a copy of the DD214 or other document which shows dates of service and type of discharge.

(c)    A disabled veteran is one who has a service connected disability and who receives or is eligible to receive compensation for the disability. Eligibility is determined by submission of DD214 or other document which shows dates of service and type of discharge and a letter from the Veteran's Administration which was issued within the last six months prior to application for examination.

(d)    Spouse of a disabled veteran means that the veteran is totally disabled and therefore not qualified for employment but the spouse is qualified. Eligibility is determined by submission of veteran's DD214 or other document which shows dates of service and type of discharge, a letter from the Veteran's Administration which was issued within the last six months prior to the application for examination and proof of marriage.

(e)    Widow or widower of a veteran is one whose spouse died or was killed in the line of duty, and who has not remarried. Eligibility to be determined by submission of spouse's DD1300 or other official documents which show dates of service and a marriage certificate.

(f)    Preference shall be granted to veterans, the spouse of a totally disabled veteran and widows or widowers of veterans who died in the line of duty, as defined above, and who obtain a passing mark in an open competitive examination.

   (1)    Preference shall be granted to totally disabled veterans and widows or widowers of veterans by adding 10 points to the passing score in an open competitive examination.

   (2)    Preference shall be granted to the spouse of a totally disabled veteran, who does not qualify for employment, by awarding 10 points to the passing score in an open competitive examination to the qualifying spouse.

   (3)    Preference shall be granted to veterans as defined in paragraph (b) above by adding five points to the passing score in an open competitive examination.

## Section 5:  Duration of Employment Lists

The Personnel Director shall determine the period during which employment lists shall remain in effect, but this period shall not exceed two (2) years.  When the Personnel Director deems it appropriate a new eligible list may be combined with an existing list by placing the names of eligibles in order of final earned rating on the competitive examinations.  For classes of employment determined by the Personnel Director, continuous open competitive examinations may be held and names of eligibles placed on such eligible list in accordance with final earned rating without regard to time of examination.

## *Section 6:  Removal from Eligible Registers

The Personnel Director may remove from an eligible list the name of any applicant who fails to respond to notice of certification; who declines three (3) offers of permanent full time employment; who provides inaccurate, incomplete or false information on the application and/or any attachments; who qualified for appointment through false or misleading statements; who is ineligible for employment under the Immigration Reform and Control Act of 1986 or who has otherwise been shown to be unfit for employment.

*Revised 7/11/06

**RULE VII, SECTIONS 7 & 8**                                                                 **22**

**\*Section 7: Disqualification from Competition**

      The Personnel Department and/or expert shall disqualify an applicant or candidate from competition upon determination that:

    (1)   The application was not received by the filing deadline;
    (2)   The applicant fails to meet the minimum qualifications specified in the promotional announcement;
    (3)   The candidate fails to appear at the announced time and place for testing; or
    (4)   The candidate is found to be cheating. Cheating involves any attempt by an individual or group to enhance test scores by means other than actual knowledge or ability, including but not limited to efforts to give or receive information about the test content or correct responses before, after or during a test.  Examples of cheating during a test would be:
        a)   Attempting to gain access to the test under false pretenses;
        b)   Failing to follow instructions given by test administrators or proctors;
        c)   Talking to another candidate during the test;
        d)   Removing or attempting to remove test materials from the test site;
        e)   Leaving the test room, holding room or other location without permission from the Test Administrator;
        f)   Attempting to use notes, hand held computers or calculators when instructed not to;
        g)   Looking at another's test paper or answer sheet;
        h)   Working on a test section after time has been called; and
        i)   Giving or receiving test information to or from another person.

**Section 8    Procedure for Filling Vacancies**

(a)    All vacancies in the classified service shall be filled by original appointment, promotional appointment, upgrade, temporary appointment, provisional appointment, re-employment, or transfer.  Whenever a vacancy in a position in the classified service is to be filled, the appointing authority shall notify the Personnel Director whether such position is to be filled by original appointment, promotional appointment, upgrade, re-employment or transfer.

    1.  Rank Ordered Lists:
    If such position is to be filled by original or promotional appointment, the Personnel Director shall certify the names of the persons in the five (5) highest positions in order of rank on the appropriate rank ordered list, provided each list contains the names of five (5) applicants.  In the case of two (2) or more vacancies, the Personnel Director shall certify four (4) names more than the number of vacancies.  Where more than one person is eligible in the last ranked position, in connection with an

original or promotional appointment, all applicants tied at that score shall be certified. Names shall be certified in order of ranked standing without regard to sex or special qualifications, except that where a limitation to one sex or a requirement of special qualifications is specified by the appointing authority and approved by the Personnel Director as a bonafide occupational qualification.

2. Banded Lists:
If such position is to be filled by original appointment or promotional appointment, the Personnel Director shall certify the entire top band to the appointing authority when the number of vacancies is less than or equal to the number of persons occupying the first or highest band. When the number of vacancies exceeds the number of persons contained in the first or highest band, the Personnel Director shall certify the entire highest band to fill the number of vacancies equal to the number of persons in that band, and the entire second highest band to fill the remaining vacancies. All the names in the highest band must be exhausted, i.e. removed or hired, before selections can be made from the next highest band. (Because Act 2280 does not address banded lists, this rule on banded lists is enacted pursuant to the Personnel Board's authority to formulate rules supplementing the Act. (Act 2280, Regular Session 1971, Section 2(a).)

(b)    When there are five (5) or less applicants who meet the minimum qualifications for an announced promotional examination or an open competitive examination, the Personnel Department's certification shall include all eligible candidates without administration of any selection procedure.

*(c)    Procedure for Hiring and Upgrading Service Maintenance Workers, Library Pages and Recreation Aides

1. Vacancies for Service Maintenance Workers, Library Pages and Recreation Aides may be filled without application to the Personnel Department and without regard to competitive examination because these classifications are unskilled work for which there is no minimum qualification or other qualifications to be measured or tested. Applicants apply directly to the department where employment is sought and are to be considered and hired in the order that the application is received. It is the responsibility of the employing department to maintain records on the number of applications filed, the race and gender of applicants, and date and time an application is filed. The appointing authority is responsible for ensuring that applicants are hired without regard to qualifications and in compliance with equal employment opportunity requirements set forth in Section 13 of this rule. Unsuccessful applications must be retained for three (3) years, pursuant to the requirements of the Alabama Records Disposition Authority.

*Revised 1/25/05

**RULE VII, SECTIONS 8 & 9**                                                        **24**

2. Upgrade refers only to the promotion of an employee in the above classifications to the next highest classification. An employee may be upgraded only after attaining permanent status and must complete a total of six (6) consecutive months of employment with the department. Exceptions to the upgrade requirements must be justified in writing by the appointing authority. Employees shall be upgraded according to seniority provided they are capable of qualifying for the job or performing the work. Qualified Service Maintenance Workers in the department in which the vacancy occurs shall be given preference in order of seniority over service maintenance workers in other departments regardless of the fact that service maintenance workers in other departments have more seniority. For purposes of determining length of seniority, an employee shall be considered not to have broken his seniority unless the absence from the job was for a period greater than six (6) consecutive months. Employees do not receive credit for any period in which the employee was not in pay status.

3. Full time, temporary Service Maintenance Workers, Library Pages, and Recreation Aides are paid only for hours actually worked, and are paid for holidays only when working immediately before and after the holiday.

4. Temporary workers do not accrue sick and annual leave.

5. The period of employment of a seasonal or temporary worker shall not exceed six (6) consecutive months in any twelve (12) month period.

6. Any employee employed to work twenty (20) hours or more per week for more than six (6) consecutive months must be hired as a permanent employee.

7. Any employee who works twenty (20) or more hours per week for more than six consecutive months automatically becomes a permanent employee, with all rights and privileges of the merit system.

8. Any employee who works less than twenty (20) hours per week will be considered "as needed" or "occasional" and will be a temporary employee.

9. Temporary employees shall not be employed to fill permanent vacant slots without justification, in writing, from the appointing authority.

**Section 9:  Temporary Appointments**

In absence of appropriate employment lists, appointing authorities may make a temporary appointment of a person who is approved by the Personnel Director as being qualified to perform the work of the class. An employment list shall be established for such position within ninety (90) days. Temporary appointments shall be terminated at the end of ninety (90) days or at such time as an appointment can be made from an eligible register,

**RULE VII, SECTIONS 9, 10, 11, 12 & 13**                                           **25**

whichever occurs first. No person shall receive more than one temporary appointment, in any one fiscal year. No credit shall be allowed in the giving of any examination or the establishment of any employment or promotional lists for service rendered under temporary appointment. Temporary employees cannot be promoted or upgraded.

## Section 10: Transfers

A position may be filled by transferring an employee from one position of the same class or similar class with essentially the same basic qualifications and the same maximum salary limit. Transfers between departments must be approved by both appointing authorities and the Personnel Director.

## Section 11: Emergency Appointments

To meet emergency conditions and take care of extra work loads, appointing authorities may appoint persons to take care of the situation, but no such appointments may exceed thirty (30) working days in any fiscal year.

## Section 12: Probationary Period

Except as otherwise provided herein, all original and promotional appointments are for a probationary period of six (6) months, which period may not be extended beyond six (6) months. Service Maintenance Workers, Recreation Aides and Library Pages have a probationary period of two (2) months. Police Officers have a probationary period of twelve (12) months. Such probationary period should be regarded as an integral part of the examination process and used for closely observing the employee's work, for securing the most effective adjustment of the new employee to the position, and for rejecting any employee whose performance does not meet required work standards. At any time during the probationary period, an appointing authority may reject the probationary employee, provided notification is given the employee and the Personnel Director of the reason for removal. If an employee promoted to a higher class is found unsuited for the work of the class to which promoted, the employee shall be reinstated to the previous position.

## Section 13: Provisional Appointment

Employees mandated by law, regulation, or policy to meet specific criteria in order to be licensed by a regulatory or other authority to perform the duties of a certain position will be appointed provisionally until they successfully meet the legal requirements. Employees in provisional status will receive all the benefits of a probationary employee.

**Section 14:  Equal Employment Opportunity**

Discrimination against any person in recruitment, examination, appointment, training, promotion, retention, discipline, or any other aspect of personnel administration, because of political or religious opinions or affiliations or because of race, national origin, or any other non-merit factors is prohibited.  Discrimination on the basis of age or sex or physical disability is prohibited except where specific age, sex, or physical requirements constitute a bona fide occupational qualification necessary to proper and efficient administration.

**\*Section 15:  Workplace Harassment**

Workplace Harassment is a form of discrimination, which takes place or occurs in an employment context, and is based on or results from some protected status afforded the victim by law.

Protected status is derived from federal laws governing the employment relationship:
- Title VII of the Civil Rights Act of 1964 prohibits discrimination in the form of harassment based on an individual's race, color, sex, national origin and religion.  Title VII protection extends to sexual harassment, as defined by the Equal Employment Opportunity Commission (November 1980 3950.11, Section 1604.11).  "Unwelcome sexual advances, requests for sexual favors, and other verbal or physical conduct of a sexual nature constitute sexual harassment".
- The Age Discrimination in Employment Act of 1967 prohibits discrimination in the form of harassment because of age.  Employees over the age of 40 are protected.
- The American's with Disabilities Act of 1990 prohibits discrimination in the form of harassment because an employee has a disability.

There are two kinds of Workplace Harassment:
- Harassment coupled with the withholding or awarding of a tangible job benefit, such as promotion or pay increase, because of some protected status.  In sexual harassment cases this form of harassment is called "quid quo pro" a Latin term that means "this for that".
- Hostile work environment harassment occurs when the harassing conduct has the purpose or effect of unreasonably interfering with the victim's work performance or creating an intimidating, hostile or offensive work environment.

There are three forms of harassment:
- Physical – any unwanted touching of body or clothing.
- Non-verbal – displaying offensive printed material of any kind, offensive gestures or motions, staring or leering, unwelcome non-verbal behavior.
- Verbal – slurs, offensive jokes, derogatory reference to one's age, gender, race, color, national origin, religion or disability.

*Revised 10/12/04

**RULE VII, SECTION 15 & 16**                                                    **27**

To be illegal workplace harassment, the behavior must be unwanted, must occur in the employment context, must involve some physical, verbal or non-verbal behavior related to or because of some protected status the victim has been given by the laws described above.

An employee who believes he/she is the victim of any form of illegal workplace harassment, as discussed above, should contact the employee's supervisor, if the supervisor is the offending party, the employee may go up the chain of command to the Department Head, the Elected Official or the Assistant to the Elected Official, the Personnel Director, Assistant Personnel Director or Employee Relations Specialist at the Montgomery City-County Personnel Department.

\*\*Retaliation against any individual who reports workplace discrimination or harassment, as defined above, or who participates in an investigation of such reports is prohibited. In addition to the workplace harassment cited above, retaliation against an employee who has a worker's compensation claim or who has utilized Family and Medical Leave is also prohibited. It is the policy of the Montgomery City-County Personnel Board to investigate such reports of retaliation.

**\*Section 16: Workplace Violence**

Employees are prohibited from making threats or engaging in violent activities in the workplace. Workplace violence includes, but is not limited to:

1.   Threats of any kind;
2.   Threatening, physically aggressive, or violent behavior, such as intimidation of or attempts to instill fear in others;
3.   Other behavior that suggests a propensity toward violence, which can include belligerent speech, excessive arguing or swearing, sabotage or threats of sabotage of public or private property, or a demonstrated pattern of refusal to follow established policies or procedures, whether such acts are oral, written, through electronic, facsimile or other form of communication;
4.   Defacing or causing damage to public or private property in the workplace;
5.   With the exception of sworn law enforcement officers, bringing weapons or firearms of any kind into the workplace.

Employees who observe or become aware of behavior listed above by an employee, customer, consultant, visitor, vendor or anyone else should immediately report such incidents to his/her immediate supervisor, or if the immediate supervisor is the offending party, the employee may go up the chain of command to the department head, elected official, the assistant to the elected official, the Personnel Director, the Assistant Personnel Director, or the Employee Relations Specialist in the Montgomery City-County Personnel Department. In the case of a County Employee, the Deputy County Administrator should be contacted.

\*\*Revised 8/28/07

**RULE VII, SECTION 16**                                                27(a)

Employees should notify the proper authority if any restraining order is in effect, or if a potentially violent non-work related situation exists that could result in violence in the workplace.

All incidents of workplace violence should be reported and investigated promptly. An employee who reports workplace violence will not be retaliated against and confidentiality will be maintained to the extent possible. Employees should be aware that incidents of workplace violence may result in the filing of criminal charges. Law enforcement authorities should be notified to determine what laws, if any, may have been violated.

Disciplinary action may include written or oral warning, probation, reassignment, suspension, or termination. The department head or appointing authority may direct the employee to participate in professional counseling as a condition of continued employment.

28

# RULE VIII - WORKING CONDITIONS AND GENERAL PERSONNEL PRACTICES

## Section 1: Working Hours

The Director shall administer regulations for maintaining uniform and equitable hours of work required of all employees in the City and County Services and adopted by the Board. The number of hours any employee is required to be on duty each day or in any week or month shall be uniform for all whose positions are allocated to the same class, unless specifically provided otherwise by action of the Board, and recorded in the minutes, together with its reason for each exception; but the hours for different classes may be different.

## Section 2: Overtime

Employees shall work over the stipulated hours whenever necessity demands additional services of an occasional nature including time spent in required attendance at court. Rules governing such work are based on Alabama Law (*Act No. 2280, Regular Session 1971; Act No. 167 Third Special Session 1971; Act No. 96-664 [Ala. Code § 36-21-4.1]*) and federal law (*the Fair Labor Standards Act 29 U.S.C.§ 201 et seq.*)

**(a)    Compensation for Overtime:**

(1)    All employees shall, at a minimum, be given equivalent time off for overtime worked or be paid overtime on a straight time basis.  Act 167 provides that "overtime work shall be any work performed over forty (40) hours per week, on holidays and beyond the normal tour of duty, including any time spent in required attendance at court, when the time of such attendance is not within the normal tour of duty."

(2)    Employees covered by the Fair Labor Standards Act (the "Act") shall be given compensatory time at a rate of time and a half or be paid overtime at a time and a half rate.  The Act defines overtime as any time actually worked over 40 hours in a 7-day work week or, for public safety employees who may be assigned to a work period of up to 28 days, any time actually worked over 171 hours in 28 day work period (or 86 hours in a 14 day work period) for employees in law enforcement activities (including security personnel in correctional institutions) as defined under the Act and its regulations and any time actually worked over 212 hours in a 28 day work period for firefighters. (*29 U.S.C. § 207(k); 29 C.F.R. § 553.200, et seq.; Ala. Code § 36-21-4.1 (1996)*)

**RULE VIII, SECTION 2**                                                          **29**

(3)   Non-elected law enforcement employees in the service of Montgomery County shall be compensated according to the standards and guidelines established by the Act and its regulations. *Ala. Code §36-21-4.1*

(4)   The employee has the sole option, by stating in writing, prior to the time that overtime work is performed of either accepting overtime pay or compensatory time.

**(b)   Accumulation of Compensatory Time**

(1)   City, County and Airport employees who are covered by Act No. 167 Third Special Session 1971 but who are exempt from Fair Labor Standards Act may accumulate compensatory time for all overtime worked and may carry over 20 days of compensatory time at the end of any fiscal year, plus any accumulation earned prior to January 31, 1972.  Non-elected law enforcement employees in the service of Montgomery County are not covered by Act 167.

(2)   City, County and Airport employees covered by the Fair Labor Standards Act may accrue up to 240 hours of compensatory time, and City, County and Airport public safety employees may accrue up to 480 hours of compensatory time.

(3)   All Housing Authority employees may accrue up to 240 compensatory hours. Housing Authority public safety employees may accrue up to 480 compensatory hours.

(4)   Employees covered by the Fair Labor Standards Act who have accrued the maximum number of hours must be paid for all additional overtime until the accumulation is reduced by taking compensatory leave.

**(c)   Control and Use of Compensatory Time:**

(1)   An employer must honor an employee's request to use compensatory time within a "reasonable period" of time following the request so long as the use of the compensatory time would not "unduly disrupt" the employer's operations.

(2)   An employer may ask an employee to voluntarily take compensatory time off, and if the employee refuses, the employer may order the employee to use compensatory time at specified times.

(3)   An employer may, at any time, cancel or "cash out" accrued time by paying the employee cash compensation for unused compensatory time.

(4)   At the time of separation, employees shall be paid in cash at their final regular rate of pay for any unused accumulation of compensatory time.

**RULE VIII, SECTION 3**                                                          30

## Section 3: Legal Holidays

(a)     Act 88-625 passed by the Alabama Legislature in the 1988 Regular Session states: "Employees of the City of Montgomery shall enjoy the same number of holidays as state employees.  Provided, however, Montgomery City employees shall observe those holidays on the same days as employees of the federal government.  If there be more state holidays than there are federal holidays, the remaining state holidays shall be taken as personal leave days which shall be authorized by the City Council for each employee after coordination and approval of such personal days by each city department head."

By resolution the City Council authorized the Mayor to approve personal leave days.  By memorandum the Mayor delegated that responsibility to each department head.

The first personal leave day will be accrued during the pay period that a state holiday not observed by the City of Montgomery occurs.  Subsequent personal leave days will be accrued during the pay periods that state holidays not observed by the City of Montgomery occurs.  The maximum personal leave days that can be accrued is limited to the difference between the number of federal holidays and the number of state holidays.  Personal leave days must be used in the fiscal year they are accrued.

New Year's Day---------------------------------------------------------------------------January 1
Martin Luther King's Birthday-------------------------------------------------3rd Monday in January
George Washington's Birthday-----------------------------------------------3rd Monday in February
Memorial Day----------------------------------------------------------------last Monday in May
Independence Day----------------------------------------------------------------------July 4
Labor Day------------------------------------------------------------lst Monday in September
Columbus Day------------------------------------------------------------2nd Monday in October
Veterans' Day----------------------------------------------------------------------November 11
Thanksgiving Day-------------------------------------------------------4th Thursday in November
Christmas Day----------------------------------------------------------------------December 25

Any other day designated as a holiday by Federal Statute or Executive Order.

**RULE VIII, SECTION 3**                                                              31

(b) Act 91-250 signed by the Governor on July 16, 1991, amended Ala. Code § 1-3-8 (1975) setting legal holidays for the State of Alabama. Act 150 (Third Special Session, 1971) applies to all classified employees, other than city employees who are subject to the law cited in (a), and states that they "shall observe and be given the same holidays as state employees."

New Year's Day---------------------------------------------------------------------------January 1
Birthdays of Statesmen
Robert E. Lee & Martin Luther King, Jr.------------------------------------3rd Monday in January
Birthdays of Statesmen
George Washington & Thomas Jefferson---------------------------------3rd Monday in February
*Mardi Gras Day----------------------------------------------------------Tuesday preceding Lent
Confederate Memorial Day------------------------------------------------4th Monday in April
National Memorial Day---------------------------------------------------- last Monday in May
Jefferson Davis' Birthday-----------------------------------------------------lst Monday in June
Independence Day---------------------------------------------------------------------------July 4
Labor Day---------------------------------------------------------------lst Monday in September
Columbus Day-----------------------------------------------------------2nd Monday in October
Veterans' Day-----------------------------------------------------------------------November 11
Thanksgiving Day---------------------------------------------------------4th Thursday in November
Christmas Day----------------------------------------------------------------------December 25

*This is a holiday in Mobile and Baldwin Counties only. <u>All</u> employees other than City of Montgomery employees who are employed, regardless of pay status, on January 1 of a given year receive a personal leave day on January 1 of that year. Part-time employees are entitled to a partial personal leave day calculated in the same manner as an annual leave day for such employees. Employees appointed after January 1 <u>do</u> <u>not</u> receive a personal leave day for that year. The said personal leave day granted in a particular year shall be used by the end of that calendar year and is to be scheduled during the year with approval of the supervisor. The supervisor shall assure that each employee used his or her personal leave day by the end of the calendar year in which it is received. Employees who do not use personal leave days by December 31 must be paid at the employee's usual and customary rate of pay.

**RULE VIII, SECTION 3**                                                                32

Any other day designated by the County Commission or by the Governor of the State of Alabama.  Holidays falling on Sunday are observed the following Monday.  Holidays falling on Saturday are observed the preceding Friday.

(c)    When work on a Legal Holiday becomes necessary, rules for overtime shall apply.

(d)    Employees whose scheduled off day falls on a holiday observed by general classified employees shall be given equivalent time off or be paid overtime on a straight time basis.  The appointing authority shall determine whether to grant overtime pay or compensatory time off for those employees who have a scheduled off day falling on a holiday.  In the event an employee is called upon to work and does work on a scheduled off day which falls on a holiday, such employee shall be paid for such work according to applicable overtime rules in addition to receiving pay for the holiday or compensatory time off at the election of the appointing authority.

(e)    Non-elected law enforcement officers in the service of the county whose scheduled off day falls on a holiday observed by general classified employees shall be given equivalent time off or paid holiday pay on a straight time basis.   If the employee is scheduled to work on the holiday the employee shall be paid for the hours worked and will receive additional holiday pay or time off on a straight time basis.  The appointing authority shall determine whether to grant holiday pay or equivalent time off. This holiday pay or equivalent time off is computed independently of any overtime pay or compensatory time computed under Section 2(a)(3) of this rule.

(f)    Employees working an average of 56 hours per week shall be credited with 11.2 hours holiday time for each holiday observed by general classified employees.

(g)    *Non-Exempt employees must be in pay status immediately before and after a state holiday in order to be paid for that holiday except for the personal leave day accrued on January 1 by County, Housing Authority and Airport Authority employees in lieu of Mardi Gras Day.  City employees must be in pay status before, after and the day of the state holiday which is not a city holiday in order to accrue a personal leave day.

* Revised 6/8/04

**RULE VIII, SECTION 4**                                                                33

**Section 4: Annual Leave**

(a)    Each permanent employee in pay status shall earn annual leave according to the following schedule. Years of service for county employees means full-time classified employment beginning from the current employment date.

| Years of Service | Hours Earned | Maximum Accumulation/ Carry Over/Pay Out |
|---|---|---|
| **Fewer than 10 years** | | |
| 40 hours biweekly | 2 | 124 hours |
| 80 hours biweekly | 4 | 248 hours |
| 112 hours biweekly | 5.6 | 347.2 hours |
| **10 but less than 15 years** | | |
| 40 hours biweekly | 2.5 | 137 hours |
| 80 hours biweekly | 5 | 274.4 hours |
| 112 hours biweekly | 7.1 | 384.2 hours |
| **15 but less than 20 years** | | |
| 40 hours biweekly | 3 | 150 hours |
| 80 hours biweekly | 6 | 300 hours |
| 112 hours biweekly | 8.4 | 420 hours |
| **20 years or more** | | |
| 40 hours biweekly | 3.5 | 163 hours |
| 80 hours biweekly | 7 | 326 hours |
| 112 hours biweekly | 9.9 | 456.4 hours |

Annual leave may be used as earned, however, appointing authorities shall determine the time at which leave may be taken.  Annual leave in any one year may be taken not in excess of the total amount of annual leave accrued.  Regular days off which fall within the annual leave shall not be counted as annual leave.

Employees who accrue the maximum annual leave during the respective fiscal year or calendar year may continue to accrue hours at the appropriate hourly rate.   Airport Authority employees may carry over annual leave at the end of their fiscal year. City of Montgomery, Montgomery County,  and Housing Authority employees may carry over annual leave to the beginning of the first  full pay period of the new calendar year.

(a)     Any permanent employee leaving service in good standing shall be compensated for earned annual leave up to the maximum designated for the years of service. Employees on leave immediately preceding or pending resignation or retirement do not accrue leave.

(b)     School Patrol Officers shall receive the same annual leave that is awarded public school teachers in the Montgomery school system.  They shall not be eligible to take annual leave at any time other than the regular holidays which are granted public school teachers.


## Section 5: Sick Leave

(a)     Each permanent employee in pay status shall earn sick leave according to the following schedule:

| | | |
|---|---|---|
| 30 hours biweekly | - | 1.5 hours per pay period |
| 40 hours biweekly | - | 2 hours per pay period |
| 80 hours biweekly | - | 4 hours per pay period |
| 112 hours biweekly | - | 5.6 hours per pay period |

(b)     Sick leave shall be computed as earned but may not be accumulated in excess of 960 hours for regular full time employees who work 80 hours biweekly; employees who work 30 hours biweekly may accrue 360 hours; employees working 40 hours biweekly may accrue 480 hours; and 56 hour employees may accrue 1344 hours, providing a maximum of 120 working days of accumulated sick leave for each group of employees.  Regular days off occurring during sick leave will not be charged as sick leave.

(c)     Sick leave is not a right for which employees may make demand, but a privilege granted in accordance with prescribed rules and regulations.  Sick leave may be granted only for absence due to personal illness, maternity, legal quarantine, attendance upon members of the immediate family whose illness requires the care of the employee, or death in the immediate family of the employee.  Immediate family is hereby defined to include spouse, children, parents, grandparents, parents-in-law, and siblings.  Unusually strong ties with other relatives may be recognized for leave purposes upon written justification by the employee and approval of the appointing authority and/or Personnel Director.

(d)     An employee claiming sick leave may be required by the appointing authority to file a certificate from a physician stating that the employee was unable to work for the period      of the absence, or that the employee is physically unable to perform the duties of his/her position, or that the employee has no contagious disease that might jeopardize

the health of other employees, or that the employee is required to provide care of an ill family member.   Accordingly, there are only two medical inquiries that the employer may make in connection with a request for sick leave.

A medical inquiry may be made to determine whether or not the employee is still able to perform the essential functions of the employee's job and to determine whether or not the employee will pose a direct threat to health and safety in the workplace due to the employee's medical condition.

(e)   Sick Leave Bank - Where an employee, employee's spouse or dependent minor child suffers extended illness or disability lasting more than six (6) months, upon the recommendation of the appointing authority, the Personnel Board may approve the transfer of a specified number of unused sick leave days (within the maximum accrued) from one employee to another employee of equal or lower classification:

        Provided that such requests are

                (a)  made in writing

                (b)  justified by catastrophic circumstances

                (c)  recommended by the appointing authority

                (d)  acted upon prior to leave being used

                (e)  all other available leave has been used.

(f)   Any permanent employee leaving the County or City service in good standing may be compensated for one-half (l/2) sick leave accrued to the date of separation, not to exceed 360 paid hours for 40 hour employees and 495 hours for 56 hour employees. No leave is accrued after effective date of resignation, dismissal or retirement. Employees on leave immediately preceding or pending resignation or retirement do not   accrue leave.

**RULE VIII, SECTION 6**                                                                     **36**


**\*Section 6:  Other Leave Due to Illness, Injury or Family Care**


(a)     Worker's Compensation - Upon certification to the Personnel Director by the
          appointing authority that an employee is absent from duty because of bodily injury or
          occupational illness incurred in line of duty benefits are provided in accordance with
          Alabama Worker's Compensation Law, Title 25, Chapter 5, Code of Alabama 1975, as
          amended 1981.


(b)     Family and Medical Leave of Absence - The Family and Medical Leave Act of 1993
          (FMLA) entitles eligible employees to receive a combination of accrued  paid and
          unpaid Family and Medical (FML), not to exceed twelve (12) weeks in a twelve (12)
          month period.

          Eligible Employee means one who has worked for the employer for at least twelve
          (12) months and who must have worked at least 1,250 hours in the twelve (12) month
          period immediately preceding the date FML begins.

          Child means a biological, adopted or foster child, a stepchild, a legal ward or a child of
          a person standing in loco parentis who is either under 18 years old or a dependent
          child.

          Parent means a biological, foster, or adoptive parent, stepparent, or legal guardian.
          Parent does not include a parent-in-law or grandparent.

**RULE VIII, SECTION 6**                                                                          37

**FAMILY AND MEDICAL LEAVE** (FML) may be taken as Family Care Leave (FCL) or Medical Care Leave (MCL). It is the duty of the appointing authority to designate the leave as FMLA and within two (2) days of FMLA leave designation give written notice to the employee.

Family Care Leave (FCL) may be taken for the following reasons:

(1)    For the birth of a child and in order to care for that child.

(2)    For the placement of a child through adoption or state approved foster care.

FCL may be taken subject to the following conditions:

(1)    *All accrued paid annual and personal leave and sick leave, pursuant to rules for the use of sick leave must be exhausted against FCL for any part of the twelve (12) weeks of leave to which the employee may be entitled under FMLA before being placed on leave without pay. The employee may elect to use accrued compensatory leave. Compensatory leave is not counted as part of the twelve (12) weeks of FCL leave.

(2)    For twelve (12) consecutive weeks measured forward from the birth or placement of the child.

(3)    If both spouses are employed by the employer, they are entitled together to a total of twelve (12) weeks (rather than twelve (12) weeks each) for the birth or placement of a child.

(4)    Intermittent or reduced leave schedule is not allowed for FCL.

Medical Care Leave (MCL) may be taken for the following reasons:

(1)    To care for a spouse, child, or parent with a serious health condition.

(2)    For the serious health condition of the employee.

MCL may be taken subject to the following conditions:

(1)    Serious health condition means illness, injury, impairment, or physical or mental condition of a child, parent or spouse which warrants the participation of a family member to provide care during a period of the treatment, or supervision of the child, parent or spouse and also involves either (a) an inpatient facility, or (b) continuing treatment or continuing supervision by a health care provider.

*Revised 2/28/06

**RULE VIII, SECTION 6**                                                          **38**

(2)     *All accrued paid annual, personal, and sick leave must be exhausted against MCL for any part of the twelve (12) weeks of leave to which the employee may be entitled under FMLA before being placed on leave without pay status.  The employee may elect to use accrued compensatory leave.  Compensatory leave is not counted as part of the twelve (12) weeks of MCL leave.

(3)     For twelve (12) weeks measured forward from the first day MCL is used.

(4)     May be intermittent or reduced schedule if certified as medically necessary by the health care provider.

(5)     A medical certification from the health care provider to support a request for leave for an employee's own serious health conditions, or to care for a seriously ill child, spouse, or parent is required.

    (a)     For the employee's personal medical leave, the certification must state that the employee is unable to perform the functions of his or her position because of a serious health condition.

    (b)     For leave to care for a seriously ill child, spouse, or parent, the certification must state that the employee is needed to provide care.

(6)     The employer may require a second medical opinion, and periodic recertification at its own expense.  If the first and second opinions differ, the employer, at its own expense, may require the opinion of a third health care provider, approved by the both the employer and employee.  This third opinion is binding.

**PROCEDURES**

Employees must follow specific procedures to request a family or medical leave.   The procedures are as follows:

(1)     When the need for leave can be planned, such as the birth or placement of a child, or scheduled medical treatment, the employee must provide reasonable prior notice, and make efforts to schedule the leave to minimize disruption to department operations.

(2)     In cases of illness, the employee will be required to report periodically on his or her status and intention to return to work.

**RULE VIII, SECTION 6**                                                             **39**

(3)    The employee must complete and sign the Request for Family and Medical Leave of Absence Form and turn it into their department.  If possible, the form should be submitted 30 days in advance of the effective date of the leave.

(4)    To request leave due to an employee's serious health condition, the employee must provide certification from the health care provider who is treating his or her own serious health condition, regarding the following information:

> The date on which the condition commenced.

> The probable duration of the condition.

> The appropriate medical facts regarding the condition.

> A statement that the employee is unable to perform the functions of his or her position due to his or her condition.

(5)    To request leave for the care of a child, parent or spouse with a serious health condition, the employee must provide certification from the health care provider who is treating their serious health condition, regarding the following information:

> The date on which the condition commenced.

> The probable duration of the condition.

> An estimate of the time needed to care for the individual involved (including any recurring medical treatment).

> A statement that the condition warrants the health care provider's involvement.

(6)    To request intermittent leave or leave on a reduced leave schedule, the employee must provide the following additional information from the health care provider:

> For leave for the employee, the employee must provide (1) a statement of medical necessity of his or her intermittent leave or reduced leave schedule, and (2) a listing of the dates his or her planned medical treatment and the duration of the treatment(s).

> For leave to care for a son, daughter, spouse, or parent, the employee must provide (1) a statement attesting to the necessity of intermittent leave or reduced leave for the employee to provide care or to assist in the person's recovery and (2) an estimate of the expected duration and schedule of his or her intermittent or reduced leave.

(7)    A combined Leave Policy Form is to be completed by any employee who is requesting leave and whose spouse also works for the employer.

(8)    All employees must complete an Insurance Premium Recovery Authorization Form. This form certifies that an employee acknowledges the employer's legal right to recover the cost of any premium paid by the organization to maintain his or her coverage in group health benefits during any period of unpaid leave except under the following conditions:

> The continuation, recurrence, or onset of a serious health condition that entitles the employee to leave to care for a child, parent, or spouse with a serious health condition, or if the employee is unable to perform the function of the position due to his or her own serious condition; or,

> Other conditions beyond the employee's control that prevent him or her from returning to work.

**STATUS OF EMPLOYEE BENEFITS DURING LEAVE OF ABSENCE**

Any employee who is granted FML under this policy may continue his or her group insurance coverage by arranging to pay his or her portion of the premium contributions during the period of unpaid absence.

Employees will continue to be covered under the employers health benefit plan during FML absences under the same manner as they are covered during active employment even while on unpaid leave of absence.

If an employee elects not to return to work upon completion of an approved unpaid leave of absence, the employee will be required to reimburse the employer for his or her coverage at the COBRA rate less 2%, unless the failure to return to work was for reasons beyond the employee's control. Benefit entitlement based upon length of service will be calculated as of the last paid work day prior to the start of the unpaid leave of absence.

An employee on leave will not lose any employment benefits accrued prior to the leave, unless a benefit is used by the employee during the leave, such as accrued paid leave.

An employee on FML accrues no additional seniority or employment benefits during any period of unpaid leave.

An employee must continue retirement contributions at the same rate for the period of FML.

**EMPLOYMENT RESTORATION**

Any eligible employee who takes a leave for a purpose intended by the law will be entitled upon return from such leave to be restored to the same position of employment as held when the leave began, or to be restored to an equivalent position with equivalent employment benefits, pay, and other terms and conditions of employment, unless the employee would otherwise be dismissed or terminated from employment.

**PROBLEM RESOLUTION**

It is the policy of the employer not to discharge or discriminate against any employee exercising his or her rights under the federal Family and Medical Leave Act. Any employee who thinks they have been treated unfairly should seek administrative remedies within the department and if that is not possible or if for any reason the problem cannot be resolved at the administrative level, the employee should contact the City-County Personnel Department.

## Section 7: Military Leave

(a)     All officers and employees of the State of Alabama, or of any county, municipality or other agency or political subdivision thereof, or officers or employees of any public or private business or industry who are active members of the Alabama National Guard, Naval Militia or the Alabama State Guard organized in lieu of the National Guard, or any other reserve component of the armed forces of the United States, shall be entitled to military leave of absence from their respective civil duties and occupations on all days that they are engaged in field or coast defense or other training or on other service ordered under the National Defense Act, or of the federal laws governing the United States Reserves, without loss of pay, time, efficiency rating, annual vacation or sick leave.  Notwithstanding the foregoing, no person granted a leave of absence with pay shall be paid for more than one hundred sixty-eight (168) working hours per calendar year, and those persons shall be entitled in addition thereto to be paid for not more than one hundred sixty-eight (168) working hours at any one time while called by the governor to duty in the active service of the state.  This section shall apply to all schools and institutions of learning supported by state funds.

(b)     Credit for active federal service - Service in the National Guard or Naval Militia of Alabama, when called, drafted or ordered into the service of the United States, shall be considered as equivalent service in the Alabama National Guard or Naval Militia for any and all state purposes regarding privileges, honors, pay, allowances and exemptions provided by law for members of the National Guard and Naval Militia of Alabama.  Code of Alabama 1975, Section 31-2-13.

## *Section 8: Worker's Compensation

(a)     Local government employees are entitled to the protections of the Worker's Compensation Act (WCA).  The Act provides protection to those workers who are injured on the job.  If an employee is released by the employee's physician or other medical professional to return to work prior to full recovery, modified duty is permitted if there is temporary, meaningful work for the employee to perform.  Employers are not required to create modified duty positions.   Modified duty assignments are to be evaluated every six months.

(b)     Worker's Compensation Leave that is deemed to be a serious health condition, according to the Family and Medical Leave Act (FMLA), will run concurrently with FMLA leave.  However, modified duty is provided only to those employees on Worker's Compensation Leave.  Employees who are on FMLA leave only are not eligible for modified duty and may not be required to accept a modified duty assignment.

RULE VIII, SECTION 9 & 10                                                                43

**\*Section 9:  Other Leave With Pay**

(a)    Leave with pay may be authorized by appointing authorities during official investigation by appointing authorities, pending  pre-termination hearings as defined by federal law, or for the attendance by employees of official meetings, or for attendance by  subpoena at Federal, State, or Municipal Court, or to serve required jury service, or to attend authorized training or education courses, or for other just cause provided such leave is  reported to the Personnel Director.

(b)    Leave with pay may be granted for hazardous weather conditions or other emergency events only when all local non-essential employees have been advised, for safety reasons, not to report to work.  It is the responsibility of the employee to contact the employee's supervisor, assistant department head, department head, department, or anyone designated  by the appointing authority, prior to the time the employee is to report to work, to determine whether they are to report for work.  If the department is open for business, and the employee does not report to work, the employee will be charged annual leave.  If the employee has no annual leave, the employee may be charged compensatory leave or placed on leave without pay.

**Section 10:  Leave Without Pay**

(a)    \*\*An employee may be granted leave without pay (LWOP) for a  period not to exceed one year for sickness, disability,  education, or other good and sufficient reasons which are considered to be in the  best interest of the service upon the approval of the appointing authority and Personnel Director. Except for military leave, to be eligible for LWOP, an employee must have exhausted all annual and comp leave and, if the employee is sick, all sick leave.  An employee may not be absent from work for a period exceeding one year, for any reason, except military leave and worker's compensation leave.

(b)    An employee may, in addition, be involuntarily and immediately placed on leave without pay by the appointing authority upon the employee's arrest for, whether by indictment, complaint, or otherwise, or upon admission by an employee of any felony, or a misdemeanor (other than routine traffic violations) alleged to have occurred on the job or which materially and directly impairs the employee's ability to perform his assigned duties, for a reasonable time, not to exceed fifteen (15) days, pending investigation and the giving of a pre-deprivation hearing in compliance with federal law.  If following the pre-deprivation hearing, the appointing authority imposes no discipline, the employee shall be given full back pay and benefits.

\*Revised 8/9/05
\*\*Revised 1/24/06

**Section 11:  Absence Reports**

Administrative officers shall make reports to the Personnel Director of all absences of each employee during such payroll period.

**Section 12:  Service Rating**

The Personnel Director may prescribe a form for the service rating of employees by administrative officers.  Service ratings may be considered in determining salary adjustments within designated salary ranges, as a factor in the order of layoffs, and rating of employees for promotional purposes.

**Section 13: Rights of Review and Appeal**

(a)    A permanent employee may submit at any time a written statement to the head of the department regarding any situation related to employment status or condition of employment.  The department head and appointing authority shall give the employee full opportunity to present views and shall take such action as deemed proper.  If the employee desires, a written request for a review by the Personnel Board of the questions relating to employment may be made except in instances where the right of appeal is prohibited by Act 2280.  The Personnel Board shall have investigated such requests and if required or requested hold an informal hearing within twenty (20) days after the request on such questions.  Within ten (10) days after concluding the hearing, the Personnel Board shall certify its findings and order to the authority from whose action the appeal was taken.  Such official shall then affirm, revoke or modify the action taken so as to conform with the findings and order of the Board.  The findings and order of the Personnel Board shall be final and conclusive.

*(b)    A permanent employee is entitled to a hearing before the appointing authority, or the appointing authority's designee**,** prior to his demotion, dismissal or suspension as to any charges which might cause the employee to be dismissed, demoted, or suspended. No merit system employee can be demoted, dismissed or suspended "for cause" by any appointing authority unless and until such employee has been given written notice, setting forth with particularity the charges against him/her and an opportunity to be heard prior to demotion, dismissal, or suspension.  Copies of the written charges, notice of the hearing and notice of the action taken shall be furnished to the Personnel Director.

*Revised 1/25/06

(c)    A permanent employee who has been dismissed, demoted, or who has received a suspension which is appealable under these Rules to the Personnel Board shall receive a written statement of the reasons for such action from the appointing authority within three (3) days after the action is taken and within three (3) days from the date of such notice may provide the appointing authority a written answer to the charges which formed the basis of the action.  Copies of both statements shall be furnished to the Personnel Director.  Within ten (10) days from the time for answering, such employee may file a written request with the Personnel Director for a hearing before the Personnel Board.  The Board shall conduct a hearing within twenty (20) days which shall be informal and in accordance with procedures established by the Board.  Within ten (10) days after concluding the hearing, the Personnel Board shall certify its findings and order to the authority from whose action the appeal was taken.  Such official shall then affirm, revoke or modify the action taken so as to conform with the findings and order of the Board.  The findings and order of the Personnel Board shall be final and conclusive.

# RULE IX - SEPARATIONS AND DISCIPLINARY ACTION

## Section 1: Resignation

Any employee wishing to leave the classified service in good standing shall file with the appointing authority, at least one week before leaving, a written resignation stating the effective date of the resignation and the reason for leaving. Such notice shall be promptly reported to the Personnel Director. The number of days less than seven (7) given as notice of resignation may be subtracted from accrued vacation leave and failure to comply with the procedures may be the cause for denying the person future employment. Unauthorized or unreported absence from work for a period of three (3) days or more may be considered by the appointing authority as a resignation.

## Section 2: Layoff

An appointing authority may layoff any employee in the classified service when it is necessary by reason of shortage of funds or work, or changes in organization. No permanent employee shall be laid off while there are temporary, emergency or probationary employees serving in the same class of employment within the same department. A person with seniority over another employee may not be laid off first unless such services are inferior to those of other employees in the same class. The names of employees laid off shall be placed on a re-employment list for a period of two (2) years. No one else may be appointed in that class in the department concerned while the name of any "laid-off" employee remains on the re-employment register.

## Section 3: Demotion

An appointing authority may demote an employee for inefficient performance of duties, for disciplinary reasons or for other good cause to a classification with a lower maximum salary range. A written statement of the reasons for demotion shall be submitted to the Personnel Director and furnished to the employee affected. Removal from Special Duty Assignment Pay designated in the pay plan as such, including but not limited to removal from assignments as Investigator, Corporal, Strike Force and Motor Pay in the Police Department, and Engineer and Fire Medic Supervisor in the Fire Department, for other than reasons for which one could be demoted, is not a demotion.

**Section 4: Suspension**

*An appointing authority may suspend an employee without pay for cause**.**   Special rules apply to employees who are classified as exempt under the Fair Labor Standards Act. Disciplinary deductions may be made from the wages of those employees, without loss of exempt status, for:

1. Partial day deductions or more for a violation of a safety rule of major significance, which involves the prevention of danger to the plant or other employees.
2. Full day deductions or more for violations of workplace conduct rules provided that the policy:
   a. Covers serious workplace misconduct (not performance or attendance).
   b. Is written.
   c. States that violations could result in unpaid disciplinary suspension.
   d. Applies to all employees.
3. Suspensions for other violations must be for a full work week.

Suspensions in excess of thirty (30) calendar days in any fiscal year may be appealed by a permanent employee to the Personnel Board.  Suspensions of thirty (30) calendar days or less may not be appealed to the Personnel Board except as they are provided for in Personnel Rules and Regulations, Rule VIII, Section 12, and Rule VII, Sections  13 or 14.  A written statement of the reasons for suspensions shall be submitted to the Personnel Director and furnished to the employee affected.  A vacancy created by suspension may be filled by the appointing authority only by temporary appointment. (See Rule VII, Section 7)


**Section 5: Dismissal**

Any permanent employee may be dismissed by an appointing authority for cause.  A written statement of reasons for the dismissal shall be furnished to the employee affected and reported to the Personnel Director.

**Section 6: Position Abolishment**

Whenever in the judgment of the governing body of the county or municipality or any elected county official it becomes necessary in the interest of the economy or because the necessity for any position in its or his department no longer exists, it or he may abolish any position or employment in the competitive service and layoff the employee holding such position or employment without filing written charges and without the right of appeal.  The name of such an employee so laid off shall be placed at the top of the appropriate employment list or lists as provided by the rules.  (See Rule IX, Section 2)

*Revised 8/10/04

## RULE X - PROHIBITIONS OF POLITICAL ACTIVITY

Laws governing political activity of public officials and employees are found in Act 2280, Sections 13 and 14, and in Act 83-497, 1983 Regular Session, which is also known as the Equality of Citizenship Act.

(A)    As provided in Act 2280 the following prohibitions apply:

(1)    City officials and employees, including employees of certain Authorities or Boards of the city who are covered by the merit system act shall not:

(a) seek or accept election, nomination or appointment as an officer, or serve as a member of a committee of any municipal political club or organization.

(b) take an active part in, or make any contribution or donation to any municipal political campaign.

(c) seek signatures to any petition provided for by any municipal election law.

(d) act as a worker at the polls for a municipal election.

(e) distribute badges, pamphlets, dodgers or hand bills of any kind favoring or opposing any candidate for municipal election.

(2)    County officers and employees shall not:

(a) seek or accept election, nomination or appointment as an officer or serve as a member of a committee of any county political club or organization.

(b) take an active part in, or make any contribution or donation to any county political campaign.

(c) seek signatures to any petition provided for by an county election law.

(d) act as a worker at the polls for a county election.

(e) distribute badges, pamphlets, dodgers or hand bills of any kind favoring or opposing any candidate for county elections.

**RULE X**                                                                                                                    49

(3)        All such officers and employees may:

       (a) become or continue to be a member of a political club or organization.

       (b) attend political meetings.

       (c) enjoy freedom from all interference in casting his vote.

       (d) seek or accept election to a public office.

(B)    Section 17-1-7, Code of Alabama, as amended by Act 83-497, (Regular Session 1983) is as follows:

Section 1.  This act shall be known as the Equality of Citizenship Act.

Section 2.  Sections 17-1-7 and 36-26-38, Code of Alabama 1975, are amended to read as follows:

(a) (1)  No person in the employment of any city, whether classified or unclassified, shall be denied the right to participate in city, county or state political activities to the same extent as any other citizen of the State of Alabama, including endorsing candidates and contributing to campaigns of his or her choosing.

(2)  No person in the employment of any county, whether classified or unclassified, shall be denied the right to participate in city, county, or state political activities to the same extent as any other citizen of the State of Alabama, including endorsing candidates and contributing to campaigns of his or her choosing.

(3)  No person in the employment of the State of Alabama whether classified or unclassified, shall be denied the right to participate in city, county, or state political activities to the same extent as any other citizen of the State of Alabama, including endorsing candidates and contributing to campaigns of his or her choosing.  Notwithstanding the foregoing, any person within the classified service shall comply with, Section 36-26-38.

(4) All persons in the employment of any city, county, or state shall have the right to join local political clubs and organizations, and state or national political parties.

(5)   All persons in the employment of any city, county, or state shall have the same right to publicly support issues of public welfare, circulate petitions calling for or in support of referendums, and contribute freely to those of his or her choosing.

(b)      No person shall attempt to use his or her official authority or position for the purpose of influencing the vote or political action of any person.  Any person who violates this subsection (b) shall be guilty of a felony and punishable by a fine not to exceed ten thousand dollars ($10,000) or imprisonment in the state penitentiary for a period not to exceed two years, or both.

(c)      No person in the employment of the State of Alabama, a county, or a city whether classified or unclassified, shall use any state, county, or city funds, property or time, for any political activities. Any person who is in the employment of the State of Alabama, a county, or a city shall be on approved leave to engage in political action or the person must be on personal time before or after work and on holidays.  It shall be unlawful for any officer or employee to solicit any type of political campaign contributions from other employees who work for the officer or employee in a subordinate capacity.  It shall also be unlawful for any officer or employee to coerce or attempt to coerce any subordinate employee to work in any capacity in any political campaign or cause.  Any person who violates this section shall be guilty of the crime of trading in public office and upon conviction thereof, shall be fined or sentenced, or both, as provided by Section 13A-10-63.

(d)      Notwithstanding subsection (c), any employee of a county or a city, whether in the classified or unclassified service, who qualifies to seek a political office with the governmental entity with which he or she is employed, shall be required to take an unpaid leave of absence from his or her employment, or use accrued overtime leave, or use accrued vacation time with the county or city from the date he or she qualifies to run for office until the date on which the election results are certified or the employee is no longer a candidate or there are no other candidates on the ballot.  For purposes of this subsection, the term "employing authority" means the County Commission for county employees or the City Council for city employees.  Any employee who violates this subsection shall forfeit his or her employment position.  In no event shall subsection (d) of this act apply to elected officials.

(e)      When off duty, out of uniform, and acting as a private citizen, no law enforcement officer, firefighter, or peace officer shall be prohibited from engaging in city, county, or state political activity or denied the right to refrain from engaging in political activity so long as there is compliance with this section.

## PROCEDURE FOR CONDUCTING HEARINGS
## MONTGOMERY CITY AND COUNTY PERSONNEL BOARD

On receiving a request for a hearing which complies with Personnel Rule VIII, Section 12, the Personnel Board shall determine whether a pre-conference hearing will be held or whether the Personnel Board will proceed immediately with a public hearing.

## NOTICE

The Personnel Board shall set the matter for hearing and shall give notice in writing of the date and place of such hearing.  In discharge or reduction hearings, similar notice shall be given to the department heads.

## BOARD QUORUM

Two members of the Personnel Board constitute a quorum.  Hearings will proceed with two members of the Board present except in instances where the Board may continue a hearing.  In the event of a tie vote the matter will be rescheduled for hearing before the full Board.

## RIGHTS OF EMPLOYEE

When a hearing is granted the employee shall attend, unless excused by the Personnel Board, and shall be entitled to:

(a)  Be represented by counsel or by a representative of the employee's choice;
(b)  Testify under oath;
(c)  Subpoena witnesses to testify for employee.  If witnesses are to be subpoenaed by Personnel Board, the names must be submitted to the Personnel Director at least seventy-two (72) hours prior to time set for hearing;
(d)  Cross-examine all witnesses appearing against employee;
(e)  Impeach any witness before the Personnel Board;
(f)  Present such affidavits, exhibits, and other evidence as the Personnel Board deems pertinent to the inquiry;
(g)  Argue employee's case.

The appointing authority shall be entitled to the same privileges.

## APPEARANCE OF EMPLOYEE

The appearance of the employee shall be required at all hearings unless excused by the Personnel Board.

Unexcused absence of the employee at such a hearing may, in the discretion of the Personnel Board, be deemed a withdrawal of the appeal.

## DISCOVERY

Any party to any hearing conducted by the Personnel Board may subpoena records which are relevant to the matters which are the subject of any such hearing and which are reasonable with respect to the quantity of the documents and the time required to produce the documents. Notice of any request for a subpoena to produce documents should be given to the opposing party by the requesting party or, if the requesting party has failed to do so, by the Director of the Personnel Board. Any objections by any party to a request for a subpoena to produce documents shall be promptly filed in writing with the Personnel Board which will address and rule upon any such objection.

To the extent possible, documents subpoenaed prior to the date of any hearing should be produced prior to the date of the hearing. If no time is specified for the production of the documents, they may be produced at the hearing.

## EVIDENCE

\*\*Prior to the hearing and in order to expedite the hearing process, the parties shall confer in good faith for the purpose of stipulating to the uncontested facts. At the beginning of the hearing, the parties will be expected to submit their stipulation to the Board and/or report on their efforts to reach a stipulation. If no stipulation is reached prior to the hearing, the parties may be asked at the hearing to stipulate to uncontested facts.

The hearing shall be informal and need not be conducted according to technical rules relating to evidence and witnesses. Any relevant evidence shall be admitted if it is the sort of evidence on which responsible persons are accustomed to rely in the conduct of serious affairs, regardless of the existence of any common law or statutory rule which might make improper the admission of such evidence over objection in civil actions. The rules of privilege and of official or judicial notice shall be effective to the same extent as in civil actions. Irrelevant and repetitious evidence shall be excluded. Oral evidence shall be taken only under oath or affirmation.

## EXCLUSION OF WITNESSES

\*The Personnel Board may at its discretion exclude witnesses not under examination, except that the employee and the agency representative may be present throughout the hearing and may testify. When hearing testimony of scandalous or indecent conduct, all persons not having a direct interest in the hearing may be excluded.

\*Revised 10/1/04
\*\*Revised 8/8/06

## TESTIMONY OF EMPLOYEE

In discharge or reduction hearings, the petitioning employee shall not be required to testify, but may be cross-examined as to any matter relevant to the hearing if the employee takes the stand voluntarily. In any other type of hearing the petitioner, if not testifying in own behalf, may be called and examined as if under cross-examination.

## BURDEN OF PROOF

In discharge or reduction hearings, the burden of proof shall be on the appointing authority. In all other types of hearing the burden of proof shall be on the petitioner.

## FINDINGS AND DECISION

Formal findings of fact are not required.

**The Personnel Board may convene an executive session to deliberate and discuss evidence or testimony presented during the hearing. All media, members of the public and other interested parties are excluded from the executive session. At the conclusion of the executive session, the meeting will be adjourned, unless the Chairperson announces prior to the executive session that the meeting will be reconvened. The Board will issue its decision in writing and enter the same in its minutes.

Unless the decision provides otherwise, it shall be effective immediately. Notice of the decision shall be mailed promptly to the petitioner and to any interested party. Except for the correction of clerical error such decision shall be final and conclusive.

## REPORT OF HEARINGS

*Because it is clearly the best and safest practice, all due process hearings held by the Personnel Board will be recorded by a court reporter. The record will not be transcribed except as requested by a party to the hearing who will be responsible for paying the fee for such transcription.

## CONTINUANCES

The Personnel Board may grant a continuance of any hearing upon such terms and conditions as it may deem proper; including in its discretion the condition that the employee shall be deemed to have waived salary for the period of the continuance. Any request for continuance made less than twenty-four (24) hours prior to the time set for the hearing will be denied unless good cause is shown for the continuance.

*Revised 10/1/04
**Revised 9/27/05

# Rules of Procedure
## Montgomery City-County Personnel Board

## I. Scope of Rules.

A. The following Rules of Procedures were duly adopted by the Montgomery City-County Personnel Board as required by the Alabama Open Meetings Act (Act 2005-40) and shall govern the conduct of the meetings of the Montgomery City-County Personnel Board beginning on the 1st day of October, 2005.

B. The following Rules of Procedure may be amended by affirmative vote of a majority of the members of the Board.  Provided; however, such changes in the Rules of Procedure shall not take affect until the next regular meeting of the Board following the adoption of such change.

## II. Access to Meeting Facilities.

A.  Meetings Open to Public. All regular meetings of the Board shall be open to the public as required by the Alabama Open Meetings Act (Act 2005-40).

B.  Accessibility. All regular meetings of the Board will be conducted in a building which is open to the public.

C.  Signs, Placards, Banners. For public safety purposes, no signs or placards mounted on sticks, posts, poles or similar structures shall be allowed in Board meeting rooms. Other signs, placards, and banners shall not disrupt meetings or interfere with others' ability to observe the meeting.

D. Weapons.  For public safety purposes, the Board may establish rules for the removal of weapons from inside the meeting chamber.

## III. Quorum.

A.   Quorum. A majority of the members of the Board shall constitute a quorum.   No ordinance, resolution, policy, or motion shall be voted on and approved by the Board unless a quorum is present in the meeting chamber while the vote is taken and the matter is approved by an affirmative vote of the majority of the members present and voting, unless otherwise required by Alabama law.

B.  Remaining in the meeting. During a Board meeting, members should be present at all times unless an emergency or illness should occur. A member of the Board who leaves the meeting chamber shall not be included in the determination of quorum.

C.   Abstaining from Voting. Any member of the Board who is present in the meeting chamber may, when he or she determines it to be necessary, abstain from voting or otherwise participating in the proceedings related to a particular matter.  Such member who abstains but remains in the chamber shall be deemed to be present for the purpose of constituting a quorum but he or she shall not be deemed to be "present and voting" for the purpose of determining whether a motion has received an adequate number of affirmative votes for passage.

D. Loss of Quorum. In the event that a member departs a meeting prior to adjournment, and the departure causes a loss of quorum, no further official action may be taken until or unless a quorum is restored, except to vote on a motion to adjourn.  If, after a reasonable time not to exceed 15 minutes, the Board still lacks a quorum of its members, the meeting shall be automatically adjourned.

E. Failure to Obtain Quorum. Should no quorum attend within 30 minutes after the time appointed for the beginning of the meeting of the Board, the Chair or the Vice Chair, or in their absence, another member, in order of seniority, shall announce that no quorum was present and that the meeting is cancelled.  The names of the members present for the meeting shall be recorded in the minutes of the next meeting of the Board.

## IV. Presiding Officer.

A.   Chair. The Presiding Officer is the Chair of the Montgomery City-County Personnel Board. The Chair presides at all meetings of the Board. The Chair's responsibilities shall include, but not be solely limited to:

1. Open the meeting, ascertain that a quorum is present at the appropriate time and call the meeting to order, if a quorum is present.

2. Announce the business to come before the Board, in accordance with the prescribed order of business.

3. Recognize all members, the Personnel Director, or others who seek the floor pursuant to these procedures. All questions and comments are to be directed through the Chair and restated by him or her. The Chair shall repeat every motion and state every question coming before the Board, call for the vote and announce the decision of the Board on all matters coming before it.

4. Preserve decorum and order, and in case of disturbance or disorderly conduct in the Board chambers, may cause the same to be cleared or cause any disruptive individual to be removed.

5. Call to order any member of the  Board who violates any of these procedures.

6. Expedite business in every way compatible with the rights of the members.

7. Remain objective. The Chair must remain objective and may only make a motion, second a motion or vote as provided in these Rules of Procedures.

8. Declare the meeting adjourned when the Board so votes, when a quorum is no longer present or at any time in the event of an emergency affecting the safety of those present.

B.  Vice Chair. In the absence of the Chair or in the event of the Chair's inability to serve, the Vice Chair (or other member designated by local law) shall perform the duties and functions of the Chair until the Chair's return.  The Board shall establish its own procedures for the election of a Vice Chair, provided that any such election of a new Vice Chair shall not take affect until the next regular meeting of the Board.


**V. Order of Business.**

A.   Official Agenda. There shall be an official agenda for every meeting of the Board, including special and emergency meetings.  As required by Alabama law, the official agenda for special and emergency meetings shall include only those items necessitating the holding of the special or emergency meeting.

The agenda for regularly-scheduled meetings shall identify the items to be considered and determine the order of business to be conducted at the meeting. All proceedings and the order of business at all meetings of the Board shall be conducted in accordance with the official agenda.  This agenda shall be established prior to each meeting under procedures to be adopted by the Board.   Such procedures may include the conducting of an "administrative" or "agenda-setting" meeting prior to the Board's regular meeting.  These procedures may be amended or altered by the Board, but such changes shall not take effect until the next regularly-scheduled meeting of the Board.

B.  Agenda Format for Regularly-Scheduled Meetings. The official agenda for a regularly-scheduled Board meeting shall be in substantially the form as set forth below:

1. Call to Order, Welcome

2. Public Comment from Citizens. Such comment shall be limited to 3-minutes per speaker and no more than two speakers may be heard on the same subject as provided elsewhere in the Rules of Procedure.

3. Public Comment from Other Elected Officials.

4. Call of Roll to Establish Quorum

5.  New Business

    6. Reports from Staff:
      Personnel Director

    7. Old Business

    8. Any Scheduled Public Hearings

    9. Discussion Items by Board members.  Discussion items may only be acted upon by affirmative vote of all members in attendance.

    10. Adjourn

C. Consent Agenda. On the portion of the agenda designated as "Consent," all items contained therein may be voted on with one motion. Consent items are only those items considered to be routine in nature, non-controversial and that do not deviate from past Board direction or policy. However, any member of the Board, including the Chair, may withdraw an item from the consent agenda, provided that such withdrawal is declared at least one (1) hour before the beginning time of the meeting.  An item removed from the "Consent" agenda as provided herein shall be moved to the "New Business" portion of the agenda and it shall then be considered individually.

D. Public Comment from Citizens and Other Elected Officials. Citizens and other elected officials who wish to be heard by the Board shall be afforded such opportunity during the portion of the meeting so designated.  The comment shall conform to the requirements of decorum and order that apply to the members of the Board and the Chair shall take whatever steps are necessary (including the removal of any citizen or other elected official) to preserve such decorum and order.  Comments shall be addressed to the Board and shall not include any personal or other comments addressed at any member of the Board or Board employee. There shall be no debate and no action by the Board during this portion of the agenda.

E. New Business. New Business items are items of a general nature that require Board action or pertain to Board policy.  Items of New Business that are neither approved or defeated by action of the Board shall be considered under Old Business at the next regular meeting of the Board, unless tabled.

F. Reports from Staff.  The senior staff members shall make reports to the Board as directed by the Chair or by majority vote.  The Board may, by majority vote of those members in attendance at the meeting, take action on any items contained in the report of the staff members.

G. Old Business.  Any item which was included on the "New Business" portion of the previous meeting, but was not approved, defeated or tabled by majority vote of the members of the Board present and voting.  Motions postponed or carried over to a day certain shall be included on the agenda under "Old Business" on the next regular meeting following the conclusion of the time for which the motion was postponed or carried over.

H. Hearings conducted by the Board pursuant to Personnel Rule VIII, Section 12 will follow the attached *Procedure for Conducting Hearings* previously established by the Board.

I. The Board may conduct any public hearings during this portion of the meeting.  Any notice required by law prior to the conduct of the public hearing shall be given by the Board.

Individual speakers are required to adhere to a three (3) minute time limit when speaking on issues scheduled for public hearing. The Board may, by majority vote, either extend or reduce time limits, based on the number of speakers.  The comment shall conform to the requirements of decorum and order that apply to the members of the Board and the Chair shall take whatever steps are necessary (including the removal of any citizen or other elected official) to preserve such decorum and order.  Comments shall be addressed to the Board and shall not include any personal or other comments addressed at any member of the Board or Board employee.

J.  The Board shall take no action on an item raised during this discussion portion of the agenda unless such is accomplished through a motion adopted by an affirmative vote of all members of the Board present at the meeting.

K. Departure from Order of Business. Any departure from the order of business set forth in the official agenda shall be made only upon affirmative vote of all the members of the Board present at the meeting.

L. Additions, Deletions, or Technical Corrections to Agenda. Deletions or technical corrections to the agenda may be considered by the Board and adopted by the passage of a single motion approved by majority vote of those members in attendance at the meeting. Additions to the agenda shall only be made by affirmative vote of all the members of the members present at the meeting.

M. Announcing Agenda Items. The Chair shall announce each item on the agenda.  The Personnel Director or other appropriate staff member shall then be called to present the item to the Board, when appropriate.

**VI. Rules of Debate.**

A. Decorum.

    1. Every member desiring to speak should address the Chair, and upon said recognition by the Chair, should confine discussion to the question under debate, avoiding all personalities and unprofessional language.

    2. Board members shall refrain from: attacking a member's motives; speaking on a prior motion not pending; speaking while the Chair or other Board members are speaking; speaking against their own motions; and disturbing the Board.

3. A member once recognized should not be interrupted when speaking unless said member is being called to order. The member should then cease speaking until the question of order is determined, without debate, by the Chair. If in order, said member shall be at liberty to proceed.

4. A member shall be deemed to have yielded the floor when he or she has finished speaking. A member may claim the floor only when recognized by the Chair.

B. Motions.

1. A motion and a second to the motion is to precede any action or debate on an agenda matter unless there are speakers (who are not members of the Board) to be heard on the agenda matter.

2. All motions shall be made and seconded before debate may proceed.

3. When a motion is presented and seconded, it is under consideration and no other motion shall be received thereafter, except motions to adjourn, to lay on the table, to postpone, to carry over, to substitute, or to amend which shall have preference in the order in which they are listed.

4. Motions to "lay on the table" are made to end debate on a matter and to "remove" it from consideration by the body. The adoption of a motion to "lay on the table" has the affect of defeating the original motion and that item shall not be considered again during the same meeting unless a motion to "reconsider" is adopted as provided herein.

5. Motions to "postpone" or "carry over" must be made by stating the date or time for which the item shall be postponed or carried over. Should such a motion be adopted, the matter will be back before the Board under "Old Business" at the first regular meeting of the Board following the expiration of the time for which it was postponed or carried over.

6. Motions to "substitute" or "amend" a motion are used to make changes or revisions in the original motion. Such motions are made only after the original motion has received a second but prior to the adoption of the original motion. If the motion to "substitute" or "amend" is approved, the Board then must the take a second vote to approve the motion "as substituted" or "as amended", as the case may be.

7. Any Board member may move to close, or end, debate and "move the question" on the motion being considered. This motion to "move the question" shall be non-debatable. A successful vote on the motion to "move the question" will end discussion of the item and a vote on all pending motions shall be taken immediately without the offering of any other motions. The member moving the adoption of the original motion shall have the privilege of making closing remarks (of not more than one minute) before the vote on the motion to "move the question" is taken.

8. The following motions are not debatable and must be voted upon without debate: to adjourn; to lay on the table; and to move the question.

C.  Motions to Amend

An amendment to a motion must be germane, that is, it must relate to the substance of the main motion. An amendment may not introduce an independent question, and an amendment may not serve as the equivalent of rejecting the original motion. A member may amend the main motion in either of the following two ways:

1. By Consent of the Members. The Chair, or another member through the Chair, may ask for certain changes to be made to the main motion. If there are no objections from the maker of the motion, the motion shall stand as amended.

2. Formal Amendment. An amendment may be presented formally by moving to amend the motion in some way. If it is in the form of a formal motion to amend, a second shall be required and discussion shall follow on the amendment. If an amendment passes, the main motion shall be the motion as amended. If it fails, the motion shall be the motion as it was before the amendment was presented.

D.  Motions to Reconsider

A motion to reconsider any vote or proceeding of the Board may only be made and seconded by a Member who had previously voted on the prevailing side. Such motion must be made before the conclusion of the meeting during which the original motion was made and approved.  A motion to reconsider must be adopted by a majority of those members of the Board present and voting.

**VII. Voting.**

A.  Voice Vote; Secret Ballots. Unless otherwise directed by the Chair or requested by a member of the Board, all votes shall be taken by voice and the result shall be announced by the Chair, whose decision shall be final. Such ruling may not be appealed. No vote may be taken by secret or paper ballot.

B.  Tabulating the Vote. Should a roll call vote be directed by the Chair or requested by a member of the Board, the person designated by the Chair shall call the members for the purpose of announcing his or her vote.  The Chair shall announce the results. Upon any roll call, there shall be no discussion by any member after the roll call has begun.

C.  Voting. Every member in the meeting room or chamber when the question is put must give his or her vote, unless the member has publicly stated that he or she is abstaining.  The Chair shall only vote once on each motion and shall not cast an additional vote to make or break a tie vote.

D.  Absent for Vote; Changing Vote. Any member absent for a vote on a particular item may record his or her vote, and any member may change his or her vote before the next item is called for consideration, or before a recess or adjournment is called, whichever occurs first, but not thereafter, except with the consent of all the members who voted thereon.

E. Majority Vote; Tie Vote. The passage of any motion, policy, or resolution shall require the affirmative vote of at least the majority of the members of the Board who are present and voting.  In the case of a tie in votes on any proposal, the proposal fails.


**VIII. Public Input: Addressing the Personnel Board.**

A.  Public Input. The Board recognizes the importance of allowing citizens, including other elected officials, to express their opinions on matters coming before the Board. The Board also recognizes the necessity for conducting orderly and efficient meetings in order to complete Board business in a timely manner.  Public Input during the meeting, from both citizens and other elected officials, shall only be given during the time provided in the agenda and only within the procedures set out herein.  Citizens or other elected officials shall not address the Board at any time other than as specifically provided in the agenda unless authorized by unanimous consent.

B.  Procedure for Public Input

   1. At regularly scheduled Board meetings, the Board provides comment periods for citizens and other elected officials to speak and to offer input and comments on items pending before the Board as well as items that are of concern to the public.  The remarks of each speaker shall be limited to no more than three (3) minutes, unless the Chair extends the time, and no more than two (2) speakers may be heard on each subject unless authorized by affirmative vote of all members of the Board who are present.

   2. A form will be provided for those citizens who wish to make comments.  Each person wishing to speak must sign this form prior to the beginning of the Public Comment portion of the agenda.

   3. Any citizens wishing to make written comments may provide those to the Personnel Director before the conclusion of the meeting. A copy of the written comments will then be provided to the members of the Board.

C. Addressing the Board.

   1. When the person's name is called, the person shall step up to the speaker's lectern and shall give the following information in an audible tone of voice for the minutes:
      (a) name;
      (b) place of residence or business address;

    (c) if requested by the Chair, the person may be required to state whether the person speaks for a group of persons or a third party, if the person represents an organization, whether the view expressed by the person represents an established policy or position approved by the organization, and whether the person is being compensated by the organization.

2. All remarks shall be addressed to the Board as a body and not to any member thereof.

3. No person, other than a member of the Board, and the person having the floor, may be permitted to enter into any discussion, either directly or through a member of the Board, without permission of the Chair. No question may be asked except through the Chair.

4. Speakers should make their comments concise and to the point, and present any data or evidence they wish the Board to consider. No person may speak more than once on the same subject unless specifically granted permission by the Chair.

D. Decorum.

1. Order must be preserved. No person shall, by speech or otherwise, delay or interrupt the proceedings or the peace of the meeting, or disturb any person having the floor. No person shall refuse to obey the orders of the Chair or the Board. Any person making irrelevant, impertinent, or slanderous remarks or who becomes boisterous while addressing the Board shall not be considered orderly or decorous. Any person who becomes disorderly or who fails to confine remarks to the identified subject or business at hand shall be cautioned by the Chair and given the opportunity to conclude remarks on the subject in a decorous manner and within the designated time limit. Any person failing to comply as cautioned shall be barred from making any additional comments during the meeting by the Chair, unless permission to continue or again address the Board is granted by the majority of the members present.

2. If the Chair declares an individual out of order, he or she will be requested to relinquish the podium. If the person does not do so, he or she is subject to removal from the meeting room.

3. Any person who becomes disruptive or interferes with the orderly business of the Board may be removed from the meeting room for the remainder of the meeting.

**X. Executive Session.**

The Board is authorized to enter into executive session as provided in The Alabama Open Meetings Act (Act 2005-40).

**XI. Committees.**

The Chair, with the consent of the Board, may appoint committees as may be needed to assist in the business of the Board. The meetings of the Board shall be governed by the Rules of Procedures.  All such committees shall be provided a formal charge and shall report to the Board its findings and recommendations, unless otherwise directed.   The Chair shall designate the Chair for each committee appointed. Agendas for committee meetings shall be furnished to all members of the Board.

**XII. Adjournment.**

No meeting should be permitted to continue if a quorum is not present.  The Board may adjourn by majority vote.

# POLICY FOR RECORDING PROCEEDINGS OF THE MONTGOMERY CITY-COUNTY PERSONNEL BOARD

In order to maintain the proper decorum required for conducting the business of the Board while, at the same time allowing members of the media or general public to record the proceedings of the Board in accordance with the Open Meetings Act (Act 2005-40), the Montgomery City-County Personnel Board hereby adopts the following policy for the recording of any such proceedings:

The use of audio or video recording equipment shall be allowed during any meeting provided that the use of such equipment does not disrupt or disturb the proceedings or interfere with the ability of others in attendance to observe and understand the proceedings. All equipment shall be in proper working condition, and if any malfunction of equipment causes disruption to the proceedings, use of the equipment shall be immediately discontinued. Any persons desiring to record the proceedings shall do so openly and shall sign in at the outset of the proceedings.

Video recording shall only be allowed to the extent that there is adequate space in the meeting facilities to accommodate the recording equipment without disturbing or inconveniencing the members of the Board or those in attendance at the proceedings. The chairperson may limit or prohibit the use of tripods or other video recording accessories if space limitations warrant such restrictions. Unless the equipment can be operated from a seat without unduly disrupting or disturbing the proceedings or others in attendance, all video recording shall take place in the area along the back or side of the room designated for that purpose. No one will be allowed to obstruct the view of others in attendance.

Persons who are video recording the proceedings may leave the meeting room with their equipment during the proceedings provided there is no undue disruption. However, such persons shall only be allowed to return and resume recording if this can be accomplished without disrupting the proceedings or disturbing those in attendance.

If any set up of equipment is required, the set up shall be completed prior to the beginning of the proceedings or during a recess. Persons may be allowed to dismantle the equipment during the proceedings only if done without disruption to the proceedings and without interfering with the ability of others in attendance to observe and hear the proceedings.

Any persons desiring to place microphones or recording devices at the Board table, at the podium, or at any other location within the meeting room shall obtain permission from the chairperson prior to the beginning of the proceedings, and shall make arrangements with the Personnel Director or other designated personnel for placement of all equipment. The microphones or recording devices cannot be removed during the proceedings, unless there is a recess of the proceedings called by the chairperson, and the equipment can be removed within the time frame of that recess.

No audio or video recording equipment shall be allowed during any executive session proceedings.

All persons or organizations, including any media organization, shall fully comply with these procedures at all times.  Any person or organization violating this policy or otherwise causing undue disruption to the proceedings shall be instructed by the chairperson to discontinue the use of the recording equipment, and any person or organization that refuses to cooperate will be instructed to vacate the proceedings.  Failure to comply with instructions to leave may result in removal by law enforcement personnel.

Approved by the Personnel Board on September 27, 2005.



# PERSONNEL DEPARTMENT
## RECOMMENDATION FOR PERSONNEL ACTION

| | | |
|---|---|---|
| Department/Division | 8600 - MUSEUM | Date _____ 3/1/2007 |
| Name of Employee | ELIZABETH JACOBS | Effective Date _____ 3/11/2007 |
| Social Security # ■■■■■■■ | Classification | MUSEUM SECURITY OFFICER | Job Code _____ 7510 |

Item 2 requires the signature of both department heads.

Items 2, 3, 4, 5, 6, 15 require approval of Personnel Director before action is official.  Items 3, 4, 5, 7 must have copy of letter to employee attached.  Item 8 should have copy of letter of resignation.

| | |
|---|---|
| 1. Transfer within department ...................... ( ) | 9. Retirement ..................................................... ( ) |
| 2. Transfer to another department ............... ( ) | 10. Separation by death ................................... ( ) |
| 3. Demotion ................................................ ( ) | 11. Expiration by Temporary Appointment........... ( ) |
| 4. Layoff .................................................... ( ) | 12. Return Leave Without Pay........................... ( ) |
| 5. Dismissal ............................................... ( ) | 13. Return from Military Leave........................... ( ) |
| 6. Leave without pay ................................... ( ) | 14. Change of Name ........................................ ( ) |
| 7. Suspension ............................................ ( X ) | 15. Change in Salary ....................................... ( ) |
| 8. Resignation ............................................ ( ) | 16. _____ ( ) |

| ITEMS AFFECTED BY ACTION | FROM | TO |
|---|---|---|
| **Department** (Items 1 & 2) | | |
| **Classification & Salary** (Items 1, 2, 3) | | |
| **Dates** (Items 6 & 7) | FROM 8:00 AM MARCH 11, 2007 THROUGH 5:00 PM MARCH 13, 2007 | |
| **Name** (Item 14) | | |
| **Amount** (Item 15) | | |
| **Other** (Item 16) | | |

Funds are available _E. Pleasel Saunders_     Date _3/2/07_
                      Disbursing Officer

**Explanation and remarks (Give reason for any action which is not self-explanatory)**

(Signed) 1. _____     Date _3/6/07_
              MSB          Appointing Authority

         2. _____     Date _____

         3. _____     Date _3/2/2007_
                                                 MAR 08 2007

         4. _____     Date _____
              Personnel Director  M. Montsyo

PER 300-419
revised 5/20/02

DEFENDANT'S EXHIBIT B

FORM 100        **CITY PAYROLL DEPARTMENT**        SUBMIT IN TRIPLICATE

**Section A**    To be completed for items 1, 2, 3, 15 & 16 on Form 10 and Promotion on Form 5

Dept./Div. Number    8600      Employee's Name    ELIZABETH        JACOBS

                            FIRST                           LAST

Effective Date     03/11/2007       Social Security Number:     ▓▓▓▓▓▓▓

                     MO.    DA.    YR.

                     CURRENT CLASSIFICATION & SALARY     7510      A03        1

                                          JOB CODE     PAY RANGE     STEP

**NEW CLASSIFICATION & SALARY INFORMATION**        NEW PAYROLL/DEPT# _____

                                                        IF APPLICABLE

                                                        REVIEW DATE

                                                        FOR NEXT

NEW JOB CODE _____     NEW PAY RANGE _____     NEW STEP _____     INCREASE

                                                                   (MO/DA/YR)

ITEM 15 NEW HOURLY RATE: _____     WKLY / BW _____     SCH. HOURS _____

IF ACTION INVOLVES A PAY OUT ON PAYROLL, WAS EMPLOYEE ADVANCED WORK TIME ON BI-WKLY 4/15/83

WEEKLY PAYROLL 4/8/83 OR BI-WEEKLY/WEEKLY       Column1 _____     Column2 _____

                                                      YES/NO

IF YES: HOW MANY HOURS WERE ADVANCED:       (1983) _____ HOURS

                                            (1985) _____ HOURS

                                            TOTAL _____ HOURS

AFTER TIME USED ON FINAL TIME SHEET, PAY REMAINING LEAVE BALANCES AS FOLLOWS:

ANNUAL LEAVE HOURS: _____

SICK LEAVE HOURS: _____

COMPENSATORY HOURS _____

PERSONAL LEAVE HOURS: _____        LAST DAY IN PAY STATUS: _____

TOTAL LEAVE HOURS: _____

**Section B**

DEPARTMENT/DIVISION NUMBER:     8600            _____

THE FOLLOWING PERSON HAS BEEN APPOINTED: TEMPORARY: _____     PERMANENT: _____

NAME _____                                      EFFECTIVE DATE: _____

       FIRST:           MI          LAST:                                (MO/DA/YR)

STREET ADDRESS _____              STATE _____     ZIP _____

RACE _____     SEX _____     MARITAL _____     NO. OF _____       BIRTHDAY _____

                                       STATUS            DEPENDENTS

HOURLY RATE _____     JOB CODE _____     PAY RANGE _____     STEP _____     REVIEW DATE _____

PAID:                                     WILL PAY RETIREMENT:

    WEEKLY _____     YES _____        YES _____

    BI-WEEKLY _____     NO _____        NO _____

SCHEDULED HOURS PER PAY PERIC _____     NON-SCHEDULED, PAID HOURS WORKED ONLY: _____

WAS EMPLOYEE PREVIOUSLY EMPLOYED BY THE CITY OF MONTGOMERY?     NO _____     PAID WKLY OR BW _____

                                                     YES/NO

                                                              PREVIOUS SERVICE

IF YES:       DEPT # _____       TERM. DATE _____

                                                     MONTHS   DAYS   YEARS

REMARKS: _____

REVISED 5-03-02 PYR/RW

PER FORM 35
Revised 10/04

Certified Mail
Return Receipt Requested

Date   MARCH 1, 2007

## NOTIFICATION OF SUSPENSION

Employee's Name   ELIZABETH JACOBS

Street Address   1200 GOODE STREET

City/State/Zip        MONTGOMERY, AL 36104

This is to notify you that as of this date, you are herewith suspended without pay for the period of
THREE (3) DAYS: MARCH 11-13, 2007

The reason(s) for this suspension is (are) (List all charges - attach additional sheets as required):

SEE ATTACHED DOCUMENTS

Previous record considered (List all actions considered - attach additional sheets as required):

### APPEAL RIGHTS

Suspensions in excess of 30 calendar days in any fiscal year may be appealed to the Personnel Board. Suspensions of 30 calendar days or less may not be appealed to the Personnel Board except as may be other wise provided in Personnel Rules and ] Regulations, Rule VIII, Section 12 and Rule VII, Section 12 or 13.

A permanent employee who has received a suspension appealable under Personnel Rules and Regulations may answer these charges within three (3) days from the date of receipt of the notification of suspension by responding in writing, to the Appointing Authority and providing a copy to the Personnel Director, who is located at 27 Madison Avenue.

Within ten (10) days from the time for filing your answer, if you desire a hearing before the Personnel Board you must file a written request with the Personnel Director.

Consult the Montgomery City-County Personnel Department, 27 Madison Avenue, relative to any other rights you have under the Merit System Law.

I hereby certify that this document was given to the employee or placed in the United States mail on

March 1, 2007
_____
month/day/year

_____
Department Head/Appointing Authority

ELIZABETH JACOBS
_____
Employee

MUSEUM SECURITY OFFICER
_____
Title

PER FORM 31
Revised 01/05

## NOTICE OF DEPARTMENTAL DISCIPLINARY HEARING

ELIZABETH JACOBS
_____
Employee's name

████████████
_____
Street Address

████████████
_____
City, State and zip

Please be advised that a departmental hearing has been scheduled

MARCH 01, 2007 AT 4:30 PM                    MMEA – DIRECTOR'S OFFICE
_____          _____
Month, Day, Year, time (to include time of day)              Location of disciplinary hearing

The purpose of a departmental hearing is to consider disciplinary action against you for the following
reasons: (attach additional sheets as required)
A. Leaving work 1/2 hour early without permission, getting paid for working 8 hours, and getting
paid time and a half for overtime, which was not correct.

B. Insubordinate and unprofessional behavior toward supervisor.

You may be present if you desire and you may respond orally and/or in writing at the time of the
hearing. You may not be represented by attorney at department level. The appointing authority may
designate the department head or some other representative to act on his or her behalf in taking
disciplinary actions. You will be advised in writing if you are entitled to a hearing before the
appointing authority or his or her designee before any disciplinary action becomes final, and you will
be given the opportunity to waive your appearance at that hearing.

_____
Departmental head

I hereby certify that this document was given to the employee or placed in the United States mail on:

March   1   , 2007
_____
(Month)       (Day)       (Year)

Signed _____

Witness _____

I hereby acknowledge receipt of this notification of said charges and of the hearing thereon.

_____
Employee

TRANSCRIPT OF DEPARTMENTAL DISCIPLINARY HEARING

The departmental hearing for Elizabeth Jacobs was held at 4:35 p.m. on March 1, 2007. Mark Johnson Director, Shirley Woods Assistant Director, Rick Allen Chief of Security, and Elizabeth Jacobs were present.

Ms. Woods stated the purpose of the hearing was to consider disciplinary action against Ms. Jacobs for leaving work ½ hour early without permission every Thursday for the past several months and insubordination.

Ms. Jacobs stated that she did not leave work on purpose. Even though she was given a copy of the work schedule that said 4:30-12:30 on Thursday, she was going by a post schedule that said 4:30 to 12:00. She feels it was an honest mistake and never really looked at her paycheck, where she was paid the full 8 hours. She apologized for being insubordinate and explained that she had a few personal problems that made her angry. She felt that the 5 days recommended by the Chief of Security and Ms. Woods was too harsh a punishment since her record was very good and this was her first offense.

Mr. Johnson stated that everyone has personal problems, but we try not to let them affect our work. He also stated that he was very surprised at Ms. Jacobs' behavior. He asked Ms. Jacobs to leave the hearing and would get back to her regarding his decision.

After some discussion, it was decided that Ms. Jacobs be given 3 days suspension; receive leave without pay for the hours she did not work; and must contact EAP for anger management.

PER FORM 30
Revised 10/31/03

# EMPLOYEE COUNSELING RECORD

EMPLOYEE: ELIZABETH JACOBS

POSITION: MUSEUM SECURITY OFFICER

SUPERVISOR: RICK ALLEN

DEPT: 8600 - Montgomery Museum

DATE OF COUNSELING: 02/23/07

REASON FOR COUNSELING: (Description of performance or conduct - give specific facts, background information dates and times.)

After reviewing time sheets for the month of December, I noticed that Ms. Jacobs was working 7.5 hours (instead of 8 hours as listed on the Officers' Work Schedule) on Thursday evenings. I telephoned her to find out why she was not working (but getting paid for 8 hours and on some occasions, time and a half for overtime) her full shift. She started screaming and yelling and would not calm down so that we could have an intelligent and professional conversation. I requested that she meet with Chief Allen the following day (02/24/07) to clear up this matter. Her conduct was insubordinate, inappropriate and unacceptable.

Employee's response:

On Tuesday, February 27, 2007, Ms. Jacobs called to apologize for her behavior and inappropriate tone of voice. She stated that she was having a difficult time personally and did not mean to be insubordinate.

If corrective action is required please specify the nature of the action to be taken by employee and the consequence of further infractions:

Ms. Jacobs was paid for 40 hours each week from December 15, 2006 through February 23, 2007 and she only worked 39.5 hours per week. According to the time sheets, she was paid for 4.5 hours that she did not work, plus time and a half for overtime on some days. This is considered stealing time from the Museum and the City of Montgomery. I recommend that she be suspended for five days for stealing time and insubordination.

_Shirley A. Woods_
Supervisor

2/24/06
Date

My signature indicates that the above matters were discussed with me and that I received a copy of this form.

_____
Employee Signature

_____
Date

This will certify that the employee was offered a copy of this form, but refused to sign the Employee Counseling Record.

_____
Supervisor Signature

_____
Employee Name

ATTACH  ADDITIONAL SHEETS AS REQUIRED

PERSNL-30
Revised 11/1/02

# EMPLOYEE COUNSELING RECORD

EMPLOYEE: _ELIZABETH JACOBS_    POSITION: _SECURITY OFFICER_

SUPERVISOR: _R. ALLEN_    DEPT: _SECURITY_

DATE OF COUNSELING: _2/24/07_

REASON FOR COUNSELING: (Description of performance or conduct - give specific facts, background information, dates and times)

_* SEE ATTACHED 8 PAGE DOCUMENT *_

ACCORDING TO THE CARD ACCESS RECORDS — THIS EMPLOYEE HAS BEEN LEAVING EVERY THURSDAY NIGHT SHIFT BEFORE HER SCHEDULED OFF TIME OF 12:30 AM ON FRIDAY MORNING RECORDS INDICATING SHE HAS BEEN LEAVING HER SHIFT SHORTLY AFTER MIDNIGHT ON THESE THURSDAY NIGHT SHIFTS

THE OFFICIAL WORK SCHEDULE CALLS FOR THIS SHIFT TO BE 4:30-12:30, WHICH REPRESENTS AN 8 HOUR SHIFT — NOT A 7½ HOUR SHIFT

Employee's response: _Post_

EMPLOYEE SAID SHE WAS FOLLOWING THE "POST" SCHEDULE THAT SHOWS HER SHIFT TO BE 4:30-12:00 (MIDNIGHT). SHE SAYS SHE HAD NOT BEEN TRYING TO "CHEAT" BY LEAVING AT MIDNIGHT INSTEAD OF 12:30 AM.

_*_ EMPLOYEE REQUEST AN ADMINISTRATIVE HEARING WITH THE DIRECTOR.

If corrective action is required please specify the nature of the action to be taken by employee and the consequence of further infractions:

THE CORRECTIVE ACTION IN THIS SITUATION WILL BE A SUSPENSION OF 5 DAYS WITHOUT PAY IN THE ALTERNATIVE TO TERMINATION.

_____    _2/24/07_
Supervisor                        /Date

My signature indicates that the above matters were discussed with me _____
                                                              (Month   Day   Year)
and that I received a copy of this form.

_____
Employee Signature

This will certify that _ELIZABETH JACOBS_ was offered a copy of this form but refused to sign the Employee Counseling Record.

_____ _2-26-07_
Supervisor Signature

ATTACH ADDITIONAL SHEETS AS REQUIRED

REVISED:    JANUARY 24, 2007

**MONTGOMERY MUSEUM OF FINE ARTS**
**OFFICERS' WORK SCHEDULE**
**DECEMBER 8, 2006 THRU MARCH 8, 2007**

| | SUNDAY | MONDAY | TUESDAY | WEDNESDAY | THURSDAY | FRIDAY | SATURDAY | HRS |
|---|---|---|---|---|---|---|---|---|
| **FIRST SHIFT** | | | | | | | | |
| C. HALL | 12:00-8:00 | 12:00-8:00 | OFF | OFF | 12:00-8:00 | 12:00-8:00 | 12:00-8:00 | 40 |
| B. HOSEY | OFF | OFF | 12:00-8:00 | 12:00-8:00 | 12:00-8:00 | 12:00-8:00 | 12:00-8:00 | 44 |
| E. JACOBS | 12:00-8:00 | 12:00-8:00 | 12:00-8:00 | 12:00-8:00 | | OFF | OFF | 32 |
| **SECOND SHIFT** | | | | | | | | |
| E. PETTIS | 12:00-5:00 / 12:30-1:00 | 8:00-5:00 / 10:30-12:00 | OFF | 8:00-5:00 / 10:30-12:00 | 8:00-8:00 / 3:30-5:00 | OFF | 8:00-5:00 / 11:30-1:00 | 40 |
| R. LUCAS | 8:00-5:00 / 10:30-12:00 | 8:00-5:00 / 3:00-4:30 | 8:00-5:00 / 1030-12:00 | OFF | OFF | 8:00-5:00 / 1:30-3:00 | 8:00-5:00 / 11:00-12:30 | 40 |
| J. WITTLING | 7:30-4:30 / 11:00-12:30 | OFF | OFF | 7:30-4:30 / 10:30-12:00 | 7:30-4:30 | 7:30-4:30 / 1:30-3:00 | 7:30-4:30 / 10:30-12:00 | 40 |
| A. WILLIS | 8:00-5:00 / 12:00-1:30 | OFF | OFF | 8:00-5:00 | 8:00-5:00 | 8:00-5:00 / 12:00-1:30 | 8:00-5:00 / 3:00-4:30 | 40 |
| S. HASBERRY | 8:00-5:00 / 1:30-3:00 | OFF | | 8:00-5:00 / 1:30-3:00 | 12:00-9:00 / 4:30-6:00 | 10:30-12:00 | 8:00-5:00 / 12:00-1:30 | 40 |
| A. CAMPBELL | 8:00-5:00 / 10:30-12:00 | 7:30-4:30 / 12:00-1:30 | 7:30-4:30 / 12:00-1:30 | 8:00-5:00 / 12:00-1:30 | OFF | OFF | 8:00-5:00 / 1:30-3:00 | 40 |
| T. OATES | OFF | 8:00-5:00 / 10:30-12:00 | 8:00-5:00 / 3:00-4:30 | 8:00-5:00 | 12:00-9:00 / 3:00-4:30 | 8:00-5:00 | OFF | 40 |
| M. CRAIG | | 8:00-5:00 / 11:00-12:30 | 8:00-5:00 / 11:00-12:30 | 8:00-5:00 / 11:00-12:30 | 8:00-5:00 | 10:30-12:00 | OFF | 32 |
| RICHARDSON/COMBS | OFF | 8:00-5:00 / 1:30-3:00 | 8:00-5:00 / 1:30-3:00 | 8:00-5:00 / 3:00-4:00 | 8:00-5:00 / 1:30-3:00 | 8:00-5:00 / 11:00-12:30 | 8:00-5:00 / 11:00-12:30 | 32 |
| R. POSEY | OFF | 8:00-5:00 | 8:00-5:00 | | 8:00-5:00 | 8:00-5:00 / 3:00-4:30 | 8:00-5:00 / 10:30-12:00 | |
| W. AMBERS | 8:00-5:00 / 3:00-4:30 | 8:00-5:00 / 12:30-2:00 | 7:30-4:30 / 12:30-2:00 | | 10:30-12:00 | 8:00-5:00 / 12:30-2:00 | 8:00-5:00 / 12:30-2:00 | 40 |
| **THIRD SHIFT** | | | | | | | | |
| G. KELLY | 4:30-12:30 | | | | 4:30-12:00 | | | 8 |
| E. JACOBS | OFF | OFF | | 4:30-12:30 | 4:30-12:30 | | | 8 |
| R. POSEY | OFF | | | 4:30-12:30 | | | | 8 |
| E. DEMUS | OFF | 4:30-12:30 | 4:30-12:30 | 4:30-12:30 | OFF | OFF | OFF | 24 |
| I. BOWMAN | 4:30-12:30 | 4:30-12:30 | 4:30-12:30 | OFF | 4:30-12:30 | 4:30-12:30 | 4:30-12:30 | 40 |
| R. BAUGH | OFF | OFF | OFF | OFF | 4:30-12:00 | 4:30-12:30 | 4:30-12:30 | 24 |
| A. CALLOWAY | 10:00-5:00 | | | | | | 10:00-5:00 | |
| L. COOPER | 10:00-5:00 | | | | | | 10:00-5:00 | |

# MAXxess

## Transactions (Badge Events)

2/24/2007 07:20:00

(Details='Jacobs Elizabeth') AND EventTime>={ts'2006-12-08 00:30:16'} AND EventTime<={ts'2007-(    Allen, Richard E

| Line | EventTime | Location | Event | Details |
|---|---|---|---|---|
| 1 | Sun Dec 10, 23:45:58 | Staff Access Loading Dock | Valid access | Jacobs Elizabeth |
| 2 | Mon Dec 11, 08:04:37 | Staff Access Loading Dock | Valid access | Jacobs Elizabeth |
| 3 | Mon Dec 11, 23:35:32 | Staff Access Loading Dock | Valid access | Jacobs Elizabeth |
| 4 | Mon Dec 11, 23:49:24 | crosswalk security | Valid access | Jacobs Elizabeth |
| 5 | Mon Dec 11, 23:49:48 | crosswalk artwork | Valid access | Jacobs Elizabeth |
| 6 | Tue Dec 12, 00:00:03 | crosswalk artwork | Valid access | Jacobs Elizabeth |
| 7 | Tue Dec 12, 00:00:30 | crosswalk security | Valid access | Jacobs Elizabeth |
| 8 | Tue Dec 12, 06:54:48 | staff entrance | Valid access | Jacobs Elizabeth |
| 9 | Tue Dec 12, 06:55:22 | staff entrance | Valid access | Jacobs Elizabeth |
| 10 | Tue Dec 12, 06:55:56 | Staff Access Loading Dock | Valid access | Jacobs Elizabeth |
| 11 | Tue Dec 12, 06:56:33 | Staff Access Loading Dock | Valid access | Jacobs Elizabeth |
| 12 | Tue Dec 12, 06:56:50 | Staff Access Loading Dock | Valid access | Jacobs Elizabeth |
| 13 | Tue Dec 12, 08:04:12 | Staff Access Loading Dock | Valid access | Jacobs Elizabeth |
| 14 | Wed Dec 13, 03:02:54 | crosswalk security | Valid access | Jacobs Elizabeth |
| 15 | Wed Dec 13, 03:07:21 | crosswalk artwork | Valid access | Jacobs Elizabeth |
| 16 | Wed Dec 13, 08:03:20 | Staff Access Loading Dock | Valid access | Jacobs Elizabeth |
| 17 | Thu Dec 14, 16:16:24 | Staff Access Loading Dock | Valid access | Jacobs Elizabeth |
| 18 | Thu Dec 14, 16:21:49 | crosswalk security | Valid access | Jacobs Elizabeth |
| 19 | Thu Dec 14, 16:22:16 | crosswalk security | Valid access | Jacobs Elizabeth |
| 20 | Thu Dec 14, 16:33:13 | crosswalk security | Valid access | Jacobs Elizabeth |
| 21 | Thu Dec 14, 17:18:58 | crosswalk security | Valid access | Jacobs Elizabeth |
| 22 | Thu Dec 14, 17:21:52 | crosswalk security | Valid access | Jacobs Elizabeth |
| 23 | Thu Dec 14, 19:18:50 | crosswalk security | Valid access | Jacobs Elizabeth |
| 24 | Thu Dec 14, 19:32:00 | crosswalk security | Valid access | Jacobs Elizabeth |
| 25 | Thu Dec 14, 20:09:00 | crosswalk security | Valid access | Jacobs Elizabeth |
| 26 | Thu Dec 14, 20:46:32 | crosswalk security | Valid access | Jacobs Elizabeth |
| 27 | Thu Dec 14, 20:50:12 | crosswalk security | Valid access | Jacobs Elizabeth |
| 28 | Thu Dec 14, 21:02:55 | crosswalk security | Valid access | Jacobs Elizabeth |
| 29 | Thu Dec 14, 21:11:15 | staff entrance | Valid access | Jacobs Elizabeth |
| 30 | Thu Dec 14, 21:16:08 | Staff Access Loading Dock | Valid access | Jacobs Elizabeth |
| 31 | Thu Dec 14, 21:18:46 | staff entrance | Valid access | Jacobs Elizabeth |
| 32 | Thu Dec 14, 21:26:57 | prep room | Valid access | Jacobs Elizabeth |
| 33 | Thu Dec 14, 22:07:23 | crosswalk security | Valid access | Jacobs Elizabeth |
| 34 | Thu Dec 14, 22:11:05 | crosswalk artwork | Valid access | Jacobs Elizabeth |
| 35 | Thu Dec 14, 22:15:14 | receptionist upstair | Valid access | Jacobs Elizabeth |
| 36 | Thu Dec 14, 22:15:37 | receptionist upstair | Valid access | Jacobs Elizabeth |
| 37 | Thu Dec 14, 22:17:46 | crosswalk artwork | Valid access | Jacobs Elizabeth |
| 38 | Thu Dec 14, 22:18:10 | crosswalk security | Valid access | Jacobs Elizabeth |
| 39 | Thu Dec 14, 22:19:22 | crosswalk security | Valid access | Jacobs Elizabeth |
| 40 | Thu Dec 14, 22:19:46 | crosswalk artwork | Valid access | Jacobs Elizabeth |
| 41 | Thu Dec 14, 22:20:45 | crosswalk security | Valid access | Jacobs Elizabeth |
| 42 | Thu Dec 14, 23:52:14 | crosswalk security | Valid access | Jacobs Elizabeth |
| 43 | Thu Dec 14, 23:52:46 | crosswalk security | Valid access | Jacobs Elizabeth |
| 44 | Thu Dec 14, 23:55:09 | crosswalk security | Valid access | Jacobs Elizabeth |
| 45 | Fri Dec 15, 00:11:47 | Staff Access Loading Dock | Valid access | Jacobs Elizabeth |
| 46 | Sat Dec 16, 07:55:20 | Staff Access Loading Dock | Valid access | Jacobs Elizabeth |
| 47 | Sat Dec 16, 10:29:49 | Staff Access Loading Dock | Valid access | Jacobs Elizabeth |
| 48 | Sat Dec 16, 11:49:39 | Staff Access Loading Dock | Valid access | Jacobs Elizabeth |
| 49 | Sat Dec 16, 11:51:52 | Staff Access Loading Dock | Valid access | Jacobs Elizabeth |
| 50 | Sat Dec 16, 11:52:23 | crosswalk security | Valid access | Jacobs Elizabeth |
| 51 | Sat Dec 16, 12:05:00 | crosswalk security | Valid access | Jacobs Elizabeth |
| 52 | Sat Dec 16, 15:15:05 | crosswalk security | Valid access | Jacobs Elizabeth |
| 53 | Sat Dec 16, 15:42:51 | crosswalk security | Valid access | Jacobs Elizabeth |
| 54 | Sat Dec 16, 17:00:46 | Staff Access Loading Dock | Valid access | Jacobs Elizabeth |
| 55 | Sat Dec 16, 23:52:24 | Staff Access Loading Dock | Valid access | Jacobs Elizabeth |
| 56 | Sun Dec 17, 08:00:44 | Staff Access Loading Dock | Valid access | Jacobs Elizabeth |
| 57 | Sun Dec 17, 08:12:53 | Staff Access Loading Dock | Valid access | Jacobs Elizabeth |
| 58 | Sun Dec 17, 23:39:48 | Staff Access Loading Dock | Valid access | Jacobs Elizabeth |
| 59 | Mon Dec 18, 07:21:00 | Staff Access Loading Dock | Valid access | Jacobs Elizabeth |
| 60 | Mon Dec 18, 08:04:42 | Staff Access Loading Dock | Valid access | Jacobs Elizabeth |
| 61 | Mon Dec 18, 23:45:16 | Staff Access Loading Dock | Valid access | Jacobs Elizabeth |
| 62 | Tue Dec 19, 06:57:03 | Staff Access Loading Dock | Valid access | Jacobs Elizabeth |
| 63 | Tue Dec 19, 06:57:33 | Staff Access Loading Dock | Valid access | Jacobs Elizabeth |
| 64 | Tue Dec 19, 06:58:08 | staff entrance | Valid access | Jacobs Elizabeth |
| 65 | Tue Dec 19, 06:58:27 | staff entrance | Valid access | Jacobs Elizabeth |
| 66 | Tue Dec 19, 06:59:22 | crosswalk security | Valid access | Jacobs Elizabeth |
| 67 | Tue Dec 19, 06:59:38 | crosswalk security | Valid access | Jacobs Elizabeth |
| 68 | Tue Dec 19, 06:59:52 | crosswalk security | Valid access | Jacobs Elizabeth |
| 69 | Tue Dec 19, 07:01:55 | crosswalk security | Valid access | Jacobs Elizabeth |

# MAXxess

## Transactions (Badge Events)

(Details='Jacobs Elizabeth') AND EventTime>={ts'2006-12-08 00:30:16'} AND EventTime<={ts'2007-(

2/24/2007 07:20:01

Allen, Richard E

| Line | EventTime | Location | Event | Details |
|------|-----------|----------|-------|---------|
| 70 | Tue Dec 19, 07:31:05 | crosswalk security | Valid access | Jacobs Elizabeth |
| 71 | Tue Dec 19, 07:31:17 | crosswalk security | Valid access | Jacobs Elizabeth |
| 72 | Tue Dec 19, 07:33:10 | crosswalk security | Valid access | Jacobs Elizabeth |
| 73 | Tue Dec 19, 08:00:36 | Staff Access Loading Dock | Valid access | Jacobs Elizabeth |
| 74 | Tue Dec 19, 23:47:29 | Staff Access Loading Dock | Valid access | Jacobs Elizabeth |
| 75 | Wed Dec 20, 06:57:21 | Staff Access Loading Dock | Valid access | Jacobs Elizabeth |
| 76 | Wed Dec 20, 06:57:48 | Staff Access Loading Dock | Valid access | Jacobs Elizabeth |
| 77 | Wed Dec 20, 06:58:21 | staff entrance | Valid access | Jacobs Elizabeth |
| 78 | Wed Dec 20, 07:03:32 | crosswalk security | Valid access | Jacobs Elizabeth |
| 79 | Wed Dec 20, 07:03:48 | crosswalk security | Valid access | Jacobs Elizabeth |
| 80 | Wed Dec 20, 07:09:00 | crosswalk security | Valid access | Jacobs Elizabeth |
| 81 | Wed Dec 20, 08:01:54 | Staff Access Loading Dock | Valid access | Jacobs Elizabeth |
| 82 | Thu Dec 21, 16:12:59 | Staff Access Loading Dock | Valid access | Jacobs Elizabeth |
| 83 | Thu Dec 21, 16:16:12 | Staff Access Loading Dock | Valid access | Jacobs Elizabeth |
| 84 | Thu Dec 21, 16:23:04 | Staff Access Loading Dock | Valid access | Jacobs Elizabeth |
| 85 | Thu Dec 21, 16:27:36 | staff entrance | Valid access | Jacobs Elizabeth |
| 86 | Thu Dec 21, 16:35:17 | Staff Access Loading Dock | Valid access | Jacobs Elizabeth |
| 87 | Thu Dec 21, 17:25:06 | staff entrance | Valid access | Jacobs Elizabeth |
| 88 | Thu Dec 21, 17:25:39 | staff entrance | Valid access | Jacobs Elizabeth |
| 89 | Thu Dec 21, 17:25:47 | staff entrance | Valid access | Jacobs Elizabeth |
| 90 | Thu Dec 21, 17:26:03 | staff entrance | Valid access | Jacobs Elizabeth |
| 91 | Thu Dec 21, 17:34:08 | crosswalk security | Valid access | Jacobs Elizabeth |
| 92 | Thu Dec 21, 17:37:27 | crosswalk security | Valid access | Jacobs Elizabeth |
| 93 | Thu Dec 21, 17:38:02 | crosswalk security | Valid access | Jacobs Elizabeth |
| 94 | Thu Dec 21, 18:44:49 | crosswalk security | Valid access | Jacobs Elizabeth |
| 95 | Thu Dec 21, 19:13:51 | crosswalk security | Valid access | Jacobs Elizabeth |
| 96 | Thu Dec 21, 19:41:14 | crosswalk security | Valid access | Jacobs Elizabeth |
| 97 | Thu Dec 21, 20:14:51 | crosswalk security | Valid access | Jacobs Elizabeth |
| 98 | Thu Dec 21, 20:26:39 | Staff Access Loading Dock | Valid access | Jacobs Elizabeth |
| 99 | Fri Dec 22, 00:01:24 | Staff Access Loading Dock | Valid access | Jacobs Elizabeth |
| 100 | Sat Dec 23, 23:49:03 | Staff Access Loading Dock | Valid access | Jacobs Elizabeth |
| 101 | Sun Dec 24, 06:53:23 | Staff Access Loading Dock | Valid access | Jacobs Elizabeth |
| 102 | Sun Dec 24, 06:53:55 | Staff Access Loading Dock | Valid access | Jacobs Elizabeth |
| 103 | Sun Dec 24, 06:54:27 | staff entrance | Valid access | Jacobs Elizabeth |
| 104 | Sun Dec 24, 06:54:43 | staff entrance | Valid access | Jacobs Elizabeth |
| 105 | Sun Dec 24, 08:00:23 | crosswalk security | Valid access | Jacobs Elizabeth |
| 106 | Sun Dec 24, 08:00:36 | crosswalk security | Valid access | Jacobs Elizabeth |
| 107 | Sun Dec 24, 08:04:47 | crosswalk security | Valid access | Jacobs Elizabeth |
| 108 | Sun Dec 24, 08:10:54 | Staff Access Loading Dock | Valid access | Jacobs Elizabeth |
| 109 | Sun Dec 24, 08:13:20 | Staff Access Loading Dock | Valid access | Jacobs Elizabeth |
| 110 | Sun Dec 24, 08:14:12 | Staff Access Loading Dock | Valid access | Jacobs Elizabeth |
| 111 | Sun Dec 24, 23:44:20 | Staff Access Loading Dock | Valid access | Jacobs Elizabeth |
| 112 | Mon Dec 25, 06:34:56 | crosswalk artwork | Valid access | Jacobs Elizabeth |
| 113 | Mon Dec 25, 06:36:43 | crosswalk security | Valid access | Jacobs Elizabeth |
| 114 | Mon Dec 25, 07:40:29 | crosswalk security | Valid access | Jacobs Elizabeth |
| 115 | Mon Dec 25, 07:40:54 | crosswalk security | Valid access | Jacobs Elizabeth |
| 116 | Mon Dec 25, 07:47:24 | crosswalk security | Valid access | Jacobs Elizabeth |
| 117 | Mon Dec 25, 08:01:35 | Staff Access Loading Dock | Valid access | Jacobs Elizabeth |
| 118 | Mon Dec 25, 23:50:25 | Staff Access Loading Dock | Valid access | Jacobs Elizabeth |
| 119 | Tue Dec 26, 06:57:38 | Staff Access Loading Dock | Valid access | Jacobs Elizabeth |
| 120 | Tue Dec 26, 06:57:59 | Staff Access Loading Dock | Valid access | Jacobs Elizabeth |
| 121 | Tue Dec 26, 06:58:31 | staff entrance | Valid access | Jacobs Elizabeth |
| 122 | Tue Dec 26, 06:58:49 | staff entrance | Valid access | Jacobs Elizabeth |
| 123 | Tue Dec 26, 08:03:32 | Staff Access Loading Dock | Valid access | Jacobs Elizabeth |
| 124 | Tue Dec 26, 23:44:36 | Staff Access Loading Dock | Valid access | Jacobs Elizabeth |
| 125 | Wed Dec 27, 05:45:23 | prep room | Valid access | Jacobs Elizabeth |
| 126 | Wed Dec 27, 05:51:41 | receptionist upstair | Valid access | Jacobs Elizabeth |
| 127 | Wed Dec 27, 05:51:56 | receptionist upstair | Valid access | Jacobs Elizabeth |
| 128 | Wed Dec 27, 06:07:30 | receptionist upstair | Valid access | Jacobs Elizabeth |
| 129 | Wed Dec 27, 06:16:49 | crosswalk artwork | Valid access | Jacobs Elizabeth |
| 130 | Wed Dec 27, 06:17:08 | crosswalk artwork | Valid access | Jacobs Elizabeth |
| 131 | Wed Dec 27, 06:23:52 | Artwork 1 Rear | Denied access | Jacobs Elizabeth |
| 132 | Wed Dec 27, 06:24:31 | Artwork 1 Rear | Denied access | Jacobs Elizabeth |
| 133 | Wed Dec 27, 06:25:02 | Artwork 1 Rear | Denied access | Jacobs Elizabeth |
| 134 | Wed Dec 27, 06:26:18 | Artwork 1 Rear | Denied access | Jacobs Elizabeth |
| 135 | Wed Dec 27, 06:27:26 | Artwork 1 Rear | Denied access | Jacobs Elizabeth |
| 136 | Wed Dec 27, 06:28:26 | Artwork 1 Rear | Denied access | Jacobs Elizabeth |
| 137 | Wed Dec 27, 06:29:32 | Artwork 1 Rear | Denied access | Jacobs Elizabeth |
| 138 | Wed Dec 27, 06:32:09 | prep room | Valid access | Jacobs Elizabeth |

# MAXxess

## Transactions (Badge Events)

2/24/2007 07:20:01

(Details='Jacobs Elizabeth') AND EventTime>={ts'2006-12-08 00:30:16'} AND EventTime<={ts'2007-   Allen, Richard E

| Line. | EventTime | Location | Event | Details |
|---|---|---|---|---|
| 139 | Wed Dec 27, 06:51:37 | receptionist upstair | Valid access | Jacobs Elizabeth |
| 140 | Wed Dec 27, 06:56:07 | receptionist upstair | Valid access | Jacobs Elizabeth |
| 141 | Wed Dec 27, 08:02:54 | Staff Access Loading Dock | Valid access | Jacobs Elizabeth |
| 142 | Thu Dec 28, 16:16:02 | Staff Access Loading Dock | Valid access | Jacobs Elizabeth |
| 143 | Thu Dec 28, 16:33:04 | staff entrance | Valid access | Jacobs Elizabeth |
| 144 | Thu Dec 28, 16:43:25 | Staff Access Loading Dock | Valid access | Jacobs Elizabeth |
| 145 | Thu Dec 28, 17:19:52 | staff entrance | Valid access | Jacobs Elizabeth |
| 146 | Thu Dec 28, 17:20:28 | staff entrance | Valid access | Jacobs Elizabeth |
| 147 | Thu Dec 28, 17:20:41 | staff entrance | Valid access | Jacobs Elizabeth |
| 148 | Thu Dec 28, 17:21:01 | staff entrance | Valid access | Jacobs Elizabeth |
| 149 | Thu Dec 28, 17:22:07 | Staff Access Loading Dock | Valid access | Jacobs Elizabeth |
| 150 | Thu Dec 28, 17:23:08 | crosswalk security | Valid access | Jacobs Elizabeth |
| 151 | Thu Dec 28, 20:08:43 | receptionist upstair | Valid access | Jacobs Elizabeth |
| 152 | Thu Dec 28, 20:57:56 | crosswalk security | Valid access | Jacobs Elizabeth |
| 153 | Sun Dec 31, 16:20:55 | Staff Access Loading Dock | Valid access | Jacobs Elizabeth |
| 154 | Sun Dec 31, 16:22:59 | crosswalk security | Valid access | Jacobs Elizabeth |
| 155 | Sun Dec 31, 16:27:21 | crosswalk security | Valid access | Jacobs Elizabeth |
| 156 | Sun Dec 31, 16:27:53 | staff entrance | Valid access | Jacobs Elizabeth |
| 157 | Sun Dec 31, 16:36:04 | Staff Access Loading Dock | Valid access | Jacobs Elizabeth |
| 158 | Sun Dec 31, 16:36:53 | crosswalk security | Valid access | Jacobs Elizabeth |
| 159 | Sun Dec 31, 17:01:30 | Staff Access Loading Dock | Valid access | Jacobs Elizabeth |
| 160 | Sun Dec 31, 17:02:59 | Staff Access Loading Dock | Valid access | Jacobs Elizabeth |
| 161 | Mon Jan 01, 07:33:59 | Staff Access Loading Dock | Valid access | Jacobs Elizabeth |
| 162 | Mon Jan 01, 07:34:52 | crosswalk security | Valid access | Jacobs Elizabeth |
| 163 | Mon Jan 01, 07:44:55 | crosswalk security | Valid access | Jacobs Elizabeth |
| 164 | Mon Jan 01, 07:58:57 | Staff Access Loading Dock | Valid access | Jacobs Elizabeth |
| 165 | Mon Jan 01, 23:47:56 | Staff Access Loading Dock | Valid access | Jacobs Elizabeth |
| 166 | Tue Jan 02, 06:58:01 | Staff Access Loading Dock | Valid access | Jacobs Elizabeth |
| 167 | Tue Jan 02, 06:59:13 | staff entrance | Valid access | Jacobs Elizabeth |
| 168 | Tue Jan 02, 07:58:11 | Staff Access Loading Dock | Valid access | Jacobs Elizabeth |
| 169 | Tue Jan 02, 23:46:52 | Staff Access Loading Dock | Valid access | Jacobs Elizabeth |
| 170 | Wed Jan 03, 06:01:43 | crosswalk security | Valid access | Jacobs Elizabeth |
| 171 | Wed Jan 03, 06:07:35 | Artwork 1 Rear | Denied access | Jacobs Elizabeth |
| 172 | Wed Jan 03, 06:08:19 | Artwork 1 Rear | Denied access | Jacobs Elizabeth |
| 173 | Wed Jan 03, 06:16:30 | receptionist upstair | Valid access | Jacobs Elizabeth |
| 174 | Wed Jan 03, 06:16:42 | receptionist upstair | Valid access | Jacobs Elizabeth |
| 175 | Wed Jan 03, 06:24:42 | receptionist upstair | Valid access | Jacobs Elizabeth |
| 176 | Wed Jan 03, 06:34:51 | crosswalk artwork | Valid access | Jacobs Elizabeth |
| 177 | Wed Jan 03, 06:35:22 | crosswalk artwork | Valid access | Jacobs Elizabeth |
| 178 | Wed Jan 03, 06:36:01 | crosswalk security | Valid access | Jacobs Elizabeth |
| 179 | Wed Jan 03, 06:41:36 | prep room | Valid access | Jacobs Elizabeth |
| 180 | Wed Jan 03, 07:08:53 | crosswalk security | Valid access | Jacobs Elizabeth |
| 181 | Wed Jan 03, 07:09:21 | Staff Access Loading Dock | Valid access | Jacobs Elizabeth |
| 182 | Wed Jan 03, 07:10:53 | Staff Access Loading Dock | Valid access | Jacobs Elizabeth |
| 183 | Wed Jan 03, 07:18:05 | crosswalk security | Valid access | Jacobs Elizabeth |
| 184 | Wed Jan 03, 08:20:40 | staff entrance | Valid access | Jacobs Elizabeth |
| 185 | Wed Jan 03, 08:28:44 | Staff Access Loading Dock | Valid access | Jacobs Elizabeth |
| 186 | Wed Jan 03, 10:57:37 | crosswalk security | Valid access | Jacobs Elizabeth |
| 187 | Wed Jan 03, 11:06:04 | Staff Access Loading Dock | Valid access | Jacobs Elizabeth |
| 188 | Wed Jan 03, 12:13:07 | Staff Access Loading Dock | Valid access | Jacobs Elizabeth |
| 189 | Wed Jan 03, 12:20:33 | crosswalk security | Valid access | Jacobs Elizabeth |
| 190 | Wed Jan 03, 12:24:00 | crosswalk security | Valid access | Jacobs Elizabeth |
| 191 | Wed Jan 03, 12:25:05 | crosswalk security | Valid access | Jacobs Elizabeth |
| 192 | Wed Jan 03, 16:56:12 | crosswalk security | Valid access | Jacobs Elizabeth |
| 193 | Wed Jan 03, 16:59:34 | Staff Access Loading Dock | Valid access | Jacobs Elizabeth |
| 194 | Thu Jan 04, 16:14:40 | Staff Access Loading Dock | Valid access | Jacobs Elizabeth |
| 195 | Thu Jan 04, 16:19:29 | staff entrance | Valid access | Jacobs Elizabeth |
| 196 | Thu Jan 04, 16:20:03 | staff entrance | Valid access | Jacobs Elizabeth |
| 197 | Thu Jan 04, 16:29:47 | staff entrance | Valid access | Jacobs Elizabeth |
| 198 | Thu Jan 04, 17:11:53 | Staff Access Loading Dock | Valid access | Jacobs Elizabeth |
| 199 | Thu Jan 04, 17:14:57 | staff entrance | Valid access | Jacobs Elizabeth |
| 200 | Thu Jan 04, 17:15:57 | staff entrance | Valid access | Jacobs Elizabeth |
| 201 | Thu Jan 04, 17:16:08 | staff entrance | Valid access | Jacobs Elizabeth |
| 202 | Thu Jan 04, 17:16:17 | staff entrance | Valid access | Jacobs Elizabeth |
| 203 | Thu Jan 04, 17:16:46 | staff entrance | Valid access | Jacobs Elizabeth |
| 204 | Thu Jan 04, 17:20:21 | crosswalk security | Valid access | Jacobs Elizabeth |
| 205 | Thu Jan 04, 19:03:33 | crosswalk security | Valid access | Jacobs Elizabeth |
| 206 | Thu Jan 04, 19:04:19 | crosswalk security | Valid access | Jacobs Elizabeth |
| 207 | Thu Jan 04, 19:17:59 | crosswalk security | Valid access | Jacobs Elizabeth |

# MAXxess

## Transactions (Badge Events)

(Details='Jacobs Elizabeth') AND EventTime>={ts'2006-12-08 00:30:16'} AND EventTime<={ts'2007-(

Allen, Richard E

| Line | EventTime | Location | Event | Details |
|---|---|---|---|---|
| 208 | Thu Jan 04, 19:32:54 | crosswalk security | Valid access | Jacobs Elizabeth |
| 209 | Thu Jan 04, 23:35:43 | crosswalk security | Valid access | Jacobs Elizabeth |
| 210 | Thu Jan 04, 23:42:09 | crosswalk security | Valid access | Jacobs Elizabeth |
| 211 | Fri Jan 05, 00:01:25 | Staff Access Loading Dock | Valid access | Jacobs Elizabeth |
| 212 | Sat Jan 06, 23:49:23 | Staff Access Loading Dock | Valid access | Jacobs Elizabeth |
| 213 | Sun Jan 07, 00:30:43 | Staff Access Loading Dock | Valid access | Jacobs Elizabeth |
| 214 | Sun Jan 07, 00:30:57 | Staff Access Loading Dock | Valid access | Jacobs Elizabeth |
| 215 | Sun Jan 07, 06:13:05 | prep room | Valid access | Jacobs Elizabeth |
| 216 | Sun Jan 07, 06:44:38 | crosswalk security | Valid access | Jacobs Elizabeth |
| 217 | Sun Jan 07, 06:47:05 | Artwork 1 Rear | Denied access | Jacobs Elizabeth |
| 218 | Sun Jan 07, 06:48:04 | Artwork 1 Rear | Denied access | Jacobs Elizabeth |
| 219 | Sun Jan 07, 07:26:54 | receptionist upstair | Valid access | Jacobs Elizabeth |
| 220 | Sun Jan 07, 08:12:40 | Staff Access Loading Dock | Valid access | Jacobs Elizabeth |
| 221 | Sun Jan 07, 23:48:04 | Staff Access Loading Dock | Valid access | Jacobs Elizabeth |
| 222 | Mon Jan 08, 07:00:10 | Staff Access Loading Dock | Valid access | Jacobs Elizabeth |
| 223 | Mon Jan 08, 07:00:25 | Staff Access Loading Dock | Valid access | Jacobs Elizabeth |
| 224 | Mon Jan 08, 07:00:59 | staff entrance | Valid access | Jacobs Elizabeth |
| 225 | Mon Jan 08, 07:01:16 | staff entrance | Valid access | Jacobs Elizabeth |
| 226 | Mon Jan 08, 08:03:53 | Staff Access Loading Dock | Valid access | Jacobs Elizabeth |
| 227 | Mon Jan 08, 23:43:54 | Staff Access Loading Dock | Valid access | Jacobs Elizabeth |
| 228 | Tue Jan 09, 07:00:11 | Staff Access Loading Dock | Valid access | Jacobs Elizabeth |
| 229 | Tue Jan 09, 07:00:33 | Staff Access Loading Dock | Valid access | Jacobs Elizabeth |
| 230 | Tue Jan 09, 07:01:07 | staff entrance | Valid access | Jacobs Elizabeth |
| 231 | Tue Jan 09, 07:01:26 | staff entrance | Valid access | Jacobs Elizabeth |
| 232 | Tue Jan 09, 08:10:10 | Staff Access Loading Dock | Valid access | Jacobs Elizabeth |
| 233 | Tue Jan 09, 23:51:06 | Staff Access Loading Dock | Valid access | Jacobs Elizabeth |
| 234 | Wed Jan 10, 06:05:00 | prep room | Valid access | Jacobs Elizabeth |
| 235 | Wed Jan 10, 06:16:20 | Artwork 1 Rear | Denied access | Jacobs Elizabeth |
| 236 | Wed Jan 10, 06:17:19 | Artwork 1 Rear | Denied access | Jacobs Elizabeth |
| 237 | Wed Jan 10, 06:25:32 | receptionist upstair | Valid access | Jacobs Elizabeth |
| 238 | Wed Jan 10, 07:57:58 | crosswalk security | Valid access | Jacobs Elizabeth |
| 239 | Wed Jan 10, 08:04:09 | staff entrance | Valid access | Jacobs Elizabeth |
| 240 | Wed Jan 10, 08:12:46 | Staff Access Loading Dock | Valid access | Jacobs Elizabeth |
| 241 | Wed Jan 10, 09:54:37 | Staff Access Loading Dock | Valid access | Jacobs Elizabeth |
| 242 | Wed Jan 10, 09:54:45 | Staff Access Loading Dock | Valid access | Jacobs Elizabeth |
| 243 | Wed Jan 10, 10:56:18 | crosswalk security | Valid access | Jacobs Elizabeth |
| 244 | Wed Jan 10, 10:57:37 | crosswalk security | Valid access | Jacobs Elizabeth |
| 245 | Wed Jan 10, 11:00:41 | crosswalk security | Valid access | Jacobs Elizabeth |
| 246 | Wed Jan 10, 11:05:07 | crosswalk security | Valid access | Jacobs Elizabeth |
| 247 | Wed Jan 10, 11:06:41 | Staff Access Loading Dock | Valid access | Jacobs Elizabeth |
| 248 | Wed Jan 10, 12:23:07 | Staff Access Loading Dock | Valid access | Jacobs Elizabeth |
| 249 | Wed Jan 10, 12:28:22 | crosswalk security | Valid access | Jacobs Elizabeth |
| 250 | Wed Jan 10, 12:28:34 | crosswalk security | Valid access | Jacobs Elizabeth |
| 251 | Wed Jan 10, 17:01:06 | crosswalk security | Valid access | Jacobs Elizabeth |
| 252 | Wed Jan 10, 17:02:36 | Staff Access Loading Dock | Valid access | Jacobs Elizabeth |
| 253 | Thu Jan 11, 16:18:21 | Staff Access Loading Dock | Valid access | Jacobs Elizabeth |
| 254 | Thu Jan 11, 17:29:17 | staff entrance | Valid access | Jacobs Elizabeth |
| 255 | Thu Jan 11, 17:29:49 | staff entrance | Valid access | Jacobs Elizabeth |
| 256 | Thu Jan 11, 17:33:07 | Staff Access Loading Dock | Valid access | Jacobs Elizabeth |
| 257 | Thu Jan 11, 17:33:26 | Staff Access Loading Dock | Valid access | Jacobs Elizabeth |
| 258 | Thu Jan 11, 17:34:41 | crosswalk security | Valid access | Jacobs Elizabeth |
| 259 | Thu Jan 11, 17:51:24 | crosswalk security | Valid access | Jacobs Elizabeth |
| 260 | Thu Jan 11, 17:51:48 | Staff Access Loading Dock | Valid access | Jacobs Elizabeth |
| 261 | Thu Jan 11, 17:52:23 | crosswalk security | Valid access | Jacobs Elizabeth |
| 262 | Thu Jan 11, 17:54:49 | crosswalk security | Valid access | Jacobs Elizabeth |
| 263 | Thu Jan 11, 20:03:04 | crosswalk security | Valid access | Jacobs Elizabeth |
| 264 | Thu Jan 11, 20:34:49 | crosswalk security | Valid access | Jacobs Elizabeth |
| 265 | Thu Jan 11, 20:57:02 | crosswalk security | Valid access | Jacobs Elizabeth |
| 266 | Fri Jan 12, 00:03:32 | Staff Access Loading Dock | Valid access | Jacobs Elizabeth |
| 267 | Sun Jan 14, 23:50:34 | Staff Access Loading Dock | Valid access | Jacobs Elizabeth |
| 268 | Mon Jan 15, 08:10:41 | Staff Access Loading Dock | Valid access | Jacobs Elizabeth |
| 269 | Tue Jan 16, 07:01:04 | Staff Access Loading Dock | Valid access | Jacobs Elizabeth |
| 270 | Tue Jan 16, 07:01:15 | Staff Access Loading Dock | Valid access | Jacobs Elizabeth |
| 271 | Tue Jan 16, 07:01:46 | staff entrance | Valid access | Jacobs Elizabeth |
| 272 | Tue Jan 16, 07:01:57 | staff entrance | Valid access | Jacobs Elizabeth |
| 273 | Tue Jan 16, 07:02:31 | crosswalk security | Valid access | Jacobs Elizabeth |
| 274 | Tue Jan 16, 08:00:42 | Staff Access Loading Dock | Valid access | Jacobs Elizabeth |
| 275 | Tue Jan 16, 17:48:21 | Staff Access Loading Dock | Valid access | Jacobs Elizabeth |
| 276 | Tue Jan 16, 17:56:22 | Staff Access Loading Dock | Valid access | Jacobs Elizabeth |

| Line | EventTime | Location | Event | Details |
|------|-----------|----------|-------|---------|
| 277 | Tue Jan 16, 17:56:40 | Staff Access Loading Dock | Valid access | Jacobs Elizabeth |
| 278 | Tue Jan 16, 17:57:07 | staff entrance | Valid access | Jacobs Elizabeth |
| 279 | Tue Jan 16, 17:57:23 | staff entrance | Valid access | Jacobs Elizabeth |
| 280 | Tue Jan 16, 17:57:59 | crosswalk security | Valid access | Jacobs Elizabeth |
| 281 | Tue Jan 16, 17:59:13 | Artwork 1 Rear | Denied access | Jacobs Elizabeth |
| 282 | Tue Jan 16, 18:01:01 | crosswalk security | Valid access | Jacobs Elizabeth |
| 283 | Tue Jan 16, 18:02:01 | crosswalk security | Valid access | Jacobs Elizabeth |
| 284 | Tue Jan 16, 18:02:58 | Artwork 1 Rear | Denied access | Jacobs Elizabeth |
| 285 | Tue Jan 16, 18:03:03 | Artwork 1 Rear | Denied access | Jacobs Elizabeth |
| 286 | Tue Jan 16, 18:08:07 | crosswalk security | Valid access | Jacobs Elizabeth |
| 287 | Wed Jan 17, 06:05:19 | receptionist upstair | Valid access | Jacobs Elizabeth |
| 288 | Wed Jan 17, 06:05:29 | receptionist upstair | Valid access | Jacobs Elizabeth |
| 289 | Wed Jan 17, 06:25:35 | crosswalk artwork | Valid access | Jacobs Elizabeth |
| 290 | Wed Jan 17, 06:32:55 | Artwork 1 Rear | Denied access | Jacobs Elizabeth |
| 291 | Wed Jan 17, 06:33:05 | Artwork 1 Rear | Denied access | Jacobs Elizabeth |
| 292 | Wed Jan 17, 06:34:30 | Artwork 1 Rear | Denied access | Jacobs Elizabeth |
| 293 | Wed Jan 17, 06:35:06 | Artwork 1 Rear | Denied access | Jacobs Elizabeth |
| 294 | Wed Jan 17, 06:44:12 | crosswalk artwork | Valid access | Jacobs Elizabeth |
| 295 | Wed Jan 17, 06:49:10 | crosswalk security | Valid access | Jacobs Elizabeth |
| 296 | Wed Jan 17, 06:52:32 | crosswalk security | Valid access | Jacobs Elizabeth |
| 297 | Wed Jan 17, 08:05:52 | Staff Access Loading Dock | Valid access | Jacobs Elizabeth |
| 298 | Thu Jan 18, 16:14:29 | Staff Access Loading Dock | Valid access | Jacobs Elizabeth |
| 299 | Thu Jan 18, 16:22:27 | staff entrance | Valid access | Jacobs Elizabeth |
| 300 | Thu Jan 18, 16:31:24 | Staff Access Loading Dock | Valid access | Jacobs Elizabeth |
| 301 | Thu Jan 18, 17:35:27 | staff entrance | Valid access | Jacobs Elizabeth |
| 302 | Thu Jan 18, 19:04:58 | crosswalk security | Valid access | Jacobs Elizabeth |
| 303 | Thu Jan 18, 19:12:45 | crosswalk security | Valid access | Jacobs Elizabeth |
| 304 | Thu Jan 18, 20:32:06 | crosswalk security | Valid access | Jacobs Elizabeth |
| 305 | Fri Jan 19, 00:02:41 | Staff Access Loading Dock | Valid access | Jacobs Elizabeth |
| 306 | Sat Jan 20, 23:49:21 | Staff Access Loading Dock | Valid access | Jacobs Elizabeth |
| 307 | Sun Jan 21, 08:05:26 | Staff Access Loading Dock | Valid access | Jacobs Elizabeth |
| 308 | Sun Jan 21, 23:52:19 | Staff Access Loading Dock | Valid access | Jacobs Elizabeth |
| 309 | Mon Jan 22, 05:18:26 | crosswalk security | Valid access | Jacobs Elizabeth |
| 310 | Mon Jan 22, 05:18:49 | crosswalk artwork | Valid access | Jacobs Elizabeth |
| 311 | Mon Jan 22, 05:23:41 | crosswalk artwork | Valid access | Jacobs Elizabeth |
| 312 | Mon Jan 22, 05:24:05 | crosswalk security | Valid access | Jacobs Elizabeth |
| 313 | Mon Jan 22, 08:06:14 | Staff Access Loading Dock | Valid access | Jacobs Elizabeth |
| 314 | Mon Jan 22, 23:46:51 | Staff Access Loading Dock | Valid access | Jacobs Elizabeth |
| 315 | Tue Jan 23, 05:55:51 | crosswalk security | Valid access | Jacobs Elizabeth |
| 316 | Tue Jan 23, 06:04:39 | crosswalk artwork | Valid access | Jacobs Elizabeth |
| 317 | Tue Jan 23, 06:41:56 | prep room | Valid access | Jacobs Elizabeth |
| 318 | Tue Jan 23, 06:56:16 | Staff Access Loading Dock | Valid access | Jacobs Elizabeth |
| 319 | Tue Jan 23, 06:56:51 | Staff Access Loading Dock | Valid access | Jacobs Elizabeth |
| 320 | Tue Jan 23, 06:57:22 | staff entrance | Valid access | Jacobs Elizabeth |
| 321 | Tue Jan 23, 07:57:46 | Staff Access Loading Dock | Valid access | Jacobs Elizabeth |
| 322 | Tue Jan 23, 23:36:35 | Staff Access Loading Dock | Valid access | Jacobs Elizabeth |
| 323 | Wed Jan 24, 06:57:24 | Staff Access Loading Dock | Valid access | Jacobs Elizabeth |
| 324 | Wed Jan 24, 06:58:07 | staff entrance | Valid access | Jacobs Elizabeth |
| 325 | Wed Jan 24, 06:58:19 | staff entrance | Valid access | Jacobs Elizabeth |
| 326 | Wed Jan 24, 08:04:04 | staff entrance | Valid access | Jacobs Elizabeth |
| 327 | Wed Jan 24, 08:12:42 | Staff Access Loading Dock | Valid access | Jacobs Elizabeth |
| 328 | Wed Jan 24, 10:13:21 | crosswalk security | Valid access | Jacobs Elizabeth |
| 329 | Wed Jan 24, 10:57:34 | crosswalk security | Valid access | Jacobs Elizabeth |
| 330 | Wed Jan 24, 10:58:12 | crosswalk security | Valid access | Jacobs Elizabeth |
| 331 | Wed Jan 24, 11:00:48 | Staff Access Loading Dock | Valid access | Jacobs Elizabeth |
| 332 | Wed Jan 24, 12:05:55 | Staff Access Loading Dock | Valid access | Jacobs Elizabeth |
| 333 | Wed Jan 24, 12:20:44 | crosswalk security | Valid access | Jacobs Elizabeth |
| 334 | Wed Jan 24, 12:23:42 | crosswalk security | Valid access | Jacobs Elizabeth |
| 335 | Wed Jan 24, 16:58:06 | crosswalk security | Valid access | Jacobs Elizabeth |
| 336 | Wed Jan 24, 17:00:07 | Staff Access Loading Dock | Valid access | Jacobs Elizabeth |
| 337 | Thu Jan 25, 16:28:08 | Staff Access Loading Dock | Valid access | Jacobs Elizabeth |
| 338 | Thu Jan 25, 16:47:16 | crosswalk security | Valid access | Jacobs Elizabeth |
| 339 | Thu Jan 25, 16:58:40 | crosswalk security | Valid access | Jacobs Elizabeth |
| 340 | Thu Jan 25, 17:15:35 | staff entrance | Valid access | Jacobs Elizabeth |
| 341 | Thu Jan 25, 17:16:43 | Staff Access Loading Dock | Valid access | Jacobs Elizabeth |
| 342 | Thu Jan 25, 17:17:19 | Staff Access Loading Dock | Valid access | Jacobs Elizabeth |
| 343 | Thu Jan 25, 17:17:29 | Staff Access Loading Dock | Valid access | Jacobs Elizabeth |
| 344 | Thu Jan 25, 18:37:00 | crosswalk security | Valid access | Jacobs Elizabeth |
| 345 | Thu Jan 25, 18:39:13 | crosswalk security | Valid access | Jacobs Elizabeth |

# MAXxess

## Transactions (Badge Events)

(Details='Jacobs Elizabeth') AND EventTime>={ts'2006-12-08 00:30:16'} AND EventTime<={ts'2007-(   Allen, Richard E

| Line | EventTime | Location | Event | Details |
|------|-----------|----------|-------|---------|
| 346 | Thu Jan 25, 18:40:48 | crosswalk security | Valid access | Jacobs Elizabeth |
| 347 | Thu Jan 25, 18:41:54 | crosswalk security | Valid access | Jacobs Elizabeth |
| 348 | Thu Jan 25, 20:02:20 | crosswalk security | Valid access | Jacobs Elizabeth |
| 349 | Thu Jan 25, 23:35:50 | Staff Access Loading Dock | Valid access | Jacobs Elizabeth |
| 350 | Fri Jan 26, 00:05:10 | Staff Access Loading Dock | Valid access | Jacobs Elizabeth |
| 351 | Mon Jan 29, 23:37:21 | Staff Access Loading Dock | Valid access | Jacobs Elizabeth |
| 352 | Mon Jan 29, 23:40:11 | Staff Access Loading Dock | Valid access | Jacobs Elizabeth |
| 353 | Mon Jan 29, 23:41:30 | Staff Access Loading Dock | Valid access | Jacobs Elizabeth |
| 354 | Mon Jan 29, 23:41:36 | Staff Access Loading Dock | Valid access | Jacobs Elizabeth |
| 355 | Tue Jan 30, 06:54:12 | staff entrance | Valid access | Jacobs Elizabeth |
| 356 | Tue Jan 30, 06:55:00 | Staff Access Loading Dock | Valid access | Jacobs Elizabeth |
| 357 | Tue Jan 30, 06:55:20 | Staff Access Loading Dock | Valid access | Jacobs Elizabeth |
| 358 | Tue Jan 30, 07:00:24 | crosswalk security | Valid access | Jacobs Elizabeth |
| 359 | Tue Jan 30, 07:09:26 | crosswalk security | Valid access | Jacobs Elizabeth |
| 360 | Tue Jan 30, 08:07:06 | Staff Access Loading Dock | Valid access | Jacobs Elizabeth |
| 361 | Wed Jan 31, 05:26:35 | receptionist upstair | Valid access | Jacobs Elizabeth |
| 362 | Wed Jan 31, 05:28:23 | receptionist upstair | Valid access | Jacobs Elizabeth |
| 363 | Wed Jan 31, 06:07:33 | prep room | Valid access | Jacobs Elizabeth |
| 364 | Wed Jan 31, 06:42:42 | crosswalk security | Valid access | Jacobs Elizabeth |
| 365 | Wed Jan 31, 06:48:03 | crosswalk security | Valid access | Jacobs Elizabeth |
| 366 | Wed Jan 31, 07:57:50 | crosswalk security | Valid access | Jacobs Elizabeth |
| 367 | Wed Jan 31, 10:26:07 | crosswalk security | Valid access | Jacobs Elizabeth |
| 368 | Wed Jan 31, 10:26:21 | crosswalk security | Valid access | Jacobs Elizabeth |
| 369 | Wed Jan 31, 10:26:35 | crosswalk security | Valid access | Jacobs Elizabeth |
| 370 | Wed Jan 31, 10:33:07 | Staff Access Loading Dock | Valid access | Jacobs Elizabeth |
| 371 | Wed Jan 31, 11:32:44 | Staff Access Loading Dock | Valid access | Jacobs Elizabeth |
| 372 | Wed Jan 31, 11:51:58 | crosswalk security | Valid access | Jacobs Elizabeth |
| 373 | Wed Jan 31, 16:30:17 | crosswalk security | Valid access | Jacobs Elizabeth |
| 374 | Wed Jan 31, 16:59:23 | Staff Access Loading Dock | Valid access | Jacobs Elizabeth |
| 375 | Thu Feb 01, 16:22:26 | Staff Access Loading Dock | Valid access | Jacobs Elizabeth |
| 376 | Thu Feb 01, 16:28:17 | crosswalk security | Valid access | Jacobs Elizabeth |
| 377 | Thu Feb 01, 20:06:03 | crosswalk security | Valid access | Jacobs Elizabeth |
| 378 | Thu Feb 01, 20:11:03 | crosswalk security | Valid access | Jacobs Elizabeth |
| 379 | Thu Feb 01, 21:01:12 | crosswalk security | Valid access | Jacobs Elizabeth |
| 380 | Fri Feb 02, 00:09:17 | Staff Access Loading Dock | Valid access | Jacobs Elizabeth |
| 381 | Sat Feb 03, 23:43:23 | Staff Access Loading Dock | Valid access | Jacobs Elizabeth |
| 382 | Sun Feb 04, 06:44:41 | Staff Access Loading Dock | Valid access | Jacobs Elizabeth |
| 383 | Sun Feb 04, 07:00:11 | Staff Access Loading Dock | Valid access | Jacobs Elizabeth |
| 384 | Sun Feb 04, 07:00:26 | Staff Access Loading Dock | Valid access | Jacobs Elizabeth |
| 385 | Sun Feb 04, 07:00:58 | staff entrance | Valid access | Jacobs Elizabeth |
| 386 | Sun Feb 04, 07:01:19 | staff entrance | Valid access | Jacobs Elizabeth |
| 387 | Sun Feb 04, 07:08:45 | crosswalk security | Valid access | Jacobs Elizabeth |
| 388 | Sun Feb 04, 07:12:51 | crosswalk security | Valid access | Jacobs Elizabeth |
| 389 | Sun Feb 04, 07:51:13 | crosswalk security | Valid access | Jacobs Elizabeth |
| 390 | Sun Feb 04, 08:05:18 | Staff Access Loading Dock | Valid access | Jacobs Elizabeth |
| 391 | Sun Feb 04, 23:43:09 | Staff Access Loading Dock | Valid access | Jacobs Elizabeth |
| 392 | Sun Feb 04, 23:45:31 | Staff Access Loading Dock | Valid access | Jacobs Elizabeth |
| 393 | Sun Feb 04, 23:46:43 | Staff Access Loading Dock | Valid access | Jacobs Elizabeth |
| 394 | Mon Feb 05, 00:23:59 | Staff Access Loading Dock | Valid access | Jacobs Elizabeth |
| 395 | Mon Feb 05, 06:56:14 | Staff Access Loading Dock | Valid access | Jacobs Elizabeth |
| 396 | Mon Feb 05, 06:56:28 | Staff Access Loading Dock | Valid access | Jacobs Elizabeth |
| 397 | Mon Feb 05, 06:56:58 | staff entrance | Valid access | Jacobs Elizabeth |
| 398 | Mon Feb 05, 06:57:09 | staff entrance | Valid access | Jacobs Elizabeth |
| 399 | Mon Feb 05, 07:07:43 | crosswalk security | Valid access | Jacobs Elizabeth |
| 400 | Mon Feb 05, 07:13:54 | crosswalk security | Valid access | Jacobs Elizabeth |
| 401 | Mon Feb 05, 08:03:46 | Staff Access Loading Dock | Valid access | Jacobs Elizabeth |
| 402 | Mon Feb 05, 23:37:20 | Staff Access Loading Dock | Valid access | Jacobs Elizabeth |
| 403 | Tue Feb 06, 05:57:49 | crosswalk security | Valid access | Jacobs Elizabeth |
| 404 | Tue Feb 06, 06:23:39 | prep room | Valid access | Jacobs Elizabeth |
| 405 | Tue Feb 06, 08:00:30 | crosswalk security | Valid access | Jacobs Elizabeth |
| 406 | Tue Feb 06, 08:03:45 | Staff Access Loading Dock | Valid access | Jacobs Elizabeth |
| 407 | Wed Feb 07, 05:58:29 | prep room | Valid access | Jacobs Elizabeth |
| 408 | Wed Feb 07, 06:01:04 | crosswalk security | Valid access | Jacobs Elizabeth |
| 409 | Wed Feb 07, 06:20:42 | receptionist upstair | Valid access | Jacobs Elizabeth |
| 410 | Wed Feb 07, 06:28:32 | crosswalk artwork | Valid access | Jacobs Elizabeth |
| 411 | Wed Feb 07, 06:29:01 | crosswalk security | Valid access | Jacobs Elizabeth |
| 412 | Wed Feb 07, 06:32:56 | crosswalk security | Valid access | Jacobs Elizabeth |
| 413 | Wed Feb 07, 06:36:23 | crosswalk security | Valid access | Jacobs Elizabeth |
| 414 | Wed Feb 07, 06:51:00 | crosswalk security | Valid access | Jacobs Elizabeth |

# MAXxess

## Transactions (Badge Events)

(Details='Jacobs Elizabeth') AND EventTime>={ts'2006-12-08 00:30:16'} AND EventTime<={ts'2007-(

2/24/2007 07:20:01

Allen, Richard E

| Line | EventTime | Location | Event | Details |
|------|-----------|----------|-------|---------|
| 415 | Wed Feb 07, 06:51:29 | crosswalk artwork | Valid access | Jacobs Elizabeth |
| 416 | Wed Feb 07, 08:05:22 | crosswalk security | Valid access | Jacobs Elizabeth |
| 417 | Wed Feb 07, 08:11:27 | crosswalk security | Valid access | Jacobs Elizabeth |
| 418 | Wed Feb 07, 08:22:54 | crosswalk security | Valid access | Jacobs Elizabeth |
| 419 | Wed Feb 07, 08:23:28 | staff entrance | Valid access | Jacobs Elizabeth |
| 420 | Wed Feb 07, 08:32:31 | Staff Access Loading Dock | Valid access | Jacobs Elizabeth |
| 421 | Wed Feb 07, 09:03:08 | staff entrance | Valid access | Jacobs Elizabeth |
| 422 | Wed Feb 07, 09:04:34 | staff entrance | Valid access | Jacobs Elizabeth |
| 423 | Wed Feb 07, 09:07:00 | crosswalk security | Valid access | Jacobs Elizabeth |
| 424 | Wed Feb 07, 09:11:12 | crosswalk security | Valid access | Jacobs Elizabeth |
| 425 | Wed Feb 07, 09:11:46 | crosswalk security | Valid access | Jacobs Elizabeth |
| 426 | Wed Feb 07, 09:14:14 | crosswalk security | Valid access | Jacobs Elizabeth |
| 427 | Wed Feb 07, 09:15:42 | crosswalk security | Valid access | Jacobs Elizabeth |
| 428 | Wed Feb 07, 09:40:27 | crosswalk security | Valid access | Jacobs Elizabeth |
| 429 | Wed Feb 07, 12:30:40 | crosswalk security | Valid access | Jacobs Elizabeth |
| 430 | Wed Feb 07, 12:33:32 | Staff Access Loading Dock | Valid access | Jacobs Elizabeth |
| 431 | Wed Feb 07, 13:37:30 | Staff Access Loading Dock | Valid access | Jacobs Elizabeth |
| 432 | Wed Feb 07, 14:26:27 | crosswalk security | Valid access | Jacobs Elizabeth |
| 433 | Wed Feb 07, 15:06:44 | crosswalk security | Valid access | Jacobs Elizabeth |
| 434 | Wed Feb 07, 15:22:06 | crosswalk security | Valid access | Jacobs Elizabeth |
| 435 | Wed Feb 07, 15:23:52 | crosswalk security | Valid access | Jacobs Elizabeth |
| 436 | Wed Feb 07, 15:26:18 | Staff Access Loading Dock | Valid access | Jacobs Elizabeth |
| 437 | Wed Feb 07, 15:26:23 | Staff Access Loading Dock | Valid access | Jacobs Elizabeth |
| 438 | Wed Feb 07, 15:27:01 | crosswalk security | Valid access | Jacobs Elizabeth |
| 439 | Wed Feb 07, 15:43:18 | Staff Access Loading Dock | Valid access | Jacobs Elizabeth |
| 440 | Thu Feb 08, 16:19:38 | Staff Access Loading Dock | Valid access | Jacobs Elizabeth |
| 441 | Thu Feb 08, 17:09:38 | Staff Access Loading Dock | Valid access | Jacobs Elizabeth |
| 442 | Thu Feb 08, 17:10:09 | crosswalk security | Valid access | Jacobs Elizabeth |
| 443 | Thu Feb 08, 17:25:39 | Staff Access Loading Dock | Valid access | Jacobs Elizabeth |
| 444 | Thu Feb 08, 17:26:22 | staff entrance | Valid access | Jacobs Elizabeth |
| 445 | Thu Feb 08, 17:30:01 | crosswalk security | Valid access | Jacobs Elizabeth |
| 446 | Thu Feb 08, 19:28:22 | crosswalk security | Valid access | Jacobs Elizabeth |
| 447 | Thu Feb 08, 20:20:35 | crosswalk security | Valid access | Jacobs Elizabeth |
| 448 | Thu Feb 08, 20:21:01 | crosswalk security | Valid access | Jacobs Elizabeth |
| 449 | Thu Feb 08, 20:26:09 | crosswalk security | Valid access | Jacobs Elizabeth |
| 450 | Thu Feb 08, 20:26:52 | prep room | Valid access | Jacobs Elizabeth |
| 451 | Thu Feb 08, 20:27:31 | prep room | Valid access | Jacobs Elizabeth |
| 452 | Sat Feb 10, 23:49:44 | Staff Access Loading Dock | Valid access | Jacobs Elizabeth |
| 453 | Sun Feb 11, 06:14:14 | prep room | Valid access | Jacobs Elizabeth |
| 454 | Sun Feb 11, 06:15:44 | prep room | Valid access | Jacobs Elizabeth |
| 455 | Sun Feb 11, 06:16:44 | prep room | Valid access | Jacobs Elizabeth |
| 456 | Sun Feb 11, 06:44:03 | receptionist upstair | Valid access | Jacobs Elizabeth |
| 457 | Sun Feb 11, 06:50:38 | crosswalk security | Valid access | Jacobs Elizabeth |
| 458 | Sun Feb 11, 06:57:04 | prep room | Valid access | Jacobs Elizabeth |
| 459 | Sun Feb 11, 08:03:04 | crosswalk security | Valid access | Jacobs Elizabeth |
| 460 | Sun Feb 11, 08:08:15 | Staff Access Loading Dock | Valid access | Jacobs Elizabeth |
| 461 | Sun Feb 11, 23:49:51 | Staff Access Loading Dock | Valid access | Jacobs Elizabeth |
| 462 | Mon Feb 12, 07:13:53 | crosswalk security | Valid access | Jacobs Elizabeth |
| 463 | Mon Feb 12, 07:18:20 | crosswalk security | Valid access | Jacobs Elizabeth |
| 464 | Mon Feb 12, 08:06:56 | Staff Access Loading Dock | Valid access | Jacobs Elizabeth |
| 465 | Mon Feb 12, 23:43:26 | Staff Access Loading Dock | Valid access | Jacobs Elizabeth |
| 466 | Mon Feb 12, 23:56:47 | Staff Access Loading Dock | Valid access | Jacobs Elizabeth |
| 467 | Tue Feb 13, 00:00:28 | Staff Access Loading Dock | Valid access | Jacobs Elizabeth |
| 468 | Tue Feb 13, 00:07:24 | Staff Access Loading Dock | Valid access | Jacobs Elizabeth |
| 469 | Tue Feb 13, 00:21:57 | Staff Access Loading Dock | Valid access | Jacobs Elizabeth |
| 470 | Tue Feb 13, 03:18:04 | crosswalk security | Valid access | Jacobs Elizabeth |
| 471 | Tue Feb 13, 06:52:01 | Staff Access Loading Dock | Valid access | Jacobs Elizabeth |
| 472 | Tue Feb 13, 06:52:14 | Staff Access Loading Dock | Valid access | Jacobs Elizabeth |
| 473 | Tue Feb 13, 06:52:44 | staff entrance | Valid access | Jacobs Elizabeth |
| 474 | Tue Feb 13, 07:59:40 | Staff Access Loading Dock | Valid access | Jacobs Elizabeth |
| 475 | Tue Feb 13, 23:25:25 | Staff Access Loading Dock | Valid access | Jacobs Elizabeth |
| 476 | Wed Feb 14, 05:56:09 | prep room | Valid access | Jacobs Elizabeth |
| 477 | Wed Feb 14, 05:57:04 | vault | Denied access | Jacobs Elizabeth |
| 478 | Wed Feb 14, 05:58:59 | crosswalk security | Valid access | Jacobs Elizabeth |
| 479 | Wed Feb 14, 06:18:12 | receptionist upstair | Valid access | Jacobs Elizabeth |
| 480 | Wed Feb 14, 06:18:35 | receptionist upstair | Valid access | Jacobs Elizabeth |
| 481 | Wed Feb 14, 06:27:07 | crosswalk security | Valid access | Jacobs Elizabeth |
| 482 | Wed Feb 14, 06:27:31 | crosswalk artwork | Valid access | Jacobs Elizabeth |
| 483 | Wed Feb 14, 08:11:00 | Staff Access Loading Dock | Valid access | Jacobs Elizabeth |

# MAXxess

## Transactions (Badge Events)

(Details='Jacobs Elizabeth') AND EventTime>={ts'2006-12-08 00:30:16'} AND EventTime<={ts'2007-

2/24/2007 07:20:01

Allen, Richard E

| Line | EventTime | Location | Event | Details |
|------|-----------|----------|-------|---------|
| 484 | Thu Feb 15, 16:24:48 | Staff Access Loading Dock | Valid access | Jacobs Elizabeth |
| 485 | Thu Feb 15, 17:04:52 | staff entrance | Valid access | Jacobs Elizabeth |
| 486 | Thu Feb 15, 17:20:46 | Staff Access Loading Dock | Valid access | Jacobs Elizabeth |
| 487 | Thu Feb 15, 18:46:56 | crosswalk security | Valid access | Jacobs Elizabeth |
| 488 | Thu Feb 15, 19:22:41 | crosswalk security | Valid access | Jacobs Elizabeth |
| 489 | Thu Feb 15, 21:00:23 | crosswalk artwork | Valid access | Jacobs Elizabeth |
| 490 | Thu Feb 15, 21:00:57 | crosswalk security | Valid access | Jacobs Elizabeth |
| 491 | Thu Feb 15, 23:51:50 | Staff Access Loading Dock | Valid access | Jacobs Elizabeth |
| 492 | Thu Feb 15, 23:52:29 | Staff Access Loading Dock | Valid access | Jacobs Elizabeth |
| 493 | Thu Feb 15, 23:53:50 | Staff Access Loading Dock | Valid access | Jacobs Elizabeth |
| 494 | Fri Feb 16, 00:00:05 | Staff Access Loading Dock | Valid access | Jacobs Elizabeth |
| 495 | Sun Feb 18, 23:41:31 | Staff Access Loading Dock | Valid access | Jacobs Elizabeth |
| 496 | Mon Feb 19, 08:04:01 | Staff Access Loading Dock | Valid access | Jacobs Elizabeth |
| 497 | Mon Feb 19, 23:48:08 | Staff Access Loading Dock | Valid access | Jacobs Elizabeth |
| 498 | Tue Feb 20, 03:54:30 | crosswalk security | Valid access | Jacobs Elizabeth |
| 499 | Tue Feb 20, 04:16:08 | crosswalk security | Valid access | Jacobs Elizabeth |
| 500 | Tue Feb 20, 06:55:54 | Staff Access Loading Dock | Valid access | Jacobs Elizabeth |
| 501 | Tue Feb 20, 06:56:42 | staff entrance | Valid access | Jacobs Elizabeth |
| 502 | Tue Feb 20, 07:10:50 | crosswalk security | Valid access | Jacobs Elizabeth |
| 503 | Tue Feb 20, 07:15:23 | crosswalk security | Valid access | Jacobs Elizabeth |
| 504 | Tue Feb 20, 08:03:01 | Staff Access Loading Dock | Valid access | Jacobs Elizabeth |
| 505 | Tue Feb 20, 23:44:03 | Staff Access Loading Dock | Valid access | Jacobs Elizabeth |
| 506 | Wed Feb 21, 06:00:28 | prep room | Valid access | Jacobs Elizabeth |
| 507 | Wed Feb 21, 06:09:54 | receptionist upstair | Valid access | Jacobs Elizabeth |
| 508 | Wed Feb 21, 06:10:07 | receptionist upstair | Valid access | Jacobs Elizabeth |
| 509 | Wed Feb 21, 06:10:17 | receptionist upstair | Valid access | Jacobs Elizabeth |
| 510 | Wed Feb 21, 06:10:30 | receptionist upstair | Valid access | Jacobs Elizabeth |
| 511 | Wed Feb 21, 06:10:41 | receptionist upstair | Valid access | Jacobs Elizabeth |
| 512 | Wed Feb 21, 06:11:04 | receptionist upstair | Valid access | Jacobs Elizabeth |
| 513 | Wed Feb 21, 06:11:31 | receptionist upstair | Valid access | Jacobs Elizabeth |
| 514 | Wed Feb 21, 06:12:32 | receptionist upstair | Valid access | Jacobs Elizabeth |
| 515 | Wed Feb 21, 06:12:54 | receptionist upstair | Valid access | Jacobs Elizabeth |
| 516 | Wed Feb 21, 06:13:45 | receptionist upstair | Valid access | Jacobs Elizabeth |
| 517 | Wed Feb 21, 06:13:58 | receptionist upstair | Valid access | Jacobs Elizabeth |
| 518 | Wed Feb 21, 06:14:30 | receptionist upstair | Valid access | Jacobs Elizabeth |
| 519 | Wed Feb 21, 06:14:45 | receptionist upstair | Valid access | Jacobs Elizabeth |
| 520 | Wed Feb 21, 06:16:54 | receptionist upstair | Valid access | Jacobs Elizabeth |
| 521 | Wed Feb 21, 08:01:20 | crosswalk security | Valid access | Jacobs Elizabeth |
| 522 | Wed Feb 21, 08:04:50 | Staff Access Loading Dock | Valid access | Jacobs Elizabeth |
| 523 | Thu Feb 22, 16:21:23 | Staff Access Loading Dock | Valid access | Jacobs Elizabeth |
| 524 | Thu Feb 22, 16:23:15 | crosswalk security | Valid access | Jacobs Elizabeth |
| 525 | Thu Feb 22, 16:27:59 | crosswalk security | Valid access | Jacobs Elizabeth |
| 526 | Thu Feb 22, 16:40:50 | crosswalk security | Valid access | Jacobs Elizabeth |
| 527 | Thu Feb 22, 16:44:06 | crosswalk security | Valid access | Jacobs Elizabeth |
| 528 | Thu Feb 22, 17:16:07 | staff entrance | Valid access | Jacobs Elizabeth |
| 529 | Thu Feb 22, 17:17:00 | Staff Access Loading Dock | Valid access | Jacobs Elizabeth |
| 530 | Thu Feb 22, 17:31:51 | crosswalk security | Valid access | Jacobs Elizabeth |
| 531 | Thu Feb 22, 17:43:05 | Staff Access Loading Dock | Valid access | Jacobs Elizabeth |
| 532 | Thu Feb 22, 17:45:31 | crosswalk security | Valid access | Jacobs Elizabeth |
| 533 | Thu Feb 22, 18:01:08 | crosswalk security | Valid access | Jacobs Elizabeth |
| 534 | Thu Feb 22, 18:01:24 | crosswalk security | Valid access | Jacobs Elizabeth |
| 535 | Thu Feb 22, 18:03:06 | crosswalk security | Valid access | Jacobs Elizabeth |
| 536 | Thu Feb 22, 18:03:38 | Staff Access Loading Dock | Valid access | Jacobs Elizabeth |
| 537 | Thu Feb 22, 18:31:35 | crosswalk security | Valid access | Jacobs Elizabeth |
| 538 | Thu Feb 22, 19:08:27 | crosswalk security | Valid access | Jacobs Elizabeth |
| 539 | Thu Feb 22, 19:33:12 | crosswalk security | Valid access | Jacobs Elizabeth |
| 540 | Thu Feb 22, 20:15:36 | crosswalk security | Valid access | Jacobs Elizabeth |
| 541 | Thu Feb 22, 21:11:33 | staff entrance | Valid access | Jacobs Elizabeth |
| 542 | Thu Feb 22, 21:11:36 | staff entrance | Valid access | Jacobs Elizabeth |
| 543 | Thu Feb 22, 23:44:33 | crosswalk security | Valid access | Jacobs Elizabeth |
| 544 | Thu Feb 22, 23:47:34 | crosswalk security | Valid access | Jacobs Elizabeth |
| 545 | Fri Feb 23, 00:10:22 | Staff Access Loading Dock | Valid access | Jacobs Elizabeth |

```
Prepared:  2/22/07       City of Montgomery Merit Increase
Program: PA585L2
            From: 03/23/07      To: 04/05/07      Payable Date:  4/13/07

Department:  86 00  MUSEUM
------------------------------------------------------------------------------
              |            |     Current              |      New
Last Name     |SSN         |Pay  Hrly-Rt     Merit    |Pay  Hrly-Rt      Merit
First         |Position    |Grd  Pay Period  Date     |Grd  Pay Period   Date
MI            |Pay Freq    |Stp  Annual               |Stp  Annual
              |Grade       |                          |
              |Sch Hours   |                          |
------------------------------------------------------------------------------
JACOBS                        1    11.2860   4/03/07  | 2    11.6843   4/03/08
ELIZABETH     7510                 902.88             |      934.74
L             BW                 23,474.88            |    24,303.34
              803                                     |
```

✓ This employee is recommended for a merit increase.

__ Merit increase not recommended at this time.

Comments: _____

_____

Date:  3-12-07    Approved:   Department Head        _Mark John_

Mar 13, 2007                   Appointing Authority   _Michael D Briddell_

3/14/07                        Personnel Officer       _Barbara M Montoya_

                Page    114

DEFENDANT'S EXHIBIT C



Montgomery Museum of Fine Arts    Telephone  334 240-4333
One Museum Drive                  Fax        334 2404384
P.O. Box 230819                   Web        www.mmfa.org
Montgomery, Alabama 36123-0819

MEMO

TO:        Michael Briddell
           Executive Assistant to Mayor

FROM:      Mark M. Johnson
           Director

DATE:      March 11, 2007

RE:        Justification for Merit Raise

        Elizabeth Jacobs, Museum Security Officer, has been a Museum Security
for almost one year and has done a fair job.  She has worked overtime to assist the
department during emergencies and when other officers have taken leave.  Her security
surveillance is good.  Ms. Jacobs was suspended for three days (March 11-13, 2007) for
leaving work 30 minutes early without permission and insubordination.  Overall, Ms.
Jacobs does a fair job for the Museum and I recommend that she receive her merit raise.

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| ELIZABETH JACOBS, | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| vs. | * | CASE NO: 2:07-cv-675-WKW |
| | * | |
| BOBBY N. BRIGHT, | * | |
| RICHARD ALLEN and | * | |
| THE CITY OF MONTGOMERY and | * | |
| | * | |
| Defendants. | * | |

## AFFIDAVIT OF MARK JOHNSON

Before me, the undersigned authority, personally appeared Mark Johnson, who is known to me and who, being first duly sworn, deposed on oath, and says as follows:

My name is Mark Johnson.  I am over nineteen years of age.  I am employed with the City of Montgomery as Director for the Montgomery Museum of Fine Arts.    It is in that capacity that I state the following:

1.    Elizabeth Jacobs is a Museum Security Officer for the Montgomery Museum of Fine Arts.

2.    In February 2007, Ms. Jacobs was recommended for a five day suspension without pay for insubordination and leaving work one half hour early on Thursdays without permission.  Although Ms. Jacobs was leaving early, she was getting paid for a full shift.  The five day suspension recommendation was made by Shirley Woods, Assistant Director of the Museum and Rick Allen, Chief of Security.

1

DEFENDANT'S
EXHIBIT
2

3.    Ms. Jacobs requested a hearing with me and I held her Departmental Disciplinary Hearing on March 1, 2007. Ms. Woods and Chief Allen were also present.

4.    At this hearing, Ms. Jacobs stated that she did not leave work on purpose. She stated that even though she was given a copy of the work schedule that said 4:30-12:30 on Thursday, she was going by a post schedule that said 4:30-12:00. Ms. Jacobs stated that she felt it was an honest mistake and that she never really looked at her paycheck where she was paid the full eight hours.

5.    Ms. Jacobs apologized for being insubordinate and explained that she had a few personal problems that made her angry. She advised that she felt the five day suspension recommended by Chief Allen and Ms. Woods was too harsh.

6.    At this hearing, I informed Ms. Jacobs that everyone had personal problems, but that we try not to let them affect our work. I told her that I was surprised at her behavior and would get back to her regarding my decision.

7.    I asked Ms. Jacobs to leave the hearing and after some discussion it was decided Ms. Jacobs would be suspended for three days, receive leave without pay for the hours she did not work and be required to contact the Employee Assistance program for anger management treatment.

8.    Ms. Jacobs' suspension was effective from 8:00 a.m. March 11, 2007 through 5:00 p.m. March 13, 2007.

9.    However, Ms. Jacobs had otherwise done a fair job and I recommended that she receive her merit increase on March 12, 2007.

I have read the above and foregoing affidavit consisting in total of three (3) pages and state that it is true and correct to my present knowledge.

_Mark Johnson_ 2/26/08
Mark Johnson

**SWORN to and SUBSCRIBED** before me this the _26_ day of February, 2008.

_Shirley Carter Woods_
Notary Public
My Commission Expires _4/30/09_

3

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF ALABAMA**
**NORTHERN DIVISION**

| | | |
|---|---|---|
| **ELIZABETH JACOBS,** | * | |
| | * | |
| **Plaintiff,** | * | |
| | * | |
| **vs.** | * | **CASE NO: 2:07-cv-675-WKW** |
| | * | |
| **BOBBY N. BRIGHT,** | * | |
| **RICHARD ALLEN and** | * | |
| **THE CITY OF MONTGOMERY and** | * | |
| | * | |
| **Defendants.** | * | |

<u>**AFFIDAVIT OF SHIRLEY WOODS**</u>

Before me, the undersigned authority, personally appeared Shirley Woods, who is known to me and who, being first duly sworn, deposed on oath, and says as follows:

My name is Shirley Woods. I am over nineteen years of age. I am employed with the City of Montgomery as Assistant Director of Operations for the Montgomery Museum of Fine Arts. It is in that capacity that I state the following:

1.      As Assistant Director of Operations, I review the time sheets for employees of the Montgomery Museum of Fine Arts.

2.      In February 2007, I was reviewing the month of December and discovered that Elizabeth Jacobs was working 7.5 hours on Thursday evenings instead of the 8 hours listed on her work schedule and required of merit employees. Ms. Jacobs was paid for 40 hours each week from December 15, 2006 through February 23, 2007 and she only worked 39.5 hours per week. According to the time sheets, she was paid for 4.5 hours that she did not work, plus time and a half for overtime on some days. On the payroll dated 12/15/06 - 12/28/06 she was paid 8

1



DEFENDANT'S
EXHIBIT
3

hours overtime; on the payroll dated 12/29/06 - 01/11/07 she was paid 16 hours overtime and on the payroll dated 01/12/07 - 01/25/07 she was given 21 hours (14 hrs @ 1 1/2) of comp time to be used at a later date; and also 8 hours of overtime pay for a total of 29 hours.

      3.      I telephoned Ms. Jacobs to find out why she was not working 8 hours but getting paid for 8 hours. I also told Ms. Jacobs that during some pay periods she was paid time and a half for overtime on her full shift.

      4.      Ms. Jacobs began to scream and yell at me and would not calm down enough to have a professional conversation.

      5.      I thought that Ms. Jacobs' conduct was insubordinate, inappropriate, and unacceptable. I requested that Ms. Jacobs meet with Richard Allen, Chief of Security, on the following day to clear up this matter.

      6.      I then advised Chief Allen of the issue regarding Jacobs' time shortage and her conduct when I called to discuss it with her. I instructed Chief Allen to meet with Ms. Jacobs. Attached to my Affidavit is copy of the Employee Counseling Record which I prepared for Ms. Jacobs' counseling session on February 23, 2007.

      7.      I recommended that Ms. Jacobs be suspended for five days for stealing time and insubordination.

      8.      Ms. Jacobs telephoned me on February 27, 2007 to apologize for her behavior and inappropriate tone of voice. She told me that she was having a difficult time personally and she did not mean to be insubordinate.

      9.      I attended an administrative hearing for Elizabeth Jacobs on March 1, 2007 at 4:30 p.m. before Mark Johnson, Museum Director. Mr. Allen was also in attendance.

10.    At the hearing, Ms. Jacobs stated that she thought the punishment of a five day suspension was too harsh considering her record.

11.    After some discussion, it was decided that Ms. Jacobs be given a three day suspension; receive leave without pay for the hours she did not work and require her to contact the Employee Assistance Program for anger management.

12.    The Notification of Suspension and supporting documents were mailed on March 2, 2007 to Ms. Jacobs by certified mail.    The Notification of Suspension indicated that Ms. Jacobs would be suspended from March 11 – March 13, 2007.  The Officer Work Schedule also reflected that Ms. Jacobs was not scheduled to work on those days.

I have read the above and foregoing affidavit consisting in total of three (3) pages and state that it is true and correct to my present knowledge and information.

_Shirley Woods_
Shirley Woods

**SWORN to and SUBSCRIBED before me this the** 3rd **day of March, 2008.**

_Notary Public_
Notary Public
My Commission Expires _10/16/09_

3

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

ELIZABETH JACOBS,                    *
                                     *
    Plaintiff,               *
                                     *
vs.                                  *     CASE NO:  2:07-cv-675-WKW
                                     *
BOBBY N. BRIGHT,                     *
RICHARD ALLEN and                    *
THE CITY OF MONTGOMERY and           *
                                     *
    Defendants.              *

<u>AFFIDAVIT OF RICHARD ALLEN</u>

Before me, the undersigned authority, personally appeared Richard Allen, who is known to me and who, being first duly sworn, deposed on oath, and says as follows:

My name is Richard Allen. I am over nineteen years of age. I am employed with the City of Montgomery as Chief of Security for the Montgomery Museum of Fine Arts. It is in that capacity that I state the following:

1.    In February, Shirley Woods, Assistant Director of Operations for the Montgomery Museum of Fine Arts, contacted me and requested that I meet with Elizabeth Jacobs, a Museum Security Officer.

2.    Ms. Woods advised that Ms. Jacobs had been leaving work one-half hour early on Thursdays without permission and although she was leaving early, she was getting paid for a full shift.

3.    I met with Ms. Jacobs on February 24, 2007. I advised Ms. Jacobs that the card access records indicated that she had been leaving at 12:00 p.m. every Thursday night rather than 12:30 a.m. when her shift ended.

1



DEFENDANT'S
EXHIBIT
4

4.    Ms. Jacobs responded that she was following the "Post" schedule that showed her post to be 4:30-12:00 rather than the "Officers Work Schedule" that shows her shift as 4:30-12:30 a.m. She stated that she had not been trying to cheat by leaving at midnight instead of 12:30 a.m.

5.    The "Post" schedule covers various areas within the Montgomery Museum of Fine Arts. These areas have been assigned numbers and each number is called a post. Each officer is assigned to a post while on shift.

6.    The "Officers Work Schedule" is a schedule that identifies each officer individually by name and their scheduled shift hours. This schedule is completed in advance and posted on a bulletin board quarterly.

7.    The Officer Work Schedule and Post schedule are readily available and placed in a convenient location for any officer to view his or her times and/or posts. It appears that there must have been a typographical error in the Post schedule however the Officer's Work Schedule indicated that Ms. Jacobs was to work from 4:30 p.m. until 12:30 a.m. on each Thursday night that she was scheduled to work.

8.    Ms. Jacobs had been working for the Museum for several months as a merit employee. All merit employees work eight hour shifts. She never asked me about the discrepancy between the two schedules but rather chose to follow the Post schedule.

9.    I advised Ms. Jacobs that I was recommending a five day suspension without pay.

10. After our meeting, Ms. Jacobs refused to sign the Employee Counseling Record and requested an Administrative Hearing with the Director, Mark Johnson.

11. Attached to this Affidavit is copy of the Employee Counseling Record dated February 24, 2007. The form also reflects my signature on February 26, 2007 indicating that Ms. Jacobs refused to sign the form.

12. On March 1, 2007, I attended another hearing for Ms. Jacobs that was conducted by Mark Johnson, Director of the Montgomery Museum of Fine Arts and Shirley Woods, Assistant Director for the Operations of the Montgomery Museum of Fine Arts.

13. Ms. Jacobs stated during the hearing that she felt that the five day suspension as punishment was too harsh considering her work history.

14. Mr. Johnson, Ms. Woods and I discussed Ms. Jacobs' response to the charges. Ms. Jacobs' suspension was subsequently reduced to three days and completion of anger management training.

I have read the above and foregoing affidavit consisting in total of three (3) pages and state that it is true and correct to my present knowledge.

_____
Richard Allen

**SWORN to and SUBSCRIBED before me this the** 29th **day of February, 2008.**

_____
Notary Public
My Commission Expires 10/16/09

3

IN THE UNITED STATES DISTRICT COURT FOR
THE MIDDLE DISTRICT OF ALABAMA
MIDDLE DIVISION

ELIZABETH JACOBS,                  )
                                   )
        Plaintiff,                 )
                                   )
    v.                             )        CV:  2:07cv675
                                   )
BOBBY N. BRIGHT, RICHARD           )
ALLEN and THE CITY OF              )
MONTGOMERY, AL.,                   )
                                   )
        Defendants.                )

**DEFENDANT RICHARD ALLEN'S RESPONSES
TO PLAINTIFF'S FIRST SET OF INTERROGATORIES & REQUESTS FOR
PRODUCTION OF DOCUMENTS**

COMES NOW the Defendant, Richard Allen, by and through undersigned

counsel, and in response to Plaintiff's First Interrogatories and Requests for Production of

Documents states as follows:

1.    Identify the person by name, job title, job description and address of the person

who drafted the First Shift Work Schedule setting forth that from December 8, 2006 to

March 8, 2007 plaintiff worked on Thursdays from 4:30 P.M. to 12:30 A.M.

**RESPONSE:  Shirley A. Woods
           Assistant Director for Operations
           Responsible for all work schedules for security employees
           One Museum Drive
           P.O. Box 230819
           Montgomery, AL  36123-0819**

2.    Identify the person by name, job title, job description and address of the person

who drafted the Security Officers Post Schedule for the same period of time stating that

the employment hours were from 4:30 P.M. to 12:00 A.M.

**RESPONSE:  Shirely A. Woods
           Assistant Director for Operations**



DEFENDANT'S
EXHIBIT
5

Responsible for all work schedules for security employees
One Museum Drive
P.O. Box 230819
Montgomery, AL 36123-0819

3.     What is your explanation for the time discrepancy in the two work schedules?

**RESPONSE: I am unable to answer this interrogatory because I did not make the**

**schedule.**

4.     Specifically state the any instructions given to plaintiff or conversations had

with plaintiff, prior to her telephone call from Shirley Woods on February 23, 2007 or her

meeting with you on February 24. 2007 concerning the proper time that she should leave

work.

**RESPONSE: I advised Plaintiff that Shirley Woods had called and informed me**

**that Plaintiff had been leaving 30 minutes early on the Thursday third shift and had**

**asked me to talk with Plaintiff about it. Plaintiff had some questions and I advised**

**her to contact Shirley Woods regarding those questions.**

5.     What was the particular departmental violations that plaintiff supposedly

committed that resulted in her suspension?

**RESPONSE: Plaintiff was charged with insubordination toward Shirley A. Woods.**

6.     Identify the specific personnel rule or regulation that authorizes you to

"counsel" an employee.

**RESPONSE: I was given an order by my Supervisor Shirley Woods, to talk with**

**the Plaintiff as her Direct Supervisor, and to complete and submit to Shirley Woods**

**the "Employee Counseling Record".**

7.     Explain in full detail how the plaintiff was "counseled" while at the same time

was charged with leaving early from her job and insubordination.

**RESPONSE: On February 24, 2007, I met with the Plaintiff and advised her of the conversation between myself and Mrs. Woods. I attended another meeting with Mark Johnson, Museum Director, Shirley Woods, Assistant Director for Operations, and Plaintiff. The allegations were discussed at that time. It was determined at this meeting that Plaintiff was guilty of insubordination in her actions toward Shirley Woods. The penalties imposed were 3 days suspension without pay and the completion of an anger management class.**

8.    State in full detail what was said to the plaintiff that was counseling at the time of the meeting with you.

**RESPONSE: I am unable to recall exactly what was said during this meeting, however, any time I have a closed door meeting in my office with one of my officers, it is considered a counseling session.**

9.    Provide any and all information that Plaintiff Elizabeth Jacobs intentionally not worked the scheduled hours and how such conduct constituted "stealing" hours from the museum.

**RESPONSE: I did not accuse Ms. Jacobs of stealing hours from the museum. As requested by Ms. Woods, I counseled Plaintiff regarding her leaving work on the Thursday third shift, 30 minutes early.**

10.    For what period of time does the employment record of the plaintiff concerning this suspension remain in plaintiffs personnel file.

a)    Will this material be available for her superiors to see and consider by an administrative officer?

b)    Are you or Shirley Woods an administrative officer who will be involved, in any manner, with reviewing the personnel file of the plaintiff, pursuant to Rule VIII, Section 12 of the City and County of

Montgomery Personnel Board Rules and Regulations, to determine an adjustment of her salary within the designated salary range or as a factor in the order of layoffs and rating of employees for promotional purposes?

c)   If you answer Interrogatory 10(b) in the affirmative, please specify which one of you would review the file if not both of you.

**RESPONSE:  I do not know.**

> **(a) I do not know.**

> **(b) I do not know.**

> **(c) N/A**

11.   Identify by name, job title, job description and address the person or persons responsible for the mailing of the certified notice of suspension to plaintiff and the retention of the returned receipt for that mail.

**RESPONSE: Shirley A. Woods**
> **Assistant Director for Operations**
> **One Museum Drive**
> **P.O. Box 230819**
> **Montgomery, AL  36123-0819**

## REQUEST FOR PRODUCTION OF DOCUMENTS

Please provide copies of the following documents:

1. The personnel file of plaintiff.

**RESPONSE:  I do not have the personnel file of plaintiff in my custody.**

2. A copy of Alabama Act 2280.

**RESPONSE:  I do not have a copy of Alabama Act 2280 in my custody.**

3. The notice of suspension to the plaintiff.

**RESPONSE:  I do not have a copy of the notice of suspension to the plaintiff in my custody.**

4. The returned receipt of the certified letter notifying plaintiff of her suspension.

**RESPONSE: I do not have a copy of the returned receipt of the certified letter notifying plaintiff of her suspension in my custody.**

**As to responses to Interrogatories:**

Richard Allen

Sworn to and subscribed before me on this the _16th_ th day of November, 2007.

Notary Public
(Seal)
My Commission expires: _10/16/09_

**As to objections:**

Kimberly O. Fehl (FEH001)

**OF COUNSEL:**
Legal Department
City of Montgomery
Post Office Box 1111
Montgomery, Alabama  36101-1111
(334) 241-2050
(334) 241-2310 (fax)

## CERTIFICATE OF SERVICE

I hereby certify that foregoing has been served upon the following by first class United States Mail on this _16th_ day of November, 2007:

Bruce Boynton, Esq.
BRUCE, CARVER, BOYNTON, LLC
P.O. Box 389
Selma, AL  36702

Of Counsel